**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TONY GOODRUM and JASON MIXON, individually and on behalf of all others similarly situated, | Case No. 1:25-cv-07062 |
| Plaintiffs, | Hon. John Robert Blakey |
| v. | |
| VERADIGM, INC., | |
| Defendant. | |
| MARTY WOOLEY, individually and on behalf of all others similarly situated, | Case No. 1:25-cv-08963 |
| Plaintiff, | Hon. Edmond E. Chang |
| v. | |
| VERADIGM, INC., | |
| Defendant. | |

**PLAINTIFFS' UNOPPOSED MOTION TO RELATE ACTIONS, CONSOLIDATE
ACTIONS, AND APPOINT INTERIM CLASS COUNSEL AND
MEMORANDUM OF LAW IN SUPPORT**

Pursuant to Local Rule 40.4 and Federal Rules of Civil Procedure 42(a) and 23(g)(3), Plaintiffs Tony Goodrum, Jason Mixon, and Marty Wooley (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, respectfully move to (1) designate the above-styled actions as related pursuant to Local Rule 40.4 and reassign *Wooley v. Veradigm, Inc.*, No. 1:25-cv-08963 (the "*Wooley* action") to the Honorable John Robert Blakey, who is presiding over the first-filed action, *Goodrum, et al., v. Veradigm, Inc.*, No. 1:25-cv-07062 (the "*Goodrum* action")[1]; (2) consolidate the *Wooley* action into the *Goodrum* action; and (3) appoint Gary Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC and Jeff Ostrow of Kopelowitz Ostrow P.A. as "Proposed Interim Class Counsel."  Plaintiffs also move the Court to stay the related actions, including any of the Defendant's responsive pleading deadlines; require the filing of a consolidated class action complaint ("Consolidated Complaint") within 45 days of entry of an order consolidating the cases; and set the deadline for Defendant's response to the Consolidated Complaint as 45 days after service of the same, Plaintiffs' response to any motion to dismiss as 45 days thereafter, and 21 days thereafter for Defendant's reply.

Consolidation is proper because each action: (i) is brought against the same defendant; (ii) is based on the same alleged data incident that, upon information and belief, occurred around December 2024; (iii) asserts the same or overlapping allegations and claims for relief; and (iv) seeks to represent the same or overlapping putative classes. Given the common alleged facts and claims, consolidation and the appointment of interim class counsel will streamline litigation and preserve judicial and party resources, providing for the efficient progress of this litigation. Counsel for Plaintiffs have conferred with counsel for Defendant, and Defendant does not oppose the relief requested in this motion.[2]

---

[1] *See Wooley* action, Dkt. 1-1, Section VIII of the Civil Cover Sheet (noting that *Wooley* is related to *Goodrum*).

[2] Plaintiffs and Plaintiffs' Counsel acknowledge that Defendant's decision not to oppose is limited to this filing, and nothing from this filing may be used to support any other motion or position, including a motion for class certification.

## I.        INTRODUCTION & PRELIMINARY STATEMENT

The *Goodrum* action and the *Wooley* action (collectively the "Related Actions") are pending in the United States District Court for the Northern District of Illinois and present common questions of law and fact against the same Defendant, Veradigm, Inc. ("Veradigm" or "Defendant"), a healthcare technology company that uses data and analytics to improve healthcare delivery for various clients, including life sciences companies, health plans, and healthcare providers.

Upon information and belief, on or around December of 2024, Defendant experienced a cyber incident on a server used to store data of its clients' patients and policyholders (the "Data Breach"). Upon information and belief, as a result of the Data Breach, an unauthorized third-party was able to access and copy files containing the sensitive personal information of Plaintiffs and Class Members, totaling approximately 800,000 individuals. Upon information and belief, the following types of data may have been compromised in the Data Breach: name, Social Security number, phone number, and medical information ("Private Information"). As such, for purposes of this motion the Related Actions present common factual and legal questions, involving the same or similar discovery efforts and consolidation is therefore appropriate.

For the benefit of Plaintiffs and the proposed Class, this class action lawsuit should be led by Court-appointed Interim Class Counsel. The proposed firms and attorneys are ideally qualified to represent and protect the interests of the proposed classes under the factors enumerated in Rule 23(g); they have significant experience successfully prosecuting complex consumer class actions and data privacy cases across the country, are nationally recognized by their peers as leaders in the plaintiffs' class action bar, have invested considerable time and resources investigating and pursuing these claims. As detailed herein, Mr. Klinger and Mr. Ostrow are uniquely well-positioned to represent Plaintiffs' and the putative Class Members' interests in this case and should be appointed Interim Class Counsel.

For these reasons, Plaintiffs propose that the Related Actions be consolidated, and that Mr. Klinger and Mr. Ostrow be appointed Interim Class Counsel.

## II.  ARGUMENT

Class actions pose unique and complex challenges that require a greater level of organization and case management to protect the interests of plaintiffs and putative class members. Relating and consolidating the Related Actions, as well as appointing Interim Class Counsel at this time, is essential, as it promotes judicial economy and delineates a clear division of labor and allocation of tasks and responsibilities that is crucial in keeping the litigation well-organized and efficient. *See* Fed. R. Civ. P. 23(g) ("The court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action").

### A.  Legal Standard

FRCP 42(a) empowers the Court to consolidate actions if the "actions before the court involve a common question of law or fact." Fed. R. Civ. P. 42(a); *Star Ins. Co. v. Risk Mktg. Grp. Inc.*, 561 F.3d 656, 660 (7th Cir. 2009). "The primary purpose of consolidation is to promote convenience and judicial economy." *Estrada v. Aerovias de Mexico, S.A. de C.V.*, No. 18 C 5526, 2023 U.S. Dist. LEXIS 225632, at *4 (N.D. Ill. Dec. 19, 2023). "Consolidation is 'a powerful tool to expedite litigation by drawing together separate actions sharing common legal or factual questions.'" *East v. Lake Cnty. Sheriff Dep't*, 2014 U.S. Dist. LEXIS 51082, at *2 (N.D. Ind. Apr. 14, 2014) (quoting 8 Moore's Federal Practice, § 42.10 (Matthew Bender 3d Ed.))

Consolidation is governed by Federal Rule of Civil Procedure 42, which permits consolidation "[w]hen actions involving a common question of law or fact are pending before the court . . . to avoid unnecessary costs or delay." Where two or more actions against the same defendant share key factual and legal questions, including, as here, where the actions arise from the same Data Breach— consolidation is warranted. *See, e.g., Johnson v. Ford Motor Co.*, No. 1:23-cv-14027, 2024 U.S. Dist. LEXIS

56218, at *6 (N.D. Ill. Mar. 28, 2024) (granting consolidation of proposed class actions); *Bedont v. Horizon Actuarial Servs., LLC*, No. 1:22-CV-01565-ELR, 2022 U.S. Dist. LEXIS 155570, at *4 (N.D. Ga. May 12, 2022) (granting consolidation of data breach actions).

Northern District of Illinois Local Rule 40.4 "promotes efficient use of judicial resources by minimizing duplication of effort on cases that have a great deal in common." *Garner v. Country Club Hills*, No. 11 C 5164, 2012 U.S. Dist. LEXIS 72080, at *4 (N.D. Ill. May 23, 2012). Under Local Rule 40.4, the Court has discretion to reassign and consolidate cases so long as they are "related" to an earlier-numbered case and meet the following conditions: (1) they are pending in this Court; (2) the handling of [the related] cases by the same judge is likely to result in a substantial saving of judicial resources; (3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case; and (4) the cases are susceptible of disposition in a single proceeding. *See Johnson*, 2024 U.S. Dist. LEXIS 56218, at *6 (citing N.D. Ill. Local R. 40.4(b)(1)–(4)); *see also Blocker v. City of Chicago*, No. 09-CV-7052, 2011 U.S. Dist. LEXIS 27404, *6 (N.D. Ill. Mar. 16, 2011) ("The Seventh Circuit has emphasized that related cases pending within the same court should be consolidated before a single judge to avoid wasteful overlap.").

**B.     The Related Actions Satisfy All of the Requirements for Relation and Consolidation**

Here, the Related Actions satisfy all of the requirements for relation and consolidation.

The Related Actions unquestionably share common questions of fact and law for purposes of this motion. Each arises from the same Data Breach that affected Defendant and alleges that Plaintiffs and putative class members suffered harm because their Private Information was stolen by cybercriminals. *See* N.D. Ill. Local R. 40.4(a)(4). The Related Actions allege overwhelmingly similar factual contentions, including naming Veradigm, Inc. as the sole defendant, alleging that Defendant failed to implement and maintain reasonable and adequate data security practices, and that these failures allowed cybercriminals to access and obtain Plaintiffs' and putative class members' Private

4

Information from Defendant's systems. The Related Actions also meet the criteria of Local Rule 40.4(b) because they are all pending in this District, consolidating the cases before the same judge will save judicial time and effort, the cases are all in the same stage of litigation, and the cases are susceptible to disposition in a single proceeding due to the nearly identical nature of the factual and legal issues in questions. *See Murry v. Am.'s Mortg. Banc, Inc.*, 2004 U.S. Dist. LEXIS 3148, at *5–8 (N.D. Ill. Feb. 27, 2004). Therefore, the Court should relate the actions pursuant to Local Rule 40.4.

The Related Actions also raise the same or similar questions of law, arise from the same set of facts surrounding the Data Breach, and involve similar class definitions, making them susceptible to disposition in a single proceeding. The Related Actions both focus on whether Defendant is liable to Plaintiffs and putative Class Members for its failure to protect their Private information. Moreover, the Related Actions will involve substantially similar discovery, and consolidation would increase efficiency and offer consistency in judicial rulings. Additionally, the Related Actions are at similar stages— Defendant is yet to file a responsive pleading in either action.

Courts consistently find that data breach class actions are particularly appropriate for consolidation. *See, e.g., Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 2017 U.S. Dist. LEXIS 142626, at *3 (D. Colo. Sep. 1, 2017) ("[B]oth actions are substantively identical and are in the same stage of litigation…arise out of the same occurrence: a data breach…"); *Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 745 (W.D.N.Y. 2017) (noting that the court had previously "issued an order consolidating…pursuant to Federal Rule of Civil Procedure 42(a)(2), and transferred the case" to one judge in a large data breach litigation).

Furthermore, to better serve judicial efficiency, Plaintiffs respectfully request that this Court order that any future actions filed or transferred to this Court based on similar circumstances concerning the Data Breach be consolidated with the *Goodrum* action. *See, e.g., Troy Stacy Enter. Inc. v. Cincinnati Ins. Co.*, 337 F.R.D. 405, 411 (S.D. Ohio 2021) (consolidating "all related actions that are

subsequently filed in, or transferred to, this District"). Defendant will suffer no prejudice by litigating one consolidated action rather than multiple separate suits.

## C.  Interim Class Counsel Should Be Appointed

The Court can "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). "Designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement. *Manual for Complex Litigation*, § 21.11 (4th ed. 2004). Indeed, "the need to progress toward the certification determination may *require* designation of interim counsel." Fed. R. Civ. P. 23, advisory committee note to 2003 amendment (emphasis added).

When addressing a motion to appoint interim class counsel, "[c]ourts have applied the same considerations as set out in Rule 23(g)(1)(A), which governs the appointment of class counsel once a class is certified, to the designation of interim class counsel before certification." *Moehrl v. Nat'l Ass'n of Realtors*, 2020 U.S. Dist. LEXIS 164895, at *1 (N.D. Ill. May 30, 2020). These factors include: the quality of counsel's work in the case; counsel's experience in handling similar cases; counsel's knowledge of the law; and the resources that counsel can devote to the case. *Hamilton v. Forward Bank*, No. 23-CV-844-WMC, 2024 U.S. Dist. LEXIS 36465, *2 (W.D. Wisc. Feb. 26, 2024). In addition, courts may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.* (quoting Fed. R. Civ. P. 23(g)(1)(B)). The purpose of the Court's review is to ensure that counsel appointed to leading roles are "qualified and responsible, that they will fairly and adequately represent all the parties on their side, and that their charges will be reasonable." *Manual for Complex Litig.*, § 10.22. The ultimate goal is "achieving efficiency and economy without jeopardizing fairness to parties." *Id.* §10.221. Ultimately, no single factor is determinative—a court should appoint

counsel after evaluating all relevant considerations. *See* Fed. R. Civ. P. 23(g)(1)(A)-(B); Charles Alan Wright, et al., *Federal Practice & Procedure* § 1802.3 (3d ed. 2005).

Designating lead counsel at this stage of the litigation ensures that the putative Class Members' interests are protected in making and responding to motions, conducting discovery, and negotiating possible settlements. *See Roe v. Arch Coal, Inc.*, No. 4:15-CV-910, 2015 U.S. Dist. LEXIS 148057, *7-8 (E.D. Mo. Nov. 2, 2015) (finding it in the best interests of the class to appoint interim class counsel even when no other counsel competed for appointment).

Proposed Interim Class Counsel satisfy all requirements for appointment by the Court, as explained below. Because Proposed Interim Class Counsel have significant case management and complex litigation skills, knowledge of the relevant factual and legal issues, and extensive resources to efficiently prosecute this action, they should be appointed as Interim Class Counsel.

### 1. Proposed Class Counsel Have Identified and Investigated the Claims.

While no one factor under Federal Rule of Civil Procedure 23(g)(1) is determinative, the investigative and analytical efforts of counsel can be a deciding factor:

> In a case with a plaintiff class, the process of drafting the complaint requires some investigatory and analytical effort, tasks that strangers to the action most likely will not have undertaken. All other things being equal, when an attorney has performed these or other investigative and analytical tasks before making the application for appointment, he or she is in a better position to represent the class fairly and adequately than attorneys who did not undertake those tasks.

*Moore's Federal Practice* § 23.120(3)(a) (3d ed. 2007).

Upon learning of the Data Breach, Proposed Interim Class Counsel began investigating potential legal claims and remedies for the victims of the breach, including Plaintiffs. Their investigation included, among other things: uncovering the facts surrounding the Data Breach; interviewing numerous consumers injured by the Data Breach; researching legal claims; drafting initial pleadings; and organizing plaintiffs and counsel for unified proceedings.

Given the scope of the Data Breach and the number of victims potentially affected, Proposed Interim Class Counsel worked to quickly organize their efforts and avoid any delay that could result from a protracted leadership dispute and thereby enable the parties to address the merits of the case expeditiously. Moreover, Proposed Interim Class Counsel have allocated assignments fairly, taking advantage of the strengths of each firm while eliminating any duplicity and inefficiency. Proposed Interim Class Counsel will continue to work together in this manner to best serve the interests of Plaintiffs and the putative Class. Accordingly, the substantial work and investigation to date weigh in favor of appointing Proposed Interim Class Counsel pursuant to Rule 23(g)(3) because they are organized, unified, and committed to working together for the best interests of the putative Class.

## 2. Proposed Interim Class Counsel Have Significant Relevant Experience.

The second factor the Court must consider is "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action." Fed. R. Civ. P. 23(g)(1)(A)(ii). Here, Proposed Interim Class Counsel have substantial experience handling class actions and other complex litigation. Tey and their firms have been certified as class counsel by many federal courts and possess the skills to represent the proposed Class in this action. Proposed Interim Class Counsel are at the forefront, individually and in combination, of consumer privacy class actions—specifically data breach cases. They and their firms have repeatedly been appointed to leadership positions in a variety of class actions, including data breach cases, and their experience and knowledge of the relevant law uniquely qualifies them for appointment in this case.

Because the claims in the Related Actions focus on the protection of Private Information, the great risk of potential harm flowing from the theft of such information, and the mitigation efforts needed to remediate the effects of this data breach, appointment of capable and experienced class counsel from the outset is more important here than in more traditional consolidation motions that

the Court regularly entertains. The experience and qualifications of Proposed Interim Lead Counsel are detailed below and in their respective firm resumes.

### Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC

Mr. Klinger is a Senior Partner at Milberg and Chair of its Cybersecurity and Data Privacy Practice Group. Located in Chicago, Illinois, Mr. Klinger is recognized as one of the most respected data privacy attorneys in the United States, having been ranked by Chambers and Partners as Band 3 for Privacy & Data Security Litigation (2024)[3] and having been selected to Lawdragon's 500 Leading Litigators in America for his accomplishments in privacy litigation (2024).[4]

Mr. Klinger has extensive experience leading numerous privacy class actions, including as lead or co-lead counsel in the largest data breaches in the country. *See, e.g., In re: MoveIt Customer Data Security Breach Litigation*, 1:23-md-03083 (D. Mass.) (Mr. Klinger was appointed to the leadership committee in an MDL involving a data breach concerning more than 95 million consumers). Mr. Klinger and his firm have played an important role in developing the favorable case law that many plaintiffs rely on in the data breach space, including case law in Illinois. *See, e.g., In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 586 (N.D. Ill. 2022) (Milberg attorneys largely defeated a motion to dismiss in a data breach case involving 3 million consumers); *Flores v. Aon Corp.*, 2023 IL App. (1st) (230140) (where Mr. Klinger obtained reversal of a dismissal with prejudice in a data breach class action); and *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365 (1st Cir. 2023) (Milberg attorneys obtained a First Circuit reversal of the dismissal with prejudice of a data breach case, finding Article III standing).

Over the past 3 years, Mr. Klinger has settled more than 100 class actions involving privacy violations, primarily data breaches, on a classwide basis, in state and federal courts across the country

---

[3] Only three plaintiffs' lawyers in the country received the distinction of being ranked by Chambers and Partners for Privacy & Data Security Litigation.
[4] *See* https://chambers.com/lawyer/gary-klinger-usa-5:26875006; https://www.lawdragon.com/guides/2023-09-08-the-2024-lawdragon-500-leading-litigators-in-america; *see also* https://www.law360.com/articles/1854005/rising-star-milberg-s-gary-klinger.

as lead or co-lead counsel. To his knowledge, no other attorney in the country has settled and won court approval of more privacy settlements during this period. Representative cases include: *Parris, et al., v. Meta Platforms, Inc.*, Case No.2023LA000672 (18th Cir. DuPage Cty., Ill.) (where Mr. Klinger obtained a settlement of $64.5 million for 4 million consumers as lead counsel); *Owens v. MGM Resorts International*, Case No. 23-cv-01480 (D. Nev.) (Mr. Klinger obtained a settlement of $45 million as class counsel); *Boone v. Snap, Inc.*, Case No. 2022LA000708 (18th Cir. DuPage Cty., Ill.) (Mr. Klinger obtained a settlement of $35 million for 3 million consumers in a privacy class action as lead counsel).

Important here, Mr. Klinger has deep experience with data privacy litigation in Illinois state and federal courts. Mr. Klinger has obtained multiple favorable decisions in this District and an appellate victory in the First District Appellate Court of Illinois in a data breach case that was dismissed at the trial court for lack of standing in an issue of first impression before the Illinois appellate courts. *See Flores*, 2023 IL App. (1st) (230140). He is also responsible for the two largest data breach settlements ever obtained in this District (and the State). *See In Re: Arthur J. Gallagher Data Breach Litigation*, No. 1:2022-cv-00137 (N.D. Ill.) (Mr. Klinger served as lead counsel in a data breach class action involving 3 million consumers and reached a settlement of $21 million); *Carrera Aguallo v. Kemper Corp.*, Case No. 1:21-cv-01883 (N.D. Ill. Oct. 27, 2021) (Mr. Klinger served as lead counsel in a data breach class action involving 6 million consumers and reached a settlement valued at over $17 million). Moreover, Mr. Klinger has successfully litigated privacy class actions through class certification in this District. *See Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *1 (N.D. Ill. 2018) (where Mr. Klinger certified, over objection, a nationwide privacy class action involving more than 1 million class members and ultimately settling for $6.5 million).

Mr. Klinger also has the full weight of his law firm behind him. Since its founding in 1965, Milberg has repeatedly taken the lead in landmark cases, setting groundbreaking legal precedents, prompting changes in corporate governance, and recovering over $50 billion in verdicts and

settlements. Milberg has been instrumental in obtaining precedent setting decisions at every level, including the United States Supreme Court.[5] The firm pioneered federal class action litigation and is widely recognized as a leader in defending the rights of victims of large-scale wrongdoing, being described by the New York Times as "[a] powerhouse that compelled miscreant and recalcitrant businesses to pay billions of dollars to aggrieved shareholders and customers."[6]

Milberg is one of the largest plaintiffs' class action firms in the United States and abroad. The firm is involved in some of the largest and well-known class action cases in the country, especially in data breach and privacy litigation. The firm is comprised of more than one hundred attorneys who work from offices across the United States and Europe. Milberg attorneys come from diverse backgrounds and reflect the diversity of the bar and the classes they seek to represent—from the standpoint of age, gender, experience, and geographic location.[7] Mr. Klinger's experience and knowledge are detailed in his firm resume, attached hereto as **Exhibit 1**.

### *Jeff Ostrow of Kopelowitz Ostrow P.A.*

Jeff Ostrow is the Managing Partner of Kopelowitz Ostrow P.A. and has practiced law for 27 years. Mr. Ostrow established the firm immediately following his graduation in 1997 and has grown the firm to 30 attorneys. Beyond managing the firm, Mr. Ostrow heads the class action department and maintains a full caseload of representing class plaintiffs nationwide. He also has prior experience defending large companies in class actions, including banks, commercial lenders, and tech companies, providing a valuable perspective and advantage in litigation and settlement.

---

[5] *See* https://milberg.com/precedent-setting-decisions/page/3/.

[6] Roberts, *Melvyn Weiss, Lawyer Who Fought Corporate Fraud, Dies at 82*, N.Y. TIMES, (Feb. 5, 2018), https://www.nytimes.com/2018/02/05/obituaries/melvyn-weiss-lawyer-who-fought-corporate-fraud-dies-at-82.html.

[7] *See* Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDLs* at 38, 45–46 (2d ed. 2018) ("BOLCH GUIDELINES"), https://judicialstudies.duke.edu/wp-content/uploads/2018/09/MDL-2nd-Edition-2018-For-Posting.pdf ("The judge's primary responsibility in the selection process is to ensure that the lawyers appointed to leadership positions are capable and experienced and that they will responsibly and fairly represent all plaintiffs, keeping in mind the benefits of diversity . . . .").

Mr. Ostrow is counsel of record in more than 300 pending data breach cases. He is currently court-appointed Lead Counsel in MDLs and in federal and state courts across the country. He is Lead Counsel in MDL-3090, *In re Fortra File Transfer Software Data Sec. Breach Litig.*, No. 24-md-3090 (S.D. Fla.), which involves 10 defendants and 6 million people, and settled for $27 million. Additional examples of data breach cases in which he serves as Lead Counsel include: *In Re: AT&T Inc. Customer Data Sec. Breach Litig.*, 3:24-cv-00757 (N.D. Tex.), which settled for $177 million; *McNally, et al. v. Infosys McAmish Sys., LLC*, 1:24-cv-00995 (N.D. Ga.), which settled for $17.5 million; *Owens v. MGM Resorts Int'l*, 2:23-cv-01480-RFB-MDC (D. Nev.), which settled for $45 million; *Crowe v. Managed Care of N. Am., Inc.*, No. 23-cv-61065 (S.D. Fla.), affecting 8.9 million individuals; *In re HealthEquity, Inc. Data Sec. Incident Litig.*, No. 2:24-cv-528 (D. Utah), affecting 4.3 million patients; and *In re DISA Global Data Breach Litig.*, No. 4:25-cv-00821 (S.D. Tex.), affecting 3.3 million individuals. Moreover, Mr. Ostrow has court-appointed positions in MDLs including, for example, *In re: Evolve Bank & Trust Customer Data Breach Litig.*, MDL No. 3127 (W.D. Tenn.), which settled for $17.0 million. For 13 years, Mr. Ostrow's firm served as Coordinating Counsel, Settlement Class Counsel, and Lead Class Counsel in *In re Checking Acct. Overdraft Litigation*, No. 1:09-MD-02036-JLK (S.D. Fla.), an MDL that recovered $1.2 billion from the nation's largest banks, and as Liaison Counsel in *In re Disposable Contact Lens Antitrust Litigation*, No. 3:15-md-2626-HES-JRK (M.D. Fla.), an antitrust class action that recovered $85 million; and he has helped recover more than $126 million in *In re: National Prescription Opiate Litigation*, No. 1:17-md-2804 (N.D. Ohio) and *In re Juul Labs*, No. 19-md-2913 (N.D. Cal.), collectively.

Federal judges have recognized Mr. Ostrow's commitment to excellence. In *Farrell v. Bank of America, N.A.*, 327 F.R.D. 422, 432 (S.D. Cal. 2018), where Mr. Ostrow served as lead counsel for millions of people, U.S. District Judge James Lorenz granted final approval of a settlement that included a $68 million recovery and $1.2 billion in injunctive relief requiring the defendant bank to stop an enormously lucrative practice, commenting:

> Class Counsel achieved this result through tenacity and great skill. In all of their written submissions and in their presentation at the Final Approval Hearing, Class Counsel's arguments were laudably clear and precise, no small feat given the complexity of the legal questions at issue here. It is clear that substantial preparation went into all of Class Counsel's work on this case.

Similarly, upon approving a $13 million settlement where Mr. Ostrow was co-lead counsel, U.S. District Judge James Lawrence King commented that "Class Counsel's efforts in pursing and settling these consumer claims were, quite simply, outstanding." *In re Checking Account Overdraft Litig.*, 2013 WL 11319244, *16 (S.D. Fla. Aug. 2, 2013). In another recent case where Mr. Ostrow was lead counsel, U.S. District Judge Jose Martinez praised class counsel's "high level of skill to advance Plaintiff's claims," noting that despite the difficult factual and legal issues and strong defenses presented by the defendant, "Class Counsel obtained an excellent result." *Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813-JEM (S.D. Fla.), ECF No. 84 at 14.

Mr. Ostrow has worked productively with Mr. Klinger in many other cases. He is confident that this proposed leadership structure will result in an excellent recovery for all clients and Class Members. Additional information about Mr. Ostrow and his firm is attached. *See* **Exhibit 2**.

3.    **Proposed Interim Class Counsel are Extremely Familiar with Applicable Law.**

The third factor to consider is "counsel's knowledge of the applicable law." Fed. R. Civ. P. 23(g)(1)(A)(iii). Proposed Interim Class Counsel are knowledgeable about the applicable law, as demonstrated by their experience litigating other data breach class actions. They have a track record of successfully litigating and resolving large-scale complex litigation, including data breach class actions, and their familiarity with the substantive law and procedures in this jurisdiction will serve to minimize inefficiency in attorney time and litigation costs.

4.    **Proposed Interim Class Counsel Have and Will Continue to Commit Resources for the putative Class.**

The final factor in Federal Rule 23(g)(1)(A)(iv) concerns the resources Proposed Interim Class Counsel will commit to the case, which also strongly supports the appointment of Proposed Interim

Class Counsel. Gary Klinger and Jeff Ostrow lead well-established, successful law firms that have the resources and personnel necessary to pursue a case of this magnitude, as has been demonstrated in numerous prior class actions. Proposed Interim Class Counsel have demonstrated their collective will and ability to dedicate the necessary resources to maximize Plaintiffs' and Class Members' chance of success in this lawsuit. As described in detail above, each of the firms has thoroughly investigated, developed, and gathered evidence in support of Plaintiffs' claims and have already invested and committed significant resources to prosecute this case.

Each attorney understands the time, energy, and skill necessary to lead this litigation, and both have committed the resources required to ensure the effective and efficient representation of the putative Class. Proposed Interim Class Counsel can, as needed, draw upon the skills and talents of other experienced attorneys and staff members and have already demonstrated their commitment to this litigation by devoting substantial resources and coordinating among themselves to file this motion. As their firm resumes and experience show, Proposed Interim Class Counsel have the resources and skill to see this litigation through to its conclusion, including trial.

5.      **Other Considerations Support Appointing the Proposed Interim Class Counsel.**

Proposed Interim Class Counsel were the first firms to file complaints against Defendant. *See In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008) (appointing as interim lead counsel the firms that filed the first complaints); *Richey v. Ells*, 2013 U.S. Dist. LEXIS 7193, *7 (D. Colo. Jan. 17, 2013) ("Ultimately, Plaintiff Richey was the first to file his case and, therefore, the Court appoints his counsel as Lead Counsel for the consolidated action.").

Further, the role of leadership in complex litigation places a premium on professionalism, cooperation, courtesy, and acceptance of the obligations owed as officers of the Court, all of which are critical to the successful management of the litigation. *See Manual for Complex Litigation* § 10.21. Unlike defense counsel, the plaintiffs' side must quickly and effectively merge to form an alliance

14

against well-financed opponents, as is the case here. This process has the potential for disorganization, in-fighting, and inefficiencies. It is useful to consider whether counsel applying for leadership "have worked together in other cases, their ability to collaborate in the past, divide work, avoid duplication, and manage costs." BOLCH GUIDELINES, at 43. Proposed Interim Class Counsel have successfully worked together many times and will do so in this case.

Further, the appointment of Gary Klinger and Jeff Ostrow as Interim Class Counsel has the support of all Plaintiffs' counsel. *See In re Aluminum Phosphide Antitrust Litig.*, No. 93-2452, 1994 WL 481847, at **5, 7 (D. Kan. May 17, 1994) ("[G]iv[ing] due consideration to the preferences expressed by the parties themselves, through their counsel…Absent persuasive evidence to the contrary, the court assumes that nominations and votes for lead counsel are made in good faith for reasons that benefit the client."); *see also In re Wendy's Co. S'holder Derivative Litig.*, 2018 U.S. Dist. LEXIS 211957, *7 (S.D. Ohio Dec. 17, 2018) ("[C]ounsel's ability to make inclusive efforts on behalf of all plaintiffs is an 'essential attribute' for lead counsel.") (citation omitted); *Manual for Complex Litig.* §§ 10.22 (preferring "the attorneys coordinat[ing] their activities without the court's assistance").

Indeed, Proposed Interim Class Counsel moved quickly to coordinate the proposed leadership structure to avoid any delay and seek appointment to best serve the interests of the putative Class.

### III. CONCLUSION

Plaintiffs respectfully request that the Court grant this motion and enter an order: (i) relating and consolidating the Related Actions under Case No. 1:25-cv-07062, and under the title *In re: Veradigm Inc. Data Breach Litigation*; (ii) appointing Gary Klinger and Jeff Ostrow as Interim Class Counsel; and (iii) ordering that Plaintiffs file a Consolidated Amended Complaint within 45 days of consolidation, that Defendant respond thereto within 45 days of service, that Plaintiffs have 45 days thereafter to file an opposition to any motion to dismiss, and that Defendant have 21 days to file its reply. A proposed order granting this relief is submitted herewith.

Dated: August 1, 2025

Respectfully Submitted,

By: *Gary M. Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
Email: gklinger@milberg.com

Jeff Ostrow (*pro hac vice* forthcoming)
**KOPELOWITZ OSTROW P.A.**
One West Law Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Tel: (954) 525-4100
Email : ostrow@kolawyers.com

*Counsel for Plaintiffs Tony Goodrum, Jason
Mixon, and the Putative Class*

Andrew J. Shamis, Esq.
Illinois Bar No.: 6337427
**SHAMIS & GENTILE P.A.**
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
Telephone: (786) 479-2299
Email: ashamis@shamisgentile.com

*Counsel for Marty Wooley and the Putative
Class*

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of August 2025. I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court via the Court's CM/ECF system which will deliver electronic service to all counsel of record.

/s/ *Gary M. Klinger*
Gary M. Klinger