**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TONY GOODRUM, JASON MIXON, and MARTY WOOLEY, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:25-cv-07062 (Consolidated with No. 1:25-cv-08963) |
| v. | ) ) | Hon. John Robert Blakey |
| VERADIGM, INC., | ) ) | |
| Defendant. | ) | |

**PLAINTIFFS' UNOPPOSED MOTION FOR
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

i

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....................................................................................................................1

II. CASE SUMMARY ................................................................................................................2

    A. The Data Incident .........................................................................................................2

    B. Procedural History, Mediation, and Settlement ..........................................................3

III. SUMMARY OF THE SETTLEMENT .................................................................................4

    A. The Settlement Class ....................................................................................................4

    B. Settlement Class Member Benefits ..............................................................................4

        1. Cash Payment A – Documented Losses ................................................................5

        2. Cash Payment B – Alternate Cash ........................................................................6

        3. Medical Data Monitoring ......................................................................................6

        4. Injunctive Relief ....................................................................................................6

        5. Residual Funds ......................................................................................................7

    C. Settlement Administration ............................................................................................7

        1. Notice and Claim Process ......................................................................................7

        2. Settlement Website and Telephone Line ...............................................................8

        3. Objections and Requests to Opt Out of the Settlement .........................................8

    D. The Release ...................................................................................................................9

    E. Attorneys' Fees, Costs, and Service Awards ...............................................................9

IV. ARGUMENT .........................................................................................................................9

    A. The Settlement Class Should be Certified for Settlement Purposes ...........................11

        1. Numerosity ...........................................................................................................11

2.  Commonality ................................................................................................ 11

3.  Typicality .................................................................................................... 12

4.  Adequacy of Representation ....................................................................... 12

5.  Certification under Rule 23(b)(3) is appropriate ....................................... 13

    a.  Predominance ...................................................................................... 13

    b.  Superiority ........................................................................................... 14

B.  Plaintiffs' Counsel Should Be Appointed as Settlement Class Counsel ............................ 15

C.  The Proposed Settlement Satisfies the Standard for Preliminary Approval ..................... 16

    1.  The Class Representatives and Settlement Class Counsel Have Adequately
        Represented the Settlement Class ................................................................ 17

    2.  The Settlement was Negotiated at Arm's-Length by Vigorous Advocates, and
        There has been no Fraud or Collusion ........................................................ 18

    3.  The Settlement Provides Adequate Relief ................................................... 18

        a.  The Costs, Risks, and Delay of Trial and Appeal Favor Settlement Approval ...... 20

        b.  The Method of Providing Relief is Effective ........................................ 21

        c.  The Proposed Award of Attorneys' Fees is Fair and Reasonable .......................... 22

        d.  There Are No Additional Agreements to Identify Under Rule 23(e)(3) ............... 22

    4.  The Settlement Treats Class Members Equitably Relative to Each Other .................. 23

    5.  The Opinions of Class Counsel and Plaintiffs Favor Preliminary Approval .............. 23

D.  The Proposed Notice Program, Notice, Claim Form, and Claims Process Are
    Reasonable and Should be Approved ................................................................ 24

VI.  CONCLUSION ..................................................................................................... 26

4911-7592-3812, v. 1

# TABLE OF AUTHORITIES

**Cases**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**Page(s)**

*Amchem Prods. Inc. v. Windsor*,
　　521 U.S. 591 (1997) ............................................................................................11, 14

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*,
　　133 S. Ct. 1184 (2013) ................................................................................................13

*Armstrong v. Bd of Sch. Directors of the City of Milwaukee*,
　　616 F.2d 305 (7th Cir. 1980) ...................................................................................9, 17

*Birchmeier v. Caribbean Cruise Line, Inc.*,
　　896 F.3d 792 (7th Cir. 2018) ....................................................................................... 22

*Butler v. Am. Cable & Tel., LLC*,
　　No. 09 CV 5536, 2011 WL 2708399 (N.D. Ill. Jul. 12, 2011) ................................10

*Eisen v. Carlisle & Jacquelin*,
　　417 U.S. 156 (1974) ....................................................................................................24

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
　　No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869 (N.D. Ill. Aug. 20, 2009) .............18

*Gautreaux v. Pierce*,
　　690 F.2d 616 (7th Cir. 1982) .........................................................................................9

*Gehrich v. Chase Bank USA, N.A.*,
　　316 F.R.D. 215 (N.D. Ill. 2016) .................................................................................19

*Grady v. de Ville Motor Hotel, Inc.*,
　　415 F.2d 449 (10th Cir. 1969) ....................................................................................19

*Hammond v. The Bank of N.Y. Mellon Corp.*,
　　No. 08 Civ. 6060 (RMB)(RLE), 2010 WL 2643307 (S.D.N.Y. June 25, 2010) .................... 20

*Hanlon v. Chrysler Corp.*,
　　150 F.3d 1011 (9th Cir. 1998) ....................................................................................19

*Hinman v. M & M Rental Ctr.*,
　　545 F. Supp. 2d 802 (N.D. Ill. 2008) .................................................................... 12

*In re Anthem, Inc. Data Breach Litig.*,
　　327 F.R.D. 299 (N.D. Cal. Aug. 15, 2018) ............................................................ 14

*In re AT&T Mobility Wireless Data Services Sales Litig.*,
　　270 F.R.D. 330 (N.D. Ill. 2010) ................................................................. *Passim*

iv

*In re Capital One TCPA Litig.*,
   80 F. Supp. 3d 781 (N.D. Ill. 2015) ..................................22

*In re Domestic Air Transp. Antitrust Litig.*,
   148 F.R.D. 297 (N.D. Ga. 1993) ................................... 23

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
   78 F.4th 677 (4th Cir. 2023) ....................................20

*In re Nat'l Collegiate Athletic Assoc. Student-Athlete Concussion Injury Litig.*,
   314 F.R.D. 580 (N.D. Ill. 2016) ................................... 10

*In re Sears, Roebuck & Co. Front-loading Washer Prods. Liab. Litig.*,
   No. 06 C 7023, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016) .................. 17

*In re TikTok, Inc., Consumer Priv. Litig.*,
   565 F. Supp. 3d 1076 (N.D. Ill. 2021) ........................... 10, 13

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) ............................... 9, 16

*Karpilovsky v. All Web Leads, Inc.*,
   No. 17 C 1307, 2018 WL 3108884 (N.D. Ill. June 25, 2018) .................. 11, 18, 22

*Kolinek v. Walgreen Co.*,
   311 F.R.D. (N.D. Ill. 2015) ..................................... 22

*Kusinski v. Macneil Auto. Prod. Ltd.*,
   No. 17-CV-3618, 2018 WL 3814303 (N.D. Ill. Aug. 9, 2018) ............. 22

*Maldini v. Marriott Int'l*,
   140 F.4th 123 (4th Cir. 2005) ................................. 20

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950) ......................................... 24

*Parker v. Risk Mgmt. Alts., Inc.*,
   206 F.R.D. 211 (N.D. Ill. 2002) ............................... 12

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ......................................... 14

*Retired Chi. Police Ass'n v. City of Chi.*,
   7 F.3d 584 (7th Cir. 1993) .................................. 13

*Rosario v. Livaditis*,
   963 F.2d 1013 (7th Cir. 1992) ............................... 14

*Savanna Grp., Inc. v. Trynex, Inc.*,
No. 10-cv-7995, 2013 WL 66181 (N.D. Ill. 2013) .................................................. 11

*Spates v. Roadrunner Transp. Sys., Inc.*,
No. 15 C 8723, 2016 WL 7426134 (N.D. Ill. 2016) ............................................. 12

*Synfuel Techs, Inc. v. DHL Express (USA), Inc*.,
463 F.3d 646 (7th Cir. 2006) .............................................................................. 21

*Taubenfeld v. Aon Corp.*,
415 F.3d 597 (7th Cir. 2005) .............................................................................. 22

*Theus v. Brinker, Int'l, Inc.*,
No. 3:18-cv-686-TJC-MCR, 2025 WL 1786346 (M.D. Fla. June 27, 2025) ....................... 20

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) ......................................................................................... 11

*Wright v. Nationstar Mtg. LLC,*
No. 14 C 10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ............................ 21

## **Rules**

Fed. R. Civ. P. 12 ................................................................................................ 20

Fed. R. Civ. P. 23 ........................................................................................ *Passim*

Fed. R. Civ. P. 56 ................................................................................................ 20

## **Other Authorities**

*Newberg on Class Actions* § 11:50 ..................................................................... 21

Manual for Complex Litigation § 21.632 (4th ed. Supp. 2010) .......................... 9

Annotated Manual for Complex Litigation (Fourth) § 21.662 (2012) ............... 10

7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and
Procedure § 1778 .......................................................................................... 14

Plaintiffs,[1] individually, and on behalf of all others similarly situated, respectfully move pursuant to Fed. R. Civ. P. 23(a), (b)(3), and (e) to certify the Settlement Class, preliminarily approve the proposed Settlement, and approve the Notices, Notice Program, Claim Form, and Claims Process. In support of their motion, Plaintiffs attach as **_Exhibit B_** a Joint Declaration of Class Counsel Gary M. Klinger and Jeff Ostrow ("Joint Dec.").

## I.     <u>INTRODUCTION</u>

This case arises from a Data Incident suffered by Defendant which impacted the Private Information belonging to more than two million of Defendant's Clients' patients. Joint Dec. ¶ 2. Plaintiffs filed a consolidated class action against Defendant for not adequately protecting their Private Information. _Id._ Defendant denies any wrongdoing and liability, and asserted defenses to all claims. _Id._

Knowing the risks of litigation, the Parties engaged in settlement negotiations which included an arms-length mediation session with retired U.S. District Court Judge, Honorable Wayne R. Andersen of JAMS. Through these negotiations, the Parties reached an agreement providing for the creation of an $8,750,000 non-reversionary all cash Settlement Fund. Joint Dec. ¶ 8. The Settlement Fund will be used to pay for all Settlement Class Member Benefits, which include: (a) a cash payment of up to $5,000 upon the presentation of documented losses related to the Data Incident <u>or</u> a cash payment in the estimated amount of $50.00 without documentation; and two years of Medical Data Monitoring; (b) payment of all Settlement Administration Costs; and (c) payment of any Court-awarded attorneys' fees and costs to Class Counsel, and Service Awards to the Class Representatives. _Id._

---

[1] All capitalized terms herein shall have the same definitions as those defined in section II of the Settlement Agreement, a copy of which is attached as **_Exhibit A_**.

Plaintiffs and Class Counsel now respectfully request this Court: (1) preliminarily approve the Parties' Settlement as fair, adequate, reasonable, and within the reasonable range of possible final approval; (2) appoint Plaintiffs as Class Representatives; (3) appoint Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC and Jeff Ostrow of Kopelowitz Ostrow P.A. as Class Counsel, (4) provisionally certify the Settlement Class under Fed. R. Civ. P. 23(a), (b)(3), and (e) for settlement purposes only; (5) approve the Parties' proposed Notice Program, Notices, Claim Form, and Claims Process; (6) set deadlines for the Settlement Class to opt out or object to the Settlement and to submit Claims; (7) appoint Kroll Settlement Administration, LLC as the Settlement Administrator, and (8) schedule a Final Approval Hearing.

## II. CASE SUMMARY

### A. The Data Incident

Defendant is an Illinois based healthcare technology company that, through its subsidiaries, offers a variety of software and services to healthcare providers, including electronic health record and medical practice management tools. Joint Dec. ¶ 4. Defendant's Clients use certain of Defendant's software and services to, among other things, document their patient encounters and assist with obtaining payment for services. *Id.* Private Information (as defined in the Settlement Agreement) is collected by Defendant's Clients during these encounters and may be stored in Defendant's solutions. *Id.*

In December 2024, cybercriminals may have unlawfully accessed or acquired information belonging to Defendant's Clients' patients that was stored on Defendant's servers, including Settlement Class Members' Private Information. *Id.* ¶ 5. After conducting an investigation, Defendant concluded the information taken involved over two million Settlement Class Members. *Id.*

2

B. **Procedural History, Mediation, and Settlement**

On June 25, 2025, Plaintiffs Goodrum and Mixon filed a class action lawsuit related to the Data Incident. [ECF No. 1]. On July 31, 2025, Plaintiff Wooley filed a second action alleging similar causes to Plaintiffs Goodrum and Mixon and seeking to represent an overlapping putative class.

On August 1, 2025, following an agreement of Plaintiffs' counsel to work cooperatively and litigate in a single consolidated action, Plaintiffs moved to consolidate the actions while also moving to appoint lead counsel. [ECF No. 11]. The Court granted the motion to consolidate on August 19, 2025, but deferred consideration of the motion for appointment of interim class counsel until the cases are consolidated. [ECF No. 18].

Following the filing of the two complaints, the Parties began discussing the prospect of early resolution. They scheduled a mediation with experienced class action mediator Hon. Wayne Andersen (Ret.), for August 26, 2025, by Zoom.

In advance of the mediation, Plaintiffs consulted with their liability and damage experts. Joint Dec. ¶ 6. Plaintiffs also requested (and Defendant produced) certain information related to liability and damages, including, but not limited to, the number of individuals impacted by the Data Incident, the categories of Private Information involved, and various measures implemented since the Data Incident (or will be implemented in the future) to further enhance existing security defenses and help to protect against similar incidents in the future. *Id.*

On August 21, 2025, Plaintiffs filed their Consolidated Complaint, alleging claims for negligence, negligence *per se*, breach of implied contract, unjust enrichment, and declaration judgment and injunctive relief. [ECF No. 20].

The Parties mediated on August 26, 2025. Joint Dec. ¶ 8. After a day of arms-length and

contested negotiations, the Parties reached an agreement in principle to settle the case on a classwide basis. *Id.* The Settlement is the result of arm's-length negotiations and hard bargaining. *Id.* ¶ 9. The Parties executed the Agreement on August 29, 2025. Joint Dec. ¶ 11. The Parties also filed an Amended Consolidating Complaint adding Plaintiffs Clay and Walker on the same day. *Id.*

### III. <u>SUMMARY OF THE SETTLEMENT</u>

#### A. The Settlement Class

The Settlement provides for a nationwide Settlement Class defined as: "all living individual individuals residing in the United States whose Private Information may have been impacted in the Data Incident." Agreement ¶ 63. Excluded from the Settlement Class are (1) all persons who are directors, officers, and agents of Defendant, or their respective subsidiaries and affiliated companies; (2) governmental entities; and (3) the Judge assigned to the Action, that Judge's immediate family, and Court staff. *Id.*

#### B. Settlement Class Member Benefits

The $8,750,000 non-reversionary all cash Settlement Fund will be used to pay for the following Settlement Class Member Benefits: (1) Cash Payments and Medical Data Monitoring to those Settlement Class Members who submit Valid Claims; (3) all Settlement Administration Costs; (4) CAFA Notice costs; and (5) any Court-awarded attorneys' fees, costs, and Service Awards. *Id.* ¶ 70.

When submitting a Valid Claim, Settlement Class Members must choose either Cash Payment A – Documented Losses or Cash Payment B – Alternative Cash Payment. *Id.* ¶ 73. Additionally, all Settlement Class Members may also elect to receive Medical Data Monitoring. *Id.* All Cash Payments will be subject to a *pro rata* increase from the Net Settlement Fund if the

amount of Valid Claims is insufficient to exhaust the entire Net Settlement Fund or a decrease from the Net Settlement Fund if the amount of Valid Claims exhausts the amount of the Net Settlement Fund. *Id.* For purposes of calculating the *pro rata* increase or decrease, the Settlement Administrator must distribute the funds in the Net Settlement Fund first for payment of Medical Data Monitoring, then for Cash Payment A – Documented Losses, and then to all those who elect Cash Payment B – Alternate Cash. *Id.* Any *pro rata* increases or decreases will be on an equal percentage basis. *Id.* If a Settlement Class Member does not submit a Valid Claim, the Settlement Class Member will release his or her claims without receiving a Cash Payment or Medical Data Monitoring. *Id.* ¶ 73.

### 1. *Cash Payment A – Documented Losses*

Settlement Class Members may make a Claim for reimbursement for documented losses up to $5,000.00 each that are the direct result of the Data Incident. *Id.* ¶ 73(a). To receive a documented losses payment, a Settlement Class Member must elect Cash Payment A on the Claim Form attesting under penalty of perjury to incurring documenting losses. *Id.* Settlement Class Members will be required to submit reasonable documentation supporting the losses, which means documentation contemporaneously generated or prepared by a third party or the Settlement Class Member supporting a claim for expenses paid. *Id.* Non-exhaustive examples of reasonable documentation include telephone records, correspondence including emails, or receipts. *Id.* Except as expressly provided herein, personal certifications, declarations, or affidavits from the Settlement Class Member do not constitute reasonable documentation but may be included to provide clarification, context, or support for other submitted reasonable documentation. *Id.* Settlement Class Members shall not be reimbursed for expenses if they have been reimbursed for the same expenses by another source, including compensation provided in connection with the credit

monitoring and identity theft protection product offered as part of the notification letter provided by Defendant or otherwise. *Id.* If a Settlement Class Member does not submit reasonable documentation supporting a loss, or if their Claim is rejected by the Settlement Administrator for any reason, and the Settlement Class Member fails to cure his or her Claim, the Claim will be rejected and the Claim will be as if he or she elected Cash Payment B. *Id.*

### 2. *Cash Payment B – Alternate Cash*

As an alternative to Cash Payment A, a Settlement Class Member may elect to receive Cash Payment B – Alternate Cash, which is a cash payment in the estimated amount of $50.00. *Id.* ¶ 73(b). There is no need to provide supporting documentation to select this option.

### 3. *Medical Data Monitoring*

In addition to Cash Payment A or Cash Payment B, Settlement Class Members may also make a Claim for Medical Data Monitoring that will include two years of CyEx's medical data monitoring product with: (i) real time monitoring of the credit file with one credit-reporting agency; (ii) dark web scanning with immediate notification of potential unauthorized use; (iii) security freeze assistance; (iv) victim assistance; (v) $1,000,000.00 in identity theft insurance with no deductible; and (vi) access to fraud resolution agents to help investigate and resolve instances of identity theft. *Id.* ¶ 73(c).

### 4. **Injunctive Relief**

Prior to Final Approval, Defendant will provide Class Counsel with a written and signed declaration regarding the security measures, including the cost associated therewith, it implemented following the Data Incident (or will implement) to better protect Settlement Class Members' Private Information from future disclosure resulting from a subsequent data incident. *Id.* ¶ 73(d). The costs of any such security measures on the part of Defendant were paid or will be

paid separately by the Defendant and will not come out of the Settlement Fund. *Id.*

### 5. Residual Funds

Residual Funds shall be distributed to the International Association of Privacy Professionals Student Scholarship Fund, a non-profit organization jointly recommended by the Parties to be approved by the Court or any other organization approved by the Court. *Id.* ¶ 106.

### C. Settlement Administration

Following a competitive bid process the Parties retained Kroll Settlement Administration, LLC, an experienced settlement administrator, to administer the Settlement. Joint Decl. ¶ 31.

### 1. Notice and Claim Process

Within 14 days of the entry of Preliminary Approval, Defendant will provide Kroll with the Class List. Agreement ¶ 78. Within 10 days of entry of the Preliminary Approval Order, Kroll shall cause the CAFA Notice to be served on the appropriate government officials, the cost of which shall be payable from the Settlement Fund. Joint Decl. ¶ 34. Within 20 days of Preliminary Approval, Kroll shall commence the Notice Program using the forms of Notice approved by the Court. Agreement ¶ 79. Notice shall include Email Notice to Settlement Class Members with an Email Notice and Postcard Notices to those Settlement Class Members' whose Email Notice was undeliverable or for those whose email addresses are unknown. *Id.* ¶¶ 80-81.  The Email Notices will direct Settlement Class Members to submit Claim Forms online at the Settlement Website (or to print out the claim form and send by mail) and the Postcard Notices will inform Settlement Class Members that they may file a Claim Form online or that they may submit a paper Claim Form by detaching and completing a portion of the Postcard Notice. Joint Decl. ¶ 35. All Claims must be postmarked or submitted electronically within 15 days before the initial scheduled Final Approval Hearing. *Id.*

### 2. *Settlement Website and Telephone Line*

At the commencement of the Notice Program, Kroll shall establish a dedicated Settlement Website informing Settlement Class members of the terms of the Settlement, their rights, relevant dates and deadlines, and other related information. *Id.* ¶ 82. The Settlement Website shall include hyperlinks to the Agreement and, available for download, and all relevant documents to this Settlement. *Id.* ¶ 67. The Settlement Website shall provide Settlement Class members with the ability to complete and submit the Claim Form electronically. *Id.* ¶ 82.

Kroll will also establish a toll-free telephone help line that will answer Settlement-related inquiries and answer frequently asked questions. *Id.* ¶ 77(f). Settlement Class Members will also be able to request paper copies of the Long Form Notice, Claim Form, and the Agreement. *Id.*

### 3. *Objections and Requests to Opt Out of the Settlement*

Any Settlement Class member who wishes to opt out of the Settlement must provide written notice of their intent to opt out. *Id.* ¶ 83. A valid request to opt out must be mailed to the Settlement Administrator and postmarked on or before the last day of the Opt-Out Deadline (30 days before the initial scheduled Final Approval Hearing date). *Id.* The opt-out request must be personally signed by the Settlement Class member and contain the name, address, telephone number, and email address (if any), and include a statement indicating a request to be excluded from the Settlement Class. *Id.* Settlement Class Members who fail to submit a valid and timely request to opt out shall be bound by the Settlement. *Id.*

Settlement Class Members who wish to object must do so in writing by the last day of the Objection Period (no later than 30 days before the initial scheduled Final Approval Hearing date). *Id.* ¶ 84. Objections must fully comply with the requirements in the Agreement and the Preliminary

Approval Order. *Id.* ¶¶ 84-85. Objections must be mailed to the Clerk of the Court, Class Counsel, Defendant's counsel, and the Settlement Administrator. *Id.* ¶ 84.

### D.  The Release

Settlement Class Members who do not timely and validly opt out of the Settlement will be deemed to have released Defendant from the Released Claims. Joint Decl. ¶ 36. The Released Claims are narrowly tailored to the claims made in the Action. *Id.* The scope of the Releases is detailed in section XIII of the Agreement. *Id.*

### E.  Attorneys' Fees, Costs, and Service Awards

As part of the Motion for Final Approval and no later than 45 days before the Final Approval Hearing, Class Counsel will submit their Application for Attorneys' Fees, Costs, and Service Awards. Agreement ¶ 103 Class Counsel will request the Court to approve an award of attorneys' fees of up to one-third of the Settlement Fund, plus reimbursement of reasonable litigation costs. *Id.* Class Counsel will also request Service Awards of up to $2,500.00 for each of the Class Representatives, in recognition of their efforts in this Action and commitment to the Settlement Class. *Id.* ¶ 104.

## IV.  <u>ARGUMENT</u>

Courts "naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *see also Armstrong v. Bd of Sch. Directors of the City of Milwaukee*, 616 F.2d 305, 312 (7th Cir. 1980). Any class action settlement requires: (i) the Court to preliminarily approve it; (ii) that members of the settlement class receive notice; and (iii) that the Court hold a final hearing to decides whether it is fair, reasonable, and adequate. *See Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); Manual for Complex Litigation § 21.632 (4th ed. Supp. 2010); *see generally* Fed. R. Civ. P. 23(e). In considering preliminary approval, the Court must determine

9

whether the settlement is within the range of what might be found fair, reasonable, and adequate. *In re AT&T Mobility Wireless Data Services Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010).

When parties seek preliminary approval, the court must: (1) determine if it will likely be able to certify the class for purposes of judgment; (2) determine whether the proposed settlement is within the range of possible approval under Rule 23(e); and (3) approve the notice plan and direct notice be provided "in a reasonable manner to all class members who would be bound" by the proposed settlement agreement. *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1084 (N.D. Ill. 2021) (internal citations omitted).

During preliminary approval, "the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." Annotated Manual for Complex Litigation (Fourth) § 21.662 (2012). Courts "should refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." *In re AT&T*, 270 F.R.D. at 346 (citing *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir.1985)). The preliminary approval standard is less rigorous than at final approval. *See In re Nat'l Collegiate Athletic Assoc. Student-Athlete Concussion Injury Litig.*, 314 F.R.D. 580, 588 (N.D. Ill. 2016); *see also Butler v. Am. Cable & Tel., LLC*, No. 09 CV 5536, 2011 WL 2708399, at *8 (N.D. Ill. Jul. 12, 2011) ("Although the 'fair, reasonable, and adequate standard' and the factors used to measure it are ultimately questions for the fairness hearing, a more summary version of the same inquiry takes place at the preliminary phase.") (citations omitted).

This Settlement is fair, reasonable, adequate, and well within the range of possible approval, because it provides excellent benefits to all Settlement Class members, avoids the uncertainty of litigation, and avoids the need to resolve contentious factual and legal issues. Joint

Decl. ¶ 38. The Settlement further satisfies the factors set forth by the Seventh Circuit to assessing a proposed settlement agreement.

### A. The Settlement Class Should be Certified for Settlement Purposes.

The benefits of a settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). For the Court to certify a class, Plaintiff must satisfy Rule 23(a), and one of the requirements of Rule 23(b). The requirements of Rule 23(a) are numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P. 23(a). Here, Plaintiffs seek certification of the Class under Rule 23(b)(3), which provides that certification is appropriate when common questions predominate over individual issues and showing that a class action is the superior method of handling the case. Fed. R. Civ. P. 23(b)(3).

**1. *Numerosity.*** Numerosity under Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all class members is impracticable. Fed. R. Civ. P. 23(a)(1). Classes of 40 members are sufficient. *See Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *6 (N.D. Ill. June 25, 2018); *Savanna Grp., Inc. v. Trynex, Inc.*, No. 10-cv-7995, 2013 WL 66181, at *4 (N.D. Ill. 2013). Here, the joinder of approximately two million individuals would certainly be impracticable, and thus, the numerosity element is satisfied. Joint Decl. ¶ 19.

**2. *Commonality.*** Rule 23(a)(2) requires there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2)'s commonality requirement is satisfied where the claims asserted "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). Here, the claims turn on whether Defendant's data security was adequate to protect Settlement Class members' Private Information. Joint Decl. ¶ 20. The

common questions alleged in the operative Complaint are central to the causes of action can be addressed on a class-wide basis, because they all relate back to the same common nucleus of operative fact—the Data Incident and Defendant's data protection measures. *See Parker v. Risk Mgmt. Alts., Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002) ("[A] common nucleus of operative fact is usually enough to satisfy the [commonality] requirement"). That inquiry does not vary between Settlement Class members and can be fairly resolved—for settlement purposes—for all at once. This requirement in the context of cybersecurity incident class actions is readily satisfied. *See Remijas v. The Neiman Marcus Group, LLC*, No. 1:14CV01735 (N.D. Ill. Nov. 15, 2019).

   ***3. Typicality.*** Rule 23(a)(3) further requires that 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Spates v. Roadrunner Transp. Sys., Inc.*, No. 15 C 8723, 2016 WL 7426134, at *2 (N.D. Ill. 2016). "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [the] claims are based on the same legal theory." *Id.* (quoting *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006)). Put differently, where the defendant engages "in a standardized course of conduct vis-à-vis the class members, and plaintiffs' alleged injury arises out of that conduct," typicality is "generally met." *Hinman v. M & M Rental Ctr.*, 545 F. Supp. 2d 802, 806-07 (N.D. Ill. 2008) (citing, *e.g., Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)). Here, the claims all involve Defendant's conduct toward the Settlement Class, and the claims are all based on the same legal theories. Joint Decl. ¶ 21. Accordingly, the typicality requirement is satisfied.

   ***4. Adequacy of Representation.*** The test for assessing adequacy of representation under Rule 23(a)(4) has two components: (1) "the representatives must not possess interests which are antagonistic to the interests of the class," and (2) "the representatives' counsel must be

12

qualified, experienced and generally able to conduct the proposed litigation." *In re TikTok, Inc. Consumer Priv. Litig.*, 565 F. Supp. 3d at 1085 (quoting *CV Reit, Inc. v. Levy*, 144 F.R.D 690, 698 (S.D. Fla. 1992)); *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7ᵗʰ Cir. 1993). Here, the Class Representatives and Class Counsel meet the test of adequacy.

First, no conflict exists between Plaintiffs and the Settlement Class Members. Joint Decl. ¶ 23. Plaintiffs are members of the Settlement Class and do not possess any interests antagonistic to the Settlement Class. *Id.* ¶ 24. Plaintiffs were harmed in the same way as all Settlement Class Members when Defendant allegedly failed to secure their Private Information. *Id.* Plaintiffs and all Settlement Class Members seek relief for injuries arising from the same Data Incident. *Id.* Considering this common event and injury, the Plaintiffs have every incentive to vigorously pursue the class claims and have prosecuted this case for the benefit of all Settlement Class Members. *Id.*

Moreover, Class Counsel are qualified to represent the Settlement Class. They have extensive experience in data privacy and consumer class actions. *Id.*, Exs. 1-2.

### 5. Certification under Rule 23(b)(3) is appropriate.

Plaintiffs seek to certify the Settlement Class under Rule 23(b)(3). Here, Rule 23(b)(3) is satisfied because: (i) the questions of law and fact common to Settlement Class members predominate over any individual questions; and (ii) the class action mechanism is superior to any other methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

### a. Predominance. Rule 23(b)(3) "does not require a plaintiff seeking class certification to prove that each element of [the] claim is susceptible to classwide proof." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds,* 133 S. Ct. 1184, 1196 (2013). Plaintiffs need only show "common questions 'predominate over any questions affecting only individual [class] members.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3)). Class certification is proper where common

13

questions are a major aspect of a case and can be resolved at once. *See* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778, at 528 (2d ed. 1986). These questions need not be dispositive of the entire action. *Id.* at 528-29. The presence of "some factual variation among the class grievances will not defeat a class action." *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). Here, the claims are based on a single Data Incident that affected all Settlement Class Members. Because these core issues involve uniform conduct common to all Settlement Class members, the Rule 23(b)(3) predominance requirement is satisfied. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 213-315 (N.D. Cal. Aug. 15, 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues).

> ***b. Superiority.*** Finally, a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the proposed Settlement Class. Because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."). Here, there is not sufficient incentive for Settlement Class members to prosecute individual actions. Joint Decl. ¶ 25. While the total economic harm caused by this Data Incident is significant, each individual claim is too small compared to the costs of litigating it separately. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). The cost of

individually litigating against Defendant would easily exceed the value of any relief that could be obtained by any one consumer. Joint Decl. ¶ 26. Thus, a class action is a superior method of adjudication. Adjudicating individual actions here is impracticable: the amount in dispute for each class member is too small, the issues are too complex, and the required expenses too costly. Joint *Id.* ¶ 27.

Accordingly, the Court should certify the Settlement Class for settlement purposes.

**B.  Plaintiffs' Counsel Should Be Appointed as Settlement Class Counsel**

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the court must consider the proposed class counsel's (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

As discussed herein, proposed Class Counsel have extensive experience prosecuting similar class actions and other complex litigation. Joint Decl., Ex. 1-2. They have diligently investigated and efficiently prosecuted the claims in this matter, dedicated substantial resources toward the endeavor, and have successfully and fairly negotiated the Settlement for the benefit of Plaintiffs and the Settlement Class. *Id*. ¶ 46. Accordingly, Plaintiffs request that the Court appoint Gary M. Klinger and Jeff Ostrow as Settlement Class Counsel.

**C.  The Proposed Settlement Satisfies the Standard for Preliminary Approval**

After it has been determined that certification of the class is appropriate, the Court must then determine whether the Settlement is worthy of preliminary approval of providing notice to the class. The Court must determine it will "likely" be able to grant final approval under the Rule

23(e)(2) factors, deciding whether:

> (A) the class representative and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Before the 2018 Rule 23(e) amendment, the Seventh Circuit set forth factors to assess whether a proposed settlement agreement is within the range of fair, reasonable, and adequate.

> In deciding whether to preliminarily approve a settlement, courts must consider: (1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among effected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed.

*In re AT & T Mobility Wireless Data Services Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010); In weighing these factors, a court should "recognize[] that the first factor, the relative strength of the plaintiffs' case on the merits as compared to what the defendants offer by way of settlement, is the most important consideration." *Isby*, 75 F.3d at 1199. Courts should "consider the facts in the light most favorable to the settlement." *Id.* at 1198-99. "The essence of settlement is compromise . . . Thus the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *EEOC v. Hiram Walker & Sons*, 768 F.2d 884, 889 (7th Cir. 1985).

The proposed Settlement here is well "within the range of possible approval" and weighs in favor of the Court preliminarily approving the Settlement. Because the Rule 23(e)(2) and Seventh Circuit factors overlap, courts often consider them together and this Motion does as well.

16

1.  **The Class Representatives and Settlement Class Counsel Have Adequately Represented the Settlement Class.**

For a variety of reasons, class actions are especially well-suited to compromise. Common reasons include the duration of such cases, uncertain outcomes, and difficulties of proof. This is supported by an "overriding public interest in favor of settlement," particularly in complex class actions. *In re Sears, Roebuck & Co. Front-loading Washer Prods. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *6 (N.D. Ill. Feb. 29, 2016); *Armstrong*, 616 F.2d at 313 ("In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources."). This Action is no exception.

Even though the Settlement was reached at a relatively early stage of the proceeding, there is no reason to doubt the Parties did enough to be in a position to present the Settlement to the Court and to satisfy the last Seventh Circuit factor. Joint Decl. ¶ 43. The Parties entered into the Settlement only after both sides were fully apprised on the facts, risks, and obstacles involved with protracted litigation. *Id.* ¶ 44. From the beginning of their investigation, Class Counsel conducted extensive research regarding Plaintiffs' claims, Defendant, Defendant's Clients, and the Data Incident. *Id.* ¶ 45. After working extensively with experts and conducting necessary informal discovery, the Parties negotiated the material terms of a class settlement the full Settlement Agreement. *Id.* ¶ 46. As such—and considering counsel's extensive experience in data breach litigation, the Parties were able to enter into settlement negotiations with a complete understanding of the strengths and weaknesses of the case, as well as the potential value of the claims. *Id.*

The Rule 23(e)(2)(A) adequacy of representation requirement is satisfied as to the Class Representatives because Plaintiffs' interests are coextensive with—and not antagonistic to—the

interests of the Settlement Class. *See G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869, at *15-16 (N.D. Ill. Aug. 20, 2009). Here, as discussed *supra*, Plaintiffs' claims are aligned with that of the other Settlement Class Members. They thus have every reason to vigorously pursue the claims of the Settlement Class, as they have done to date by remaining actively involved in this matter since its inception, participating in the pre-suit litigation process, and involving themselves in the settlement process. Joint Decl. ¶ 24. Further, Plaintiffs retained qualified and competent counsel with extensive experience in litigating consumer class actions, particularly privacy actions. *See, e.g.*, *Karpilovsky*, 2018 WL 3108884, at *8.

### 2. The Settlement was Negotiated at Arm's-Length by Vigorous Advocates, and There has been no Fraud or Collusion.

Here, the Settlement was derived from good faith, arm's-length negotiations aided by an experienced neutral and the Parties' subsequent negotiations to arrive at the Agreement. Joint Decl. ¶ 10. There has been no fraud or collusion in entering into the Settlement Agreement. *Id*. Thus, Rule 23(e)(2)(B) is satisfied.

### 3. The Settlement Provides Adequate Relief.

Meeting the Rule 23(e)(2)(c) requirement and the Seventh Circuit's first two factors, the Settlement provides for excellent relief in light of the costs, risks, and delay of trial, the effectiveness of distributing relief, and the proposed attorneys' fees. "The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2006) (internal quotes and citations omitted). Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT & T Mobility Wireless Data Servs. Sales Litig*., 270 F.R.D. at 347.

4911-7592-3812, v. 1

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Newberg on Class Actions* § 11:50. This is partially because "the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial . . . ." *Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969). It is also, in part, because "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ("The essential point here is that the court should not "reject[ ]" a settlement "solely because it does not provide a complete victory to plaintiffs," for "the essence of settlement is compromise.").

Here, the Settlement provides for monetary relief from a non-reversionary common fund and equitable relief in the form of specific data security enhancements designed to better protect Settlement Class Members' Private Information. All Settlement Class Members may submit a Claim for a Cash Payment and Medical Data Monitoring.

Plaintiffs' contentions that Defendant failed to secure and safeguard their Private Information involves many facts surrounding the Data Incident, including the manner in which the information was compromised, the time the information was compromised, the types of information involved, and whether any of the information was accessed or used as a result. Joint Decl. ¶ 3. Proving causation in this case presents a significant hurdle. *Id.* Quantifying damages is similarly difficult. *Id.* Defendant would likely attempt to present evidence and arguments to demonstrate: (i) their security was adequate, (ii) Plaintiffs' damages were not, in whole or in part,

caused by the Data Incident; and (iii) assessments by third parties found that Defendant complied with applicable data security standards. *Id.*

Accordingly, the Settlement benefits are fair, adequate, and reasonable.

### a. The Costs, Risks, and Delay of Trial and Appeal Favor Settlement Approval.

The value achieved through the Settlement here is guaranteed, where chances of prevailing on the merits are not certain. While Plaintiffs strongly believe in the merits of their case, they also recognize that Defendant would assert a number of potentially case-dispositive defenses. Joint Decl. ¶ 47. Should litigation continue, Plaintiffs would have to immediately survive a motion to dismiss in order to proceed with litigation. *Id.* Attributable in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this generally face substantial hurdles, even to survive the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g.*, *Maldini v. Marriott Int'l*, 140 F.4th 123 (4th Cir. 2005); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 78 F.4th 677 (4th Cir. 2023); *Theus v. Brinker, Int'l, Inc.*, No. 3:18-cv-686-TJC-MCR, 2025 WL 1786346 (M.D. Fla. June 27, 2025). Moreover, because of the quickly evolving nature of case law pertaining to data protection, it is likely a win by any party will result in appeals, which will further increase costs and extend the time until Plaintiffs and putative class members can have a chance at relief. Expert testimony will be required to support liability and damages. Joint Decl. ¶ 48. Plaintiffs have already incurred tens of thousands of dollars in expert consulting fees. *Id.* The time and resources it will take to litigate the Action counsels in favor of approving the Settlement. *See In re AT&T Mobility Wireless*, 270 F.R.D. at 347 ("Even if Plaintiffs were to succeed on the merits at some future date, a future victory is not as valuable as a present victory.

4911-7592-3812, v. 1

Continued litigation carries with it a decrease in the time value of money, for '[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now.'") (citations omitted).

Although Plaintiffs dispute the Defendant's defenses, it is undeniable their likelihood of success at trial is far from certain. "In light of the potential difficulties at class certification and on the merits . . . , the time and extent of protracted litigation, and the potential of recovering nothing, the relief provided to class members in the Settlement Agreement represents a reasonable compromise." *Wright v. Nationstar Mtg. LLC*, No. 14 C 10457, 2016 WL 4505169, at *10 (N.D. Ill. Aug. 29, 2016).

### b.  *The Method of Providing Relief is Effective.*

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Committee Note to the 2018 amendments to Rule 23(e)(2) says that this factor is intended to encourage courts to evaluate a proposed claims process "to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."

This Settlement provides significant benefits in the form of Cash Payments, Medical Data Monitoring, and equitable relief. Cash Payments will be distributed based upon information provided by Settlement Class Members on their respective Claim Forms. Settlement Class Members may receive some compensation with a simple attestation, and greater compensation by documenting their losses. Cash Payments will be by efficient electronic means or by paper check in a reasonable amount of time following the Effective Date. Thus, the means by which the relief will be distributed is fair, efficient, and effective.

4911-7592-3812, v. 1

### c. The Proposed Award of Attorneys' Fees is Fair and Reasonable.

"[T]he terms of any proposed award of attorney's fees, including timing of payment," are also factors in considering whether the relief provided to the Class in a proposed settlement is adequate. Fed. R. Civ. P. 23(c)(2)(C)(iii). Plaintiffs' counsel will seek an amount equal to up to one-third of the Settlement Fund for attorneys' fees plus the reimbursement of litigation costs, to be paid according to the terms of the Settlement. Joint Decl. ¶ 28. This percentage is consistent with other approved class settlements, including privacy class settlements. *See, e.g.*, *Kolinek v. Walgreen Co.*, 311 F.R.D. at 501 (N.D. Ill. 2015) (awarding 36% of net settlement fund in class settlement); *Martin v. JTH Tax, Inc.*, No. 13-cv-6923, ECF. No. 85 (N.D. Ill. Sept. 16, 2015) (awarding fees of 38% of net settlement fund in class settlement); *Kusinski v. Macneil Auto. Prod. Ltd.*, No. 17-CV-3618, 2018 WL 3814303, at *1 (N.D. Ill. Aug. 9, 2018) (awarding 1/3 of the gross settlement fund); *Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 795 (7th Cir. 2018) (affirming post-*Pearson* fee award in TCPA class action that included, *inter alia*, "the sum of 36% of the first $10 million"); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) (same); *Taubenfeld v. Aon Corp.*, 415 F.3d 597, 600 (7th Cir. 2005) (noting table of 13 cases in the Northern District of Illinois submitted by class counsel showing fees awarded ranged from 30% to 39% of the settlement fund); *Karpilovsky v. All Web Leads, Inc.*, 17-cv-01307, ECF No. 173 (N.D. Ill. Aug 8, 2019) (approving fees of 35% of the settlement fund). Settlement Class Counsel achieved a great result for the Settlement Class after undertaking substantial risk in bringing this Action on a pure contingency basis, and they should be fairly compensated.

### d. There Are No Additional Agreements to Identify Under Rule 23(e)(3).

There are no additional agreements required to be identified under Fed. R. Civ. P. 23(e)(3). Joint Decl. ¶ 51. Because no such additional agreements exist, this factor is neutral.

22

### 4. The Settlement Treats Class Members Equitably Relative to Each Other.

Finally, Rule 23(e) requires that the settlement "treat[] class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the proposed Settlement does not improperly discriminate against any Settlement Class members. Joint Decl. ¶ 17. All are eligible to make a Claim for Cash Payments and Medical Data Monitoring, and all will equally benefit from the equitable relief. *Id.* The Settlement provisions for *pro rata* distributions, including the possibility of *pro rata* increase or decrease based on the amounts claimed, is measured and equitable. *Id.*

Class Counsel intends on seeking Services Awards of up to $2,500.00 for the Class Representatives services on behalf of the Settlement Class. The amount is fair and reasonable. The award is significantly less than the documented loss amount any given Settlement Class Member can claim for Cash Payment A and does not evidence any improper motivation to settle or give rise to undue inequities across the Settlement Class. Joint Decl. ¶ 18. As will be further shown during the final approval stage, the Service Award amounts are well in line with awards in other similar data breach cases and class actions in general, trending on the lower side. *Id.*

### 5. The Opinions of Class Counsel and Plaintiffs Favor Preliminary Approval.

The Seventh Circuit's third and fourth factors are also satisfied at this stage. The Court should greatly consider the recommendations of Parties' counsel, given their considerable experience in data breach litigation. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312-13 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted). Class Counsel have substantial experience prosecuting large, complex consumer class actions. Joint Decl. ¶ 14. After engaging in informal discovery and settlement negotiations, they are confident the Settlement provides significant relief to the Settlement Class

23

and is in their best interests. *Id.* ¶ 46. The Plaintiffs' agreement to the Settlement evidences their support.

Given that Notice has not yet issued to the Settlement Class, it is premature to gauge their support, but in Class Counsel's experience, the Settlement terms will be viewed positively by the Settlement Class and with their support. *Id.* ¶ 49. Any opposition to the Settlement can be addressed at the final approval stage.

**D. The Proposed Notice Program, Notice, Claim Form, and Claims Process Are Reasonable and Should be Approved.**

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Notice Program provides the best notice practicable here. Joint Decl. ¶ 32. The Parties have agreed that Kroll should be the Settlement Administrator. Kroll and its principals have a long history of successful class action settlement administrations, including for data breach actions. *Id.*

The Parties drafted the form of the Notices with Kroll's assistance. Joint Decl. ¶ 33. The Notice will be disseminated directly to Settlement Class members whose names and addresses can be identified with reasonable effort from Defendant's records, and through databases tracking nationwide addresses and address changes. *Id.* Kroll will create and administer the Settlement Website containing important and up-to-date information about the Settlement and maintain the

24

dedicated toll-free telephone number which Settlement Class members may use to obtain and request valuable Settlement information. *Id.*

Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." The proposed Postcard Notice satisfies this requirement, as it notifies Settlement Class members of Class Counsel's intended application for attorneys' fees and costs. It also complies with Rule 23 and due process because, *inter alia*, it informs the Settlement Class of: (1) the nature of the Action; (2) the essential Settlement terms, the claims asserted, and the Settlement benefits offered; (3) the binding effect of a judgment absent exclusion from the Settlement Class; (4) the deadlines to opt out or objection or to opt out; (5) the Claims process and Claim Deadline; (6) how to access the Settlement Website and the Long Form Notice containing more detailed information, including the opt out or objection processes and other Settlement-related documents; and (7) how to make inquiries to the Settlement Administrator. Fed. R. Civ. P. 23(c)(2)(B). The Long Form Notice also satisfies the requirements, detailing much more information about the Settlement and Settlement Class members' rights under it and providing Class Counsel's information.

The Court should also approve the Claim Form and Claims Process. Both are objectively reasonable and easy to understand. Joint Decl. ¶ 37. *Id.* The Claim Form is simple to fill out and has instructions for those seeking to claim documented losses. Settlement Class Members have the mail in the Claim Form or submit it electronically on the Settlement Website. *Id.* The Settlement Administrator will employ procedures to prevent fraud and abuse in the Claim Process. *Id.* If a Claim Form is rejected for incomplete or inaccurate information, and/or omitting required information, the Settlement Administrator will send a Notice of Deficiency to the Settlement Class Member explaining what information is missing or inaccurate and needed to validate the Claim

and have it submitted for consideration, providing time to cure. *Id.*

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiffs and Class Counsel respectfully the Court: (1) preliminarily approve the terms of the Settlement as fair, adequate, and reasonable; (2) provisionally certify the Settlement Class for settlement purposes only; (3) appoint Gary M. Klinger, and Jeff Ostrow as Class Counsel and the Plaintiffs as Class Representatives; (4) approve the Notice Program and approve the form and content of the Notices; (5) approve the Claim Form and Claim Process, (6) approve the procedures set forth in the Settlement for Settlement Class Members to opt out or object; (7) stay all proceedings in this matter unrelated to the Settlement pending Final Approval; (7) stay and/or enjoin, pending Final Approval, any actions brought by Settlement Class Members concerning a Released Claim; and (8) schedule a Final Approval Hearing for a date at least 120 days following Preliminary Approval. A copy of a proposed Preliminary Approval Order is attached as ***Exhibit C***.

Date: August 29, 2025.                                    Respectfully Submitted,

*/s/ Jeff Ostrow*
**KOPELOWITZ OSTROW P.A.**
1 West Las Olas Blvd., Ste. 500
Fort Lauderdale, FL 33301
Tel: 954.332.4200
ostrow@kolawyers.com

*/s/ Gary M. Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: 866.252.0878
gklinger@milberg.com

*Counsel for Plaintiffs and the Settlement Class*

4911-7592-3812, v. 1

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Jeff Ostrow
Jeff Ostrow
**KOPELOWITZ OSTROW P.A.**
1 West Las Olas Blvd., Ste. 500
Fort Lauderdale, FL 33301
Tel: 954.332.4200
ostrow@kolawyers.com

4911-7592-3812, v. 1