# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| TONY GOODRUM, MARTY WOOLEY, TODD CLAY, and TANYA WALKER, individually and on behalf of all others similarly situated, | CASE NO.: 1:25-cv-07062 |
| Plaintiffs, | Hon. John Robert Blakey |
| v. | |
| VERADIGM, INC., | |
| Defendant. | |

**JOINT DECLARATION OF CLASS COUNSEL**
**IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

We, Gary Klinger and Jeff Ostrow, pursuant to Fed. R. Civ. P. 23(a), (b)(3), and (e), hereby declare as follows:

1.       We are the lead counsel for Plaintiffs[1] and proposed Class Counsel for the Settlement Class in this Action. We submit this declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. Unless otherwise noted, we have personal knowledge of the facts set forth in this declaration and could and would testify competently to them if called upon to do so.

2.       This case arises from a Data Incident suffered by Defendant which impacted the Private Information belonging to approximately 3.42 million of Defendant's Clients' patients.

---

[1] Unless otherwise modified in this Amended Motion for Preliminary Approval, capitalized terms herein shall have the same definitions as those defined in section II of the Settlement Agreement, a copy of which is attached to the Amended Unopposed Motion for Preliminary Approval as ***Exhibit A***. The terms "Settlement" or "Agreement" shall now mean the Settlement Agreement and Amendment to Settlement, collectively.

Plaintiffs filed a consolidated class action against Defendant for not adequately protecting their Private Information. Defendant denies any wrongdoing and liability and maintains its defenses to all claims.

3.     Plaintiffs' contentions that Defendant failed to secure and safeguard their Private Information involves many facts surrounding the Data Incident, including the manner in which the information was compromised, the time the information was compromised, the types of information involved, and whether any of the information was accessed or used as a result. Proving causation in this case presents a significant hurdle. Quantifying damages is similarly difficult. Defendant would likely attempt to present evidence and arguments to demonstrate: (i) their security was adequate, (ii) Plaintiffs' damages were not, in whole or in part, caused by the Data Incident; and (iii) assessments by third parties found that Defendant complied with applicable data security standards.

4.     Defendant is an Illinois based healthcare technology company that, through its subsidiaries, offers a variety of software and services to healthcare providers, including electronic health record and medical practice management tools. Defendant's Clients use certain of Defendant's software and services to, among other things, document their patient encounters and assist with obtaining payment for services. Private Information is collected by Defendant's Clients during these encounters and may be stored in Defendant's solutions.

5.     In December 2024, cybercriminals may have unlawfully accessed or acquired information belonging to Defendant's Clients' patients that was stored on Defendant's servers, including Settlement Class Members' Private Information. After conducting an investigation, Defendant concluded the information taken involved that of approximately 3.42 million Settlement Class Members.

6.      In advance of the mediation, Plaintiffs consulted with their liability and damage experts. Plaintiffs also requested, and Defendant produced, certain information related to the scope of the breach, including, but not limited to, the number of individuals impacted by the Data Incident, the categories of Private Information involved, and various measures implemented since the Data Incident (or will be implemented in the future) to further enhance existing security defenses and help to protect against similar incidents in the future. The information provided and relied upon by the Parties indicated that the Settlement Class was comprised of approximately 2.9 million people.

7.      On August 21, 2025, Plaintiffs filed their Consolidated Complaint, alleging claims for negligence, negligence *per se*, breach of implied contract, unjust enrichment, and declaration judgment and injunctive relief.

8.      Knowing the risks of litigation, the Parties engaged in settlement negotiations which included an arms-length mediation session on August 26, 2025 with retired U.S. District Court Judge, Honorable Wayne R. Andersen of JAMS. Through these negotiations and following later negotiations once the Parties learned the Class Size was larger, the Parties reached an agreement providing for the creation of a $10,500,000.00 non-reversionary all cash Settlement Fund. The Settlement Fund will be used to pay for all Settlement Class Member Benefits, which include: (a) a cash payment of up to $5,000.00 upon the presentation of documented losses related to the Data Incident or a cash payment in the estimated amount of $50.00 without documentation, and two years of Medical Data Monitoring; (b) payment of all Settlement Administration Costs; and (c) payment of any Court-awarded attorneys' fees and costs to Class Counsel, and Service Awards to the Class Representatives.

9.      The Settlement was the result of arm's-length negotiations and hard bargaining.

3

There has been no fraud or collusion in entering into the Settlement.

10. The Parties executed the Agreement on August 29, 2025. The Parties also filed an Amended Consolidated Complaint adding Plaintiffs Clay and Walker on the same day.

11. The Parties did not discuss attorneys' fees, costs, and Service Awards until after they reached agreement on all material Settlement terms.

12. Thereafter, pursuant to the Preliminary Approval Order, the Defendant provided the Class List to the Settlement Administrator, which was collected from several sources, including Defendant's Clients, and consisted of the data necessary to determine the Settlement Class and to provide Notice.

13. Following analysis and compilation from the various sources, it was determined that the Settlement Class was approximately five hundred thousand larger than what the Parties had relied on whey they initially negotiated the classwide relief. This is not uncommon as the size of settlement classes often changes once the Settlement Administrator conducts its audit and review.

14. In response, Plaintiffs demanded Defendant increase the Settlement Fund to properly compensate for the now larger Settlement Class. Thereafter, following arms-length discussions, the Parties negotiated a *pro rata* increase per Settlement Class member which results in an additional $1,750,00.00 in cash for the benefit of the Settlement Class. To ensure the new Settlement Fund amount was fair and reasonable, Class Counsel re-engaged Judge Andersen to discuss the new Settlement Class size and the corresponding increase in the amount Defendant had agreed to pay to settle the Action. Judge Andersen agreed with the Parties that maintaining the per person amount is the appropriate measure for the adjusted Settlement amount.

15. The final Class List does not contain the email address or physical addresses of the

additional Settlement Class Members. As a result, the Parties consulted with the Settlement Administrator for purposes of determining how to properly notice those individuals. The Settlement Administrator advised the Parties that it could attempt to do a reverse look-up to locate physical addresses or email addresses. For those Settlement Class Members for whom addresses could not be identified, the Settlement Administrator informed that Publication Notice is the most common and best method to reach those individuals to apprise them of the Settlement. The Parties then instructed the Settlement Administrator that upon Preliminary Approval it should undertake the reverse look-up process to obtain as many addresses as possible, but in an abundance of caution, also implement the Publication Notice as a backstop form of Notice. Although the Settlement Class size has risen by approximately 15%, there is no additional cost associated with doing direct notice and/or Publication Notice, because the Parties had realized a substantial savings from the initial estimate, when the Settlement Administrator, following receipt of the Class List, was able to identify a substantial number of new email addresses for the Settlement Class.

16.     The Parties then negotiated and signed the ASA on October 13, 2025.

17.     Class Counsel have substantial experience prosecuting large, complex consumer class actions. As can be seen from their respective resumes, attached hereto as ***Exhibits 1-2***, Class Counsel have significant experience in the litigation, certification, trial, and settlement of national class actions, including substantial time and resources dedicated to past and present data breach litigation across the country.

18.     This experience proved beneficial to Plaintiffs and the Settlement Class during Settlement negotiations.

19.     Class Counsel have devoted substantial time and resources to vigorously prosecute this Action and will continue to do so. Specifically, we have evaluated the claims; prepared

comprehensive pleadings; consulted with data security experts; propounded informal discovery requests on Defendant to which Defendant responded by providing information related to, among other things, the nature and cause of the Data Incident, the number and geographic location of victims impacted by the Data Incident, and the specific type of information breached; and participated in the mediation that ultimately resulted in this Settlement.

20.     The proposed Settlement does not improperly discriminate against any Settlement Class members. All are eligible to make a Claim for Cash Payments and Medical Data Monitoring, and all will equally benefit from the equitable relief. The Settlement provisions for *pro rata* distributions, including the possibility of *pro rata* increase or decrease based on the amounts claimed, is measured and equitable.

21.     Class Counsel intends on seeking Services Awards of up to $2,500.00 for the Class Representatives services on behalf of the Settlement Class. The amount is fair and reasonable. The award is significantly less than the documented loss amount any given Settlement Class Member can claim for Cash Payment A and does not evidence any improper motivation to settle or give rise to undue inequities across the Settlement Class. As will be further shown during the final approval stage, the Service Award amounts are well in line with awards in other similar data breach cases and class actions in general, trending on the lower side.

22.     Numerosity under Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all class members is impracticable. Here, the joinder of approximately two million individuals would certainly be impracticable, and thus, the numerosity element is satisfied.

23.     Rule 23(a)(2) requires there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2)'s commonality requirement is satisfied where the claims asserted "depend upon a common contention" that is "of such a nature that it is capable of class-wide

resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Here, the claims turn on whether Defendant's data security was adequate to protect Settlement Class members' Private Information.

24.     The claims all involve Defendant's conduct toward the Settlement Class, and the claims are all based on the same legal theories. Accordingly, the typicality requirement is satisfied.

25.     Plaintiffs are adequate representatives of the Settlement Class because they have cooperated with Class Counsel and assisted in providing important information in the preparation of the complaints filed in this Action. Plaintiffs have also diligently and adequately prosecuted this Action by, among other things, reviewing filings, promptly providing documents and information to Class Counsel, acting in the best interest of the Settlement Class, reviewing the Agreement, and accepting the classwide Settlement. Plaintiffs are committed to continue prosecuting this Action through Final Approval and protecting the interests of the Settlement Class.

26.     No conflict exists between Plaintiffs and the Settlement Class Members.

27.     Plaintiffs are members of the Settlement Class and do not possess any interests antagonistic to the Settlement Class. Plaintiffs were harmed in the same way as all Settlement Class Members when Defendant allegedly failed to secure their Private Information. Plaintiffs and all Settlement Class Members seek relief for injuries arising from the same Data Incident. Considering this common event and injury, the Plaintiffs have every incentive to vigorously pursue the class claims and have prosecuted this case for the benefit of all Settlement Class Members.

28.     Class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the proposed Settlement Class. There is not sufficient incentive for Settlement Class members to prosecute individual actions.

29.     The cost of individually litigating against Defendant would easily exceed the value

of any relief that could be obtained by any one consumer.

30.     Thus, a class action is a superior method of adjudication. Adjudicating individual actions here is impracticable: the amount in dispute for each class member is too small, the issues are too complex, and the required expenses too costly.

31.     Plaintiffs' counsel will seek an amount equal to up to one-third of the Settlement Fund for attorneys' fees plus the reimbursement of litigation costs, to be paid according to the terms of the Settlement. Class Counsel will formally request attorneys' fees and costs through an application that will be filed no less than 45 days before the original date set for the Final Approval Hearing with the Motion for Final Approval.

32.     The Settlement is not contingent on approval of the requests for attorneys' fees, costs, or Service Awards, and if the Court grants amounts other than what was requested, the remaining provisions of the Agreement shall remain in force.

33.     The Released Claims discharged against the Released Parties in the Agreement are narrowly tailored and are only claims arising out of or relating to the Data Incident.

34.     Following a competitive bid process the Parties retained Kroll Settlement Administration, LLC, an experienced settlement administrator. The Settlement Administration Costs will be between $1.35 million and $1.79 million, depending upon the total number of additional addresses the Settlement Administrator is ultimately able to identify. The Settlement Administration Costs did not change with the increase in the Settlement Class size and the inclusion of Publication Notice. The Parties anticipate the final amount will be below the higher end of the range.

35.     Following the Court's initial entry of Preliminary Approval, Kroll caused the CAFA Notice to be timely served on the appropriate government officials.

36.     Defendant also provided the Class List to the Settlement Administrator within the 14 days required by the initial order. Although the Settlement Administrator has commenced the Notice Program, no Notices have yet to be distributed to the Settlement Class. The Parties will ensure that Notice is disseminated to the Settlement Class within 20 days of the new Preliminary Approval date. The Parties drafted the form of the Notices with Kroll's assistance. The Notice will be disseminated directly to Settlement Class members whose names and addresses can be identified with reasonable effort from Defendant's records, and through databases tracking nationwide addresses and address changes, as well as through Publication Notice, as described above. Kroll will administer the Settlement Website containing important and up-to-date information about the Settlement and maintain the dedicated toll-free telephone number which Settlement Class members may use to obtain and request valuable Settlement information.

37.     The Settlement Administrator will send Email Notices and Postcard Notices to the vast majority of the Settlement Class for which the Defendant provided addresses in the Class List or to those who may be identified through the Settlement Administrator's research.

38.     Publication Notice will be utilized for the minority of the Settlement Class Members for which physical addresses or email addresses are not available or otherwise ascertainable.

39.     The Email Notices will direct Settlement Class Members to submit Claim Forms online at the Settlement Website (or to print out the claim form and send by mail) and the Postcard Notices will inform Settlement Class Members that they may file a Claim Form online or that they may submit a paper Claim Form by detaching and completing a portion of the Postcard Notice. The Publication Notice will direct potential Settlement Class Members to the Settlement Website to learn more about the Settlement and to Settlement Class membership. All Claims must be

postmarked or submitted electronically within 15 days before the initial scheduled Final Approval Hearing.

40.     Kroll established a dedicated Settlement Website informing Settlement Class Members of the terms of the Settlement, their rights, relevant dates and deadlines, and other related information.

41.     The Settlement Website, when fully operational, shall include hyperlinks to the Agreement, ASA, Preliminary Approval Order, and all other relevant documents to this Settlement. The Settlement Website shall provide Settlement Class members with the ability to complete and submit the Claim Form electronically.

42.     Settlement Class Members who do not timely and validly opt out of the Settlement will be deemed to have released Defendant from the Released Claims. The Released Claims are narrowly tailored to the claims made in the Action. The scope of the Releases is detailed in section XIII of the Agreement.

43.     The Court should also approve the Claim Form and Claims Process. Both are objectively reasonable and easy to understand. The Claim Form is simple to fill out and has instructions for those seeking to claim documented losses. Settlement Class Members have the mail in the Claim Form or submit it electronically on the Settlement Website. The Settlement Administrator will employ procedures to prevent fraud and abuse in the Claim Process. If a Claim Form is rejected for incomplete or inaccurate information, or for omitting required information, the Settlement Administrator will send a Notice of Deficiency to the Settlement Class Member explaining what information is missing or inaccurate and needed to validate the Claim and have it submitted for consideration, providing time to cure.

44.     Class Counsel are confident the Settlement warrants the Court's Preliminary

Approval. This Settlement is fair, reasonable, adequate, and well within the range of possible approval, because it provides excellent benefits to all Settlement Class members, avoids the uncertainty of litigation, and avoids the need to resolve contentious factual and legal issues. Joint The Settlement further satisfies the factors set forth by the Seventh Circuit to assessing a proposed settlement agreement.

45.     Class Counsel and Defendant's Counsel have fully evaluated the strengths, weaknesses, and equities of the Parties' respective positions and believe the proposed settlement fairly resolves their respective differences.

46.     The risks, expense, complexity, and likely duration of further litigation support preliminary approval of the Settlement. Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay.

47.     Class Counsel believe the claims asserted are meritorious and that Plaintiffs would prevail if this matter proceeded to trial. However, Class Counsel are also pragmatic and understand the legal uncertainties associated with continued litigation, which would be lengthy and expensive. Accordingly, a class action is the superior method of adjudicating this case.

48.     Data breach litigation is often difficult and complex. Recovery, if any, by any means other than settlement would require additional years of litigation and possibly an appeal. Without the Settlement, the Parties faced the possibility of litigating this Action through the completion of fact discovery, class certification, expert discovery, summary judgment, trial, and appeals, which would be complex, time-consuming, and expensive. Continued litigation could impede the successful prosecution of these claims at trial and in an eventual appeal, resulting in zero benefit to the Settlement Class. Further, since the Court had not yet certified a class at the time the Agreement was executed, it is unclear whether certification would have been granted.

Briefing class certification would have required the Parties to expend significant resources.

49. Even though the Settlement was reached at a relatively early stage of the proceeding, there is no reason to doubt the Parties did enough to be in a position to present the Settlement to the Court and to satisfy the last Seventh Circuit factor.

50. The Parties entered into the Settlement only after both sides were fully apprised on the facts, risks, and obstacles involved with protracted litigation.

51. From the beginning of their investigation, Class Counsel conducted extensive research regarding Plaintiffs' claims, Defendant, Defendant's Clients, and the Data Incident.

52. After working extensively with experts and conducting necessary informal discovery, the Parties negotiated the material terms of a class settlement, the full Settlement Agreement, and then the ASA. As such—and considering counsel's extensive experience in data breach litigation, the Parties were able to enter into settlement negotiations with a complete understanding of the strengths and weaknesses of the case, as well as the potential value of the claims.

53. The value achieved through the Settlement here is guaranteed, where chances of prevailing on the merits are not certain. While Plaintiffs strongly believe in the merits of their case, they also recognize that Defendant would assert a number of potentially case-dispositive defenses. Should litigation continue, Plaintiffs would have to immediately survive a motion to dismiss in order to proceed with litigation.

54. Moreover, because of the quickly evolving nature of case law pertaining to data protection, it is likely a win by any party will result in appeals, which will further increase costs and extend the time until Plaintiffs and putative class members can have a chance at relief. Expert testimony will be required to support liability and damages. Plaintiffs have already incurred tens

of thousands of dollars in expert consulting fees.

55.     Given that Notice has not yet issued to the Settlement Class, it is premature to gauge their support, but in Class Counsel's experience, the Settlement terms will be viewed positively by the Settlement Class and with their support.

56.     Under the circumstances, the Settlement represents a highly favorable compromise that balances the merits of Plaintiffs' claims and the likelihood of succeeding at trial and on appeal with the attendant risks. The inherent uncertainty in litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Settlement Class.

57.     There are no additional agreements required to be identified under Fed. R. Civ. P. 23(e)(3).

Under penalties of perjury, I declare that I have read the foregoing declaration and that the facts stated in it are true. Executed in Chicago, Illinois on October 15, 2025.

*/s/ Gary Klinger*
Gary Klinger

Under penalties of perjury, I declare that I have read the foregoing declaration and that the facts stated in it are true. Executed in Fort Lauderdale, Florida on October 15, 2025.

*/s/ Jeff Ostrow*
Jeff Ostrow

# EXHIBIT 1



# FIRM RESUME /

# BIOGRAPHY OF GARY M. KLINGER



Milberg Coleman Bryson Phillips Grossman ("Milberg") is an AV-rated international law firm with more than 100 attorneys and offices across the United States, the European Union, and South America. Combining decades of experience, Milberg was established through the merger of Milberg Phillips Grossman LLP, Sanders Phillips Grossman LLC, Greg Coleman Law PC, and Whitfield Bryson LLP.

Milberg prides itself on providing thoughtful and knowledgeable legal services to clients worldwide across multiple practice areas. The firm represents plaintiffs in the areas of antitrust, securities, financial fraud, consumer protection, automobile emissions claims, defective drugs and devices, environmental litigation, financial and insurance litigation, and cyber law and security.

For over 50 years, Milberg and its affiliates have been protecting victims' rights. We have recovered over $50 billion for our clients. Our attorneys possess a renowned depth of legal expertise, employ the highest ethical and legal standards, and pride ourselves on providing stellar service to our clients. We have repeatedly been recognized as leaders in the plaintiffs' bar and appointed to numerous leadership roles in prominent national mass torts and class actions.

> *Milberg challenges corporate wrongdoing through class action, mass tort, consumer and shareholder right services, both domestically and globally.*

In the United States, Milberg currently holds more than 100 court-appointed full- and co-leadership positions in state and federal courts across the country. Our firm has offices in California, Chicago, Florida, Georgia, Illinois, Kentucky, Louisiana, Mississippi, New Jersey, New York, North Carolina, South Carolina, Tennessee, Washington, Washington D.C., and Puerto Rico. Milberg's commitment to its clients reaches beyond the United States, litigating antitrust, securities, and consumer fraud actions in Europe and South America, with offices located in the United Kingdom, and the Netherlands. Milberg prides itself on providing excellent service worldwide.

The firm's lawyers have been regularly recognized as leaders in the plaintiffs' bar by the National Law Journal, Legal 500, Chambers USA, Time Magazine, Lawdragon, and Super Lawyers, among others.

> *"A powerhouse that compelled miscreant and recalcitrant businesses to pay billions of dollars to aggrieved shareholders and customers."*
> - THE NEW YORK TIMES

# PRACTICE AREAS

## SECURITIES FRAUD

Milberg pioneered the use of class action lawsuits to litigate claims involving investment products, securities, and the banking industry. Fifty years ago, the firm set the standard for case theories, organization, discovery, methods of settlement, and amounts recovered for clients. Milberg remains among the most influential securities litigators in the United States and internationally.

Milberg and its attorneys were appointed Lead Counsel and Co-Lead Counsel in hundreds of federal, state, and multidistrict litigation cases throughout its history.

## ANTITRUST & COMPETITION LAW

For over fifty years, Milberg's Antitrust Practice Group has prosecuted complex antitrust class actions against defendants in the healthcare, technology, agriculture, and manufacturing industries engaged in price-fixing, monopolization and other violations of antitrust law and trade restraints.

## FINANCIAL LITIGATION

For over fifty years, Milberg's Antitrust Practice Group has prosecuted complex antitrust class actions against defendants in the healthcare, technology, agriculture, and manufacturing industries engaged in price-fixing, monopolization and other violations of antitrust law and trade restraints.

## CONSUMER PROTECTION

Milberg's Consumer Protection Practice Group focuses on improving product safety and protecting those who have fallen victim to deceptive marketing and advertising of goods and services and/or purchased defective products. Milberg attorneys have served as Lead Counsel and Co-Lead Counsel in hundreds of federal, state, and multidistrict litigation cases alleging the sale of defective products, improper marketing of products, and violations of consumer protection statutes.

## DANGEROUS DRUGS & DEVICES

Milberg is a nationally renowned firm in mass torts, fighting some of the largest, wealthiest, and most influential pharmaceutical and device companies and corporate entities in the world. Our experienced team of attorneys has led or co-led numerous multidistrict litigations of defective drugs and medical devices.

## EMPLOYMENT & CIVIL RIGHTS

Milberg's Employment & Civil Rights attorneys focus on class actions and individual cases nationwide arising from discriminatory banking and housing practices, unpaid wages and sales commissions, improperly managed retirement benefits, workplace discrimination, and wrongful termination.

## ENVIRONMENTAL LITIGATION & TOXIC TORTS

Milberg's Environmental Litigation & Toxic Torts Practice Group focuses on representing clients in mass torts, class actions, multi-district litigation, regulatory enforcement, citizen suits, and other complex environmental and toxic tort matters. Milberg and its attorneys have held leadership roles in all facets of litigation in coordinated proceedings, with a particular focus on developing the building blocks to establish general causation, which is often the most difficult obstacle in an environmental or toxic tort case.

## STATE & LOCAL GOVERNMENTS

Milberg attorneys are dedicated to defending the Constitutional and statutory rights of individuals and businesses that are subjected to unlawful government exactions and fees by state and local governments or bodies.

## CYBERSECURITY & DATA PRIVACY

Milberg is a leader in the fields of cyber security, data breach litigation, and biometric data collection, litigating on behalf of clients — both large and small — to change data security practices so that large corporations respect and safeguard consumers' personal data.

## APPELLATE

Consisting of former appellate judges, experienced appellate advocates, and former law clerks who understand how best to present compelling arguments to judges on appeal and secure justice for our clients beyond the trial courts, Milberg's Appellate Practice Group boasts an impressive record of success on appeal in both state and federal courts.

# LEADERSHIP ROLES

In re: Google Play Consumer Antitrust Litigation

In re: Elmiron (Pentosan Polysulfate Sodium) Products Liability Litigation

In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices & Products Liability Litigation

In re: Blackbaud Inc., Customer Data Breach Litigation

In re: Paragard IUD Products Liability Litigation

In re: Seresto Flea & Tick Collar, Marketing Sales Practices & Product Liability Litigation

In re: All-Clad Metalcrafters, LLC, Cookware Marketing and Sales Practices Litigation

In re: Allergan Biocell Textured Breast Implant Products Liability Litigation

In re: Zicam Cold Remedy Marketing, Sales Practices and Products Liability Litigation

In re: Guidant Corp. Implantable Defibrillators Product Liability Litigation

In re: Ortho Evra Products Liability Litigation

In re: Yasmin and YAZ (Drospirenone) Marketing, Sales Practices and Products Liability Litigation

In re: Kugel Mesh Hernia Patch Products Liability Litigation

In re: Medtronic, Inc. Sprint Fidelis Leads Products Liability Litigation

In re: Stand 'N Seal Products Liability Litigation

In re: Chantix (Varenicline) Products Liability Litigation

In re: Fosamax (alendronate Sodium) Products Liability Litigation

In re: Benicar (Olmesartan) Products Liability Litigation

In re: Onglyza (Saxagliptin) & Kombiglyze Xr (Saxagliptin & Metformin) Products Liability Litigation

In re: Risperdal and Invega Product Liability Cases

In re: Mirena IUS Levonorgestrel-Related Products Liability Litigation

In re: Incretin-based Therapies Product Liability Litigation

In re: Reglan/Metoclopromide

In re: Levaquin Products Liability Litigation

In re: Zimmer Nexgen Knee Implant Products Liability Litigation

In re: Fresenius Granuflo/NaturaLyte Dialysate Products Liability Litigation

In re: Propecia (Finasteride) Products Liability Litigation

In re: Transvaginal Mesh (In Re C. R. Bard, Inc., Pelvic Repair System Products Liability Litigation; In Re Ethicon, Inc., Pelvic Repair System Products Liability Litigation; In Re Boston Scientific, Inc., Pelvic Repair System Products Liability; In Re American Medical Systems, Pelvic Repair System Products Liability, and others)

In re: Fluoroquinolone Product Liability Litigation

In re: Depuy Orthopaedics, Inc., Pinnacle Hip Implant Products Liability Litigation

In re: Recalled Abbott Infant Formula Products Liability Litigation

Home Depot, U.S.A., Inc. v. Jackson

Webb v. Injured Workers Pharmacy, LLC

# NOTABLE RECOVERIES

### $4 Billion Settlement

In re: Prudential Insurance Co. Sales Practice Litigation

### $3.2 Billion Settlement

In re: Tyco International Ltd., Securities Litigation

### $1.14 Billion Settlement

In Re: Nortel Networks Corp. Securities Litigation

### $1 Billion-plus Trial Verdict

Vivendi Universal, S.A. Securities Litigation

### $1 Billion Settlement

NASDAQ Market-Makers Antitrust Litigation

### $1 Billion Settlement

W.R. Grace & Co.

### $1 Billion-plus Settlement

Merck & Co., Inc. Securities Litigation

### $775 Million Settlement

Washington Public Power Supply System Securities Litigation

### $586 Million Settlement

In re: Initial Public Offering Securities Litigation

# GARY M. KLINGER

**Gary M. Klinger** is a Senior Partner at Milberg and Chair of its Cybersecurity and Data Privacy Practice Group. Mr. Klinger is recognized as one of the most respected data privacy attorneys in the United States, having been ranked by Chambers and Partners as Band 3 for Privacy & Data Security Litigation (2024)[1] and having been selected to Lawdragon's 500 Leading Litigators in America for his accomplishments in privacy litigation (2024).[2] Law360 recently highlighted Mr. Klinger's work in the privacy space.[3]

Mr. Klinger has extensive experience serving as leadership in numerous privacy class actions, including as lead or co-lead counsel in the largest data breaches in the country.[4] Mr. Klinger and his firm are largely responsible for developing the favorable case law that many plaintiffs rely on in the data breach space.[5] Mr. Klinger has also successfully litigated privacy class actions through class certification. *E.g., Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *1 (N.D. Ill. 2018).

Over the past 3 years, Mr. Klinger has settled on a classwide basis more than one hundred (100) class actions involving privacy violations, the majority of which are data breaches, in state and federal courts across the country as lead or co-lead counsel. To his knowledge, no other attorney in the country has settled and won court approval of more data breach class actions during this period. Representative cases include:

- *Parris, et al., v. Meta Platforms, Inc.*, Case No.2023LA000672 (18th Cir. DuPage Cty., Ill.) (where Mr. Klinger serves as lead counsel and obtained a settlement of $64.5 million for 4 million consumers in a privacy class action);

- *Boone v. Snap, Inc.*, Case No. 2022LA000708 (18th Cir. DuPage Cty., Ill.) (where Mr. Klinger served as lead counsel and obtained a settlement of $35 million for 3 million consumers in a privacy class action);

- *In re: East Palestine Train Derailment*, No. 23-cv-00242 (N.D. Ohio) (where Mr. Klinger serves on the leadership team that obtained a settlement of $600 million in a complex class action).

---

[1] Only three plaintiffs' lawyers in the country received the distinction of being ranked by Chambers and Partners for Privacy & Data Security Litigation.

[2] *See* https://chambers.com/lawyer/gary-klinger-usa-5:26875006; https://www.lawdragon.com/guides/2023-09-08-the-2024-lawdragon-500-leading-litigators-in-america.

[3] https://www.law360.com/articles/1854005/rising-star-milberg-s-gary-klinger.

[4] See, e.g., *Isiah v. LoanDepot, Inc.*, 8:24-cv-00136-DOC-JDE (C.D. Cal.) (where Mr. Klinger is co-lead counsel in a data breach involving more than 17 million consumers); *In re MoveIt Customer Data Security Breach Litigation*, 1:23-md-03083 (D. Mass.) (where Mr. Klinger was appointed to the leadership committee in multi-district litigation involving a data breach that impacted more than 95 million consumers).

[5] *See e.g., Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365 (1st Cir. 2023) (Milberg attorneys obtained a decision from the First Circuit reversing the dismissal with prejudice of a data breach case and finding Article III standing); *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 586 (N.D. Ill. 2022) (Milberg attorneys largely defeated a motion to dismiss in a data breach case involving 3 million consumers); *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JMC, 2021 WL 2718439, at *1 (D.S.C. July 1, 2021) (Milberg attorneys defeated a standing challenge in a 10 million person data breach case).

# LOCATIONS

### PUERTO RICO
1311 Avenida Juan Ponce de León
San Juan, Puerto Rico 00907

### CALIFORNIA
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212

402 West Broadway, Suite 1760
San Diego, California 92101

### FLORIDA
201 Sevilla Avenue, Suite 200,
Coral Gables, Florida 33134

3833 Central Avenue
St. Petersburg, Florida 33713

### ILLINOIS
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606

### LOUISIANA
5301 Canal Boulevard
New Orleans, Louisiana 70124

### MICHIGAN
6905 Telegraph Road, Suite 115
Bloomfield Hills, Michigan 48301

### NEW JERSEY
1 Bridge Plaza North, Suite 675
Fort Lee, New Jersey 07024

### NEW YORK
100 Garden City Plaza, Suite 500
Garden City, New York 11530

405 E 50th Street
New York, New York 10022

### NORTH CAROLINA
900 West Morgan Street
Raleigh, North Carolina 27603

5 West Hargett Street, Suite 812
Raleigh, North Carolina 27601

### SOUTH CAROLINA
825 Lowcountry Blvd, Suite 101
Mount Pleasant, South Carolina 29464

### TENNESSEE
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929

### WASHINGTON
1420 Fifth Ave, Suite 2200
Seattle, Washington 98101

17410 133rd Avenue, Suite 301
Woodinville, Washington 98072

### WASHINGTON, D.C.
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015

### NETHERLANDS

### UNITED KINGDOM



# EXHIBIT 2



# FIRM RESUME

One West Las Olas Boulevard, Suite 500
Fort Lauderdale, Florida 33301

**Telephone:** 954.525.4100
**Facsimile:** 954.525.4300
**Website:** www.kolawyers.com

**Miami  –  Fort Lauderdale  –  Boca Raton**

## OUR
## FIRM

For over two decades, Kopelowitz Ostrow Ferguson Weiselberg Gilbert (KO) has provided comprehensive, results-oriented legal representation to individual, business, and government clients throughout Florida and the rest of the country. KO has the experience and capacity to represent its clients effectively and has the legal resources to address almost any legal need. The firm's 25 attorneys have practiced at several of the nation's largest and most prestigious firms and are skilled in almost all phases of law, including consumer class actions, multidistrict litigation involving mass tort actions, complex commercial litigation, and corporate transactions. In the class action arena, the firm has experience not only representing individual aggrieved consumers, but also defending large institutional clients, including multiple Fortune 100 companies.

## WHO
## WE ARE

The firm has a roster of accomplished attorneys. Clients have an opportunity to work with some of the finest lawyers in Florida and the United States, each one committed to upholding KO's principles of professionalism, integrity, and personal service. Among our roster, you'll find attorneys whose accomplishments include Board Certified in their specialty; serving as in-house counsel for major corporations, as city and county attorneys handling government affairs, and as public defenders and prosecutors; achieving multi-millions of dollars through verdicts and settlements in trials, arbitrations, and alternative dispute resolution procedures; successfully winning appeals at every level in Florida state and federal courts; and serving government in various elected and appointed positions.

KO has the experience and resources necessary to represent large putative classes. The firm's attorneys are not simply litigators, but rather, experienced trial attorneys with the support staff and resources needed to coordinate complex cases.

**CLASS
ACTION
PLAINTIFF**

Since its founding, KO has initiated and served as lead class counsel in dozens of high-profile class actions. Although the actions are diverse by subject area, KO has established itself as one of the leading firms that sue national and regional banks and credit unions related to the unlawful assessment of fees. Their efforts spanning a decade plus have resulted in recoveries in excess of $500 million and monumental practices changes that have changed the industry and saving clients billions of dollars.

Additionally, other past and current cases have been prosecuted for breaches of insurance policies; data breaches; data privacy; wiretapping; biometric privacy; gambling; false advertising; defective consumer products and vehicles; antitrust violations; and suits on behalf of students against colleges and universities arising out of the COVID-19 pandemic.

The firm has in the past litigated certified and proposed class actions against Blue Cross Blue Shield and United Healthcare related to their improper reimbursements of health insurance benefits. Other insurance cases include auto insurers failing to pay benefits owed to insureds with total loss vehicle claims. Other class action cases include cases against Microsoft Corporation related to its Xbox 360 gaming platform, ten of the largest oil companies in the world in connection with the destructive propensities of ethanol and its impact on boats, Nationwide Insurance for improper mortgage fee assessments, and several of the nation's largest retailers for deceptive advertising and marketing at their retail outlets and factory stores.

## CLASS ACTION **DEFENSE**

The firm also brings experience in successfully defended many class actions on behalf of banking institutions, mortgage providers and servicers, advertising conglomerates, aircraft manufacturer and U.S. Dept. of Defense contractor, a manufacturer of breast implants, and a national fitness chain.

## MASS TORT **LITIGATION**

The firm also has extensive experience in mass tort litigation, including serving as Lead Counsel in the Zantac Litigation, one of the largest mass torts in history. The firm also has handled cases against 3M related to defective earplugs, several vaginal mash manufacturers, Bayer in connection with its pesticide Roundup, Bausch & Lomb for its Renu with MoistureLoc product, Wyeth Pharmaceuticals related to Prempro, Bayer Corporation related to its birth control pill YAZ, and Howmedica Osteonics Corporation related to the Stryker Rejuvenate and AGB II hip implants. In connection with the foregoing, some of which has been litigated within the multidistrict arena, the firm has obtained tens of millions in recoveries for its clients.

## OTHER AREAS **OF PRACTICE**

In addition to class action and mass tort litigation, the firm has extensive experience in the following practice areas: commercial and general civil litigation, corporate transactions, health law, insurance law, labor and employment law, marital and family law, real estate litigation and transaction, government affairs, receivership, construction law, appellate practice, estate planning, wealth preservation, healthcare provider reimbursement and contractual disputes, white collar and criminal defense, employment contracts, environmental, and alternative dispute resolution.

## FIND US **ONLINE**

To learn more about KO, or any of the firm's other attorneys, please visit www.kolawyers.com.

# CLASS ACTION AND MASS TORTS

## FINANCIAL INSTITUTIONS

*Aseltine v. Bank of America, N.A.*, 3:23-cv-00235 (W.D.N.C. 2024) – $21 million

*McNeil v. Capital One, N.A.*, 1:19-cv-00473 (E.D.N.Y.) – $16 million

*Devore, et al. v. Dollar Bank*, GD-21-008946 (Ct. Common Pleas Allegheny 2024) - $7 million

*Nimsey v. Tinker Federal Credit Union*, C1-2019-6084 (Dist. Ct. Oklahoma 2024) - $5.475 million

*Precision Roofing of N. Fla. Inc., et al. v. CenterState Bank*, 3:20-cv-352 (S.D. Fla. 2023) - $2.65 million

*Checchia v. Bank of America, N.A.*, 2:21-cv-03585 (E.D. Pa. 2023) - $8 million

*Quirk v. Liberty Bank*, X03-HHD-CV20-6132741-S (Jud. Dist. Ct. Hartford 2023) - $1.4 million

*Meier v. Prosperity Bank*, 109569-CV (Dist. Ct. Brazoria 2023) - $1.6 million

*Abercrombie v. TD Bank, N.A.*, 0:21-cv-61376 (S.D. Fla. 2022) - $4.35 million

*Perks, et al. v. TD Bank, N.A.*, 1:18-cv-11176 (E.D.N.Y. 2022) - $41.5 million

*Fallis v. Gate City Bank*, 09-2019-CV-04007 (Dist. Ct., Cty. of Cass, N.D. 2022) - $1.8 million

*Glass, et al. v. Delta Comm. Cred. Union*, 2019CV317322 (Sup. Ct. Fulton Ga. 2022) - $2.8 million

*Roy v. ESL Fed. Credit Union*, 19-cv-06122 (W.D.N.Y. 2022) - $1.9 million

*Wallace v. Wells Fargo*, 17CV317775 (Sup. Ct. Santa Clara 2021) - $10 million

*Doxey v. Community Bank, N.A.*, 8:19-CV-919 (N.D.N.Y. 2021) - $3 million

*Coleman v. Alaska USA Federal Credit Union*, 3:19-cv-0229-HRH (Dist. of Alaska 2021) - $1 million

*Smith v. Fifth Third Bank*, 1:18-cv-00464-DRC-SKB (W.D. Ohio 2021) - $5.2 million

*Lambert v. Navy Federal Credit Union*, 1:19-cv-00103-LO-MSN (S.D. Va. 2021) - $16 million

*Roberts v. Capital One, N.A.*, 16 Civ. 4841 (LGS) (S.D.N.Y 2021) - $17 million

*Lloyd v. Navy Federal Credit Union*, 17-cv-01280-BAS-RBB (S.D. Ca. 2019) - $24.5million

*Farrell v. Bank of America, N.A.*, 3:16-cv-00492-L-WVG (S.D. Ca. 2018) - $66.6 million

*Bodnar v. Bank of America, N.A.*, 5:14-cv-03224-EGS (E.D. Pa. 2015) - $27.5 million

*Morton v. Green Bank*, 11-135-IV (20th Judicial District Tenn. 2018) - $1.5 million

*Hawkins v. First Tenn. Bank*, CT-004085-11 (13th Jud. Dist. Tenn. 2017) - $16.75 million

*Payne v. Old National Bank*, 82C01-1012 (Cir. Ct. Vanderburgh 2016) - $4.75 million

*Swift. v. Bancorpsouth*, 1:10-CV-00090 (N.D. Fla. 2016) - $24.0 million

*Mello v. Susquehanna Bank*, 1:09-MD-02046 (S.D. Fla. 2014) – $3.68 million

*Johnson v. Community Bank*, 3:11-CV-01405 (M.D. Pa. 2013) - $1.5 million

*McKinley v. Great Western Bank*, 1:09-MD-02036 (S.D. Fla. 2013) - $2.2 million

*Blahut v. Harris Bank*, 1:09-MD-02036 (S.D. Fla. 2013) - $9.4 million

*Wolfgeher v. Commerce Bank*, 1:09-MD-02036 (S.D. Fla. 2013) - $18.3 million

*Case v. Bank of Oklahoma*, 09-MD-02036 (S.D. Fla. 2012) - $19.0 million

*Hawthorne v. Umpqua Bank*, 3:11-CV-06700 (N.D. Cal. 2012) - $2.9 million

*Simpson v. Citizens Bank*, 2:12-CV-10267 (E.D. Mich. 2012) - $2.0 million

*Harris v. Associated Bank*, 1:09-MD-02036 (S.D. Fla. 2012) - $13.0 million

*LaCour v. Whitney Bank*, 8:11-CV-1896 (M.D. Fla. 2012) - $6.8 million

*Orallo v. Bank of the West*, 1:09-MD-202036 (S.D. Fla. 2012) - $18.0 million

*Taulava v. Bank of Hawaii*, 11-1-0337-02 (1st Cir. Hawaii 2011) - $9.0 million

## MDLs

*In re: Fortra File Transfer Software Data Breach Litigation*, MDL No. 3090 (S.D. Fla.) – $27 million

*In re: Evolve Bank & Trust Customer Data Breach Litig.*, MDL No. 3127 (W.D. Tenn.) - $17.0 million

*In re: Snowflake, Inc., Data Breach Litigation*, MDL No. 3126 (D. Mont.) - Co-Lead Counsel

*In re: Consumer Vehicle Driving Data Tracking Collection*, MDL No. 3115 (N.D. Ga.) - Exec. Comm.

*In re Change Healthcare, Inc. Data Breach Litigation*, MDL No. 3108 (D. Minn.) - Exec. Comm.

*In re: PowerSchool Holdings, Inc. Customer Data Breach Litig.*, MDL No. 3149 (S.D. Cal.) - Exec. Comm.

## DATA BREACH AND PRIVACY

*McNally et al. v. Infosys McAmish Systems, LLC*, 1:24-cv-00995 (N.D. Ga.) - $17.5 million

*Crowe, et al. v. Managed Care of North America, Inc.*, 0:23-cv-61065-AHS (S.D. Fla.) – Co-Lead Counsel

*Malinowski, et al. v. IBM Corp. and Johnson & Johnson*, 7:23-cv-08421 (S.D.N.Y.) – Co-Lead Counsel

*Gordon, et al. v. Zeroed-In Technologies, LLC, et al.*, 1:23-CV-03284 (D. Md.) – Co-Lead Counsel

*Harrell, et al. v. Webtpa Employer Services LLC*, 3:24-CV-01158 (N.D. Tex.) - $13.75 million

*Gambino, et al. v. Berry Dunn Mcneil & Parker LLC*, 2:24-CV-00146 (D. Me.) - $7.25 million

*Isaac v. Greylock McKinnon Associates, Inc.*, 1:24-CV-10797 (D. Mass.) - $600,000

*Rodriguez, et al. v. Caesars Entertainment, Inc.*, 2:23-CV-01447 (D. Nev.) - Steering Committee Chair

*Owens v. MGM Resorts International*, 2:23-cv-01480-RFB-MDC (D. Nev.) - $45 million

*Doyle v. Luxottica of America, Inc.*, 1:20-cv-00908-MRB (S.D. Ohio) - Executive Committee

*Doe, et al. v. Highmark, Inc.*, 2:23-cv-00250-NR (W.D. Penn.) - Executive Committee

*Silvers, et al. v. HCA Healthcare, Inc.*, 1:23-cv-01003-LPH (S.D. In.) - Executive Committee

*In re: 21st Century Oncology*, MDL No. 2737 (M.D. Fla. 2021) - $21.8 million

*In re: CaptureRx Data Breach*, 5:21-cv-00523 (W.D. Tex. 2022) - $4.75 million

*Lopez, et al. v. Volusion, LLC*, 1:20-cv-00761 (W.D. Tex. 2022) - $4.3 million

*Mathis v. Planet Home Lending, LLC*, 3:24-CV-00127 (D. Conn.) - $2.425 million

*In re loanDepot Data Breach Litigation*, 8:24-cv-00136 (C.D. Cal.) - $25 million

*Stadnik v. Sovos Compliance, LLC*, 1:23-CV-12100 (D. Mass.) - $3.5 million

*Turner v. Johns Hopkins, et al.*, 24-C-23-002983 (Md. Cir. Ct.) - $2.9 million

*Peterson v. Vivendi Ticketing US LLC*, 2:23-CV-07498 (C.D. Cal.) - $3.25 million

*Katz et al. v. Einstein Healthcare Network*, 02045 (Pa. Ct. C.P., Phila.) - $1.6 million

*Opris et al v. Sincera Reproductive Medicine et al*, 2:21-cv-03072 (E.D. Pa.) - $1.2 million

*Garza et al v. Healthalliance, Inc. et al*, 7245012023 (N.Y. Sup. Ct.) - $1.29 million

*McLean et al. v. Signature Performance, Inc. et al.*, 8:24-cv-00230 (D. Neb.) - $8.5 million

*Wahab et al. v. Boston Children's Health Phys., LLP*, 73692/2024 (N.Y. Sup. Ct.) - $5.15 million

## CONSUMER PROTECTION

*Ostendorf v. Grange Indemnity Ins. Co.*, 2:19-cv-00147-ALM-KAJ (E.D. Ohio 2020) - $12.6 million

*Paris, et. al. v. Progressive Select Ins. Co., et al.*, 19-21760-CIV (S.D. Fla. 2023) - $38 million

*Spielman v. USAA, et al.*, 2:19-cv-01359-TJH-MAA (C.D. Ca. 2023) - $3 million

*Walters v. Target Corp.*, 3:16-cv-1678-L-MDD (S.D. Cal. 2020) - $8.2 million

*Papa v. Grieco Ford Fort Lauderdale, LLC*, 18-cv-21897-JEM (S.D. Fla. 2019) - $4.9 million

*In re Disposable Contact Lens Antitrust Litig.*, MDL 2626 (M.D. Fla.) - $88 million

*Vandiver v. MD Billing Ltd.*, 2023LA000728 (18th Jud. Dist. Ill. 2023) - $24 million

*Skrandel v. Costco Wholesale Corp.*, 9:21-cv-80826-BER (S.D. Fla. 2024) - $1.3 million

*Evans v. Church & Dwight Co., Inc.*, 1:22-CV-06301 (N.D. Ill. 2023) - $2.5 million

*In Re: Farm-Raised Salmon & Salmon Prod. Antitrust Litig.*, No. 1:19-cv-21551 (S.D. Fla. 2023) - $75 million *Perry v. Progressive Michigan, et al.*, 22-000971-CK (Cir. Ct. Washtenaw) - Class Counsel

*In re Apple Simulated Casino-Style Games Litig.*, MDL No. 2958 (N.D. Cal.) - Executive Committee

*In re Google Simulated Casino-Style Games Litig.*, MDL No. 3001 (N.D. Cal.) - Executive Committee

*In re Facebook Simulated Casino-Style Games Litig.*, No. 5:21-cv-02777 (N.D. Cal.) - Exec. Committee

## MASS TORT

*In re Zantac Prods. Liab. Litig.*, MDL No. 2924 (S.D. Fla.) - Co-Lead Counsel

*In re: National Prescription Opiate Litigation*, No. MDL No. 2804 (N.D. Ohio) - $100 million

*In re: Juul Labs*, No. MDL No. 2913 (N.D. Cal.) - $26 million

*In re: Davenport Hotel Building Collapse*, LACE137119 (Dist. Ct. Scott Cty., Iowa) - Class Counsel

*In re: 3M Combat Arms Earplug Prod. Liab. Litig.*, MDL No. 2885 (N.D. Fla.) - Numerous Plaintiffs *In re: Stryker Prod. Liab. Lit.*, 13-MD-2411 (Fla. Cir Ct.) - Numerous Plaintiffs

# JEFF OSTROW



**Managing Partner**
ostrow@kolawyers.com
954.332.4200

*Bar Admissions*
Florida Bar
District of Columbia Bar

*Court Admissions*
Supreme Court of the United States
U.S. Court of Appeals for the Eleventh Circuit
U.S. Court of Appeals for the Ninth Circuit
U.S. District Court, Southern District of Florida
U.S. District Court, Middle District of Florida
U.S. District Court, Northern District of Florida
U.S. District Court, Northern District of Illinois
U.S. District Court, Eastern District of Michigan
U.S. District Court, Western District of Tennessee
U.S. District Court, Western District of Wisconsin
U.S. District Court, Western District of Kentucky
U.S. District Court, Northern District of New York
U.S. District Court, District of Colorado
U.S. District Court, Southern District of Indiana
U.S. District Court, Eastern District of Texas
U.S. District Court, District of Nebraska

*Education*
Nova Southeastern University, J.D. - 1997
University of Florida, B.A. – 1994

Jeff Ostrow is the Managing Partner of Kopelowitz Ostrow P.A. He established his own firm in 1997, immediately upon graduation from law school and has since grown KO to 30 attorneys with offices in South Florida, Philadelphia, and New York In addition to overseeing the firm's day-to-day operations and strategic direction, Mr. Ostrow practices full time in the area of consumer class actions. He is a Martindale-Hubbell AV® Preeminent™ rated attorney in both legal ability and ethics, which is the highest possible rating by the most widely recognized attorney rating organization in the world.

Mr. Ostrow is an accomplished trial attorney who has experience representing both Plaintiffs and Defendants. He has successfully tried many cases to verdict involving multi-million-dollar damage claims in state and federal courts. He is currently court-appointed lead counsel or sits on plaintiffs' executive committees in multiple high profile nationwide multi-district litigation actions involving cybersecurity breaches and related privacy issues.

Additionally, he has spent the past 15 years serving as lead counsel in dozens of nationwide and statewide class action lawsuits against many of the world's largest financial institutions in connection with the unlawful assessment of fees. To date, his efforts have successfully resulted in the recovery of over $1 billion for tens of millions of bank and credit union customers, as well as monumental changes in the way they assess fees. Those changes have forever revolutionized an industry, resulting in billions of dollars of savings. In addition, Mr. Ostrow has served as lead class counsel in many consumer class actions against some of the world's largest airlines, pharmaceutical companies, clothing retailers, health and auto insurance carriers, technology companies, and oil conglomerates, along with serving as class action defense counsel for some of the largest advertising and marketing agencies in the world, banking institutions, real estate developers, and mortgage companies. A selection of

Mr. Ostrow often serves as outside General Counsel to companies, advising them in connection with their legal and regulatory needs. He has represented many Fortune 500® Companies in connection with their Florida litigation. He has handled cases covered by media outlets throughout the country and has been quoted many times on various legal topics in almost every major news publication, including the Wall Street Journal, New York Times, Washington Post, Miami Herald, and Sun-Sentinel. He has also appeared on CNN, ABC, NBC, CBS, Fox, ESPN, and almost every other major national and international television network in connection with his cases, which often involve industry changing litigation or athletes in Olympic swimming, professional boxing, the NFL, NBA and MLB.

Mr. Ostrow received a Bachelor of Science in Business Administration from the University of Florida in 1994 and Juris Doctorate from Nova Southeastern University in 1997. He is a licensed member of The Florida Bar and the District of Columbia Bar, is fully admitted to practice before the U.S. Supreme Court, U.S. Court of Appeals for the Ninth Circuit and Eleventh Circuit, the U.S. District Courts for the Southern, Middle, and Northern Districts of Florida, District of Colorado, Southern District of Indiana, Western District of Kentucky, Eastern District of Michigan, Northern District of Illinois, District of Nebraska, Northern District of New York, Western District of Tennessee, Eastern District of Texas, Western District of Wisconsin, Southern District of Indiana, Eastern District of Texas, and District of Nebraska. Mr. Ostrow is also member of several bar associations.

In addition to the law practice, he is the founder and president of ProPlayer Sports LLC, a full-service sports agency and marketing firm. He represents both Olympic Gold Medalist Swimmers, World Champion Boxers, and select NFL athletes, and is licensed by both the NFL Players Association as a certified Contract Advisor. At the agency, Mr. Ostrow handles all player-team negotiations of contracts, represents his clients in legal proceedings, negotiates all marketing and NIL engagements, and oversees public relations and crisis management. He has extensive experience in negotiating, mediating, and arbitrating a wide range of issues on behalf of clients with the NFL Players Association, the International Olympic Committee, the United States Olympic Committee, USA Swimming and the World Anti-Doping Agency. He has been an invited sports law guest speaker at New York University and Nova Southeastern University and has also served as a panelist at many industry-related conferences.

He is a lifetime member of the Million Dollar Advocates Forum. The Million Dollar Advocates Forum is the most prestigious group of trial lawyers in the United States. Membership is limited to attorneys who have had multi-million dollar jury verdicts. Additionally, he is consistently named as one of the top lawyers in Florida by Super Lawyers®, a publication that recognizes the best lawyers in each state. Mr. Ostrow is an inaugural recipient of the University of Florida's Warrington College of Business Administration Gator 100 award for the fastest growing University of Florida alumni- owned law firm in the world.

When not practicing law, Mr. Ostrow serves on the Board of Governors of Nova Southeastern University's Wayne Huizenga School of Business and is the Managing Member of One West LOA LLC, a commercial real estate development company with holdings in downtown Fort Lauderdale. He has previously sat on the boards of a national banking institution and a national healthcare marketing company. Mr. Ostrow is a founding board member for the Jorge Nation Foundation, a 501(c)(3) non-profit organization that partners with the Joe DiMaggio Children's Hospital to send children diagnosed with cancer on all-inclusive Dream Trips to destinations of their choice. Mr. Ostrow resides in Fort Lauderdale, Florida, and has 3 sons.



# DAVID FERGUSON

Partner

**Bar Admissions**
The Florida Bar

**Court Admissions**
U.S. District Court, Southern District of Florida
U.S. District Court, Middle District of Florida
U.S. District Court, Northern District of Florida

**Education**
Nova Southeastern University, J.D. - 1993
Nova Southeastern University, B.S. – 1990

*Email: ferguson@kolawyers.com*

David L. Ferguson is an accomplished trial attorney and chairs the firm's litigation department. He routinely leads high stakes litigation across a wide array of practice areas, including, but not limited to, employment law, complex business litigation, class actions, product liability, catastrophic personal injury, civil rights, and regulatory enforcement actions.

Mr. Ferguson is a Martindale-Hubbell AV® Preeminent™ rated attorney in both legal ability and ethics, a testament to the fact that his peers (lawyers and judges in the community) have ranked him at the highest level of professional excellence. Mr. Ferguson is well regarded as a formidable advocate in court and for providing creative and insightful strategic advice, particularly in emergency and extremely complex situations.

While in law school, Mr. Ferguson served as a Staff Member of the Nova Law Review. He was also a member of the Moot Court Society and the winner of the Moot Court Intramural Competition.

## Representation of the Broward Sheriff's Office

Since 2013, Mr. Ferguson has had the privilege of representing the Broward Sheriff's Office ("BSO") in over 150 matters involving many different types of disputes and issues, including: defense of civil rights lawsuits in state and federal court; negotiating collective bargaining agreements with unions; and arbitrations brought by unions or employees subjected to termination or other significant discipline. Mr. Ferguson has had many arbitration final hearings and state and federal jury trials for BSO representing the agency as well as the Sheriff and numerous Deputies individually.

## Class/Mass Actions

Mr. Ferguson has experience in class actions against large banks and some of the world's largest companies, including technology companies and oil conglomerates.

Additionally, during his career Mr. Ferguson has defended many large companies in MDL's, and mass and class actions, including medical equipment manufacturers, pharmaceutical companies, an aircraft parts and engine manufacturer and defense contractor, nationwide retailers, and a massive sugar manufacturer.

Mr. Ferguson has a great deal of experience litigating cases involving massive fraud claims, most often for victims, but also for select defendants. Mr. Ferguson's clients have included individual victims who have lost multiple millions of dollars in fraud schemes to large businesses with tremendous damages, including one international lending institution with damages in excess of $150 million. Additionally, Mr. Ferguson successfully represented several individuals and entities subjected to significant claims by a receiver and the United States Marshals Service in a massive billion-dollar Ponzi scheme involving a notorious Ft. Lauderdale lawyer and his law firm.

### Regulatory Agency Enforcement Actions

Mr. Ferguson has extensive experience defending individuals and entities in significant enforcement actions brought by regulatory agencies, including the CFTC, FTC, and SEC.

### Employment, Human Resources, and Related Matters

Mr. Ferguson has represented numerous business and individuals in employment and human resource related matters. Mr. Ferguson has represented several Fortune 50 companies, including Pratt & Whitney/UTC, Home Depot, and Office Depot in all phases of employment related matters. Mr. Ferguson has litigated virtually every type of discrimination and employment related claim, including claims based upon race, pregnancy, disability, national origin, religion, age, sexual preference, sexual harassment, worker's compensation, unemployment, FMLA leave, FLSA overtime, unpaid wages, whistleblower, and retaliation.

Mr. Ferguson primarily represents companies, but also represents select individuals who have claims against their present or former employers. In addition to the wide variety of employment claims discussed above, as plaintiff's counsel Mr. Ferguson has also handled federal False Claims Act (Qui Tam) and the Foreign Corrupt Practices Act claims brought by individuals.

### Business Disputes

Throughout his legal career, as counsel for plaintiffs and defendants, Mr. Ferguson has handled a myriad of commercial cases involving all types of business disputes, including claims for breach of partnership agreements, breach of shareholder or limited liability company operating agreements; dissolution of corporations and limited liability companies; appointment of receivers; breaches of fiduciary duty; conversion; constructive trust; theft; negligent or intentional misrepresentation or omissions; fraudulent inducement; tortious interference; professional negligence or malpractice; derivate actions, breach of contract, real estate disputes, and construction disputes.

### Noncompetition and Trade Secret Litigation

Mr. Ferguson routinely represents companies and individuals in commercial disputes involving unfair and deceptive trade practices, unfair competition and/or tortious interference with contracts or valuable business relationships. Often these cases involve the enforcement of noncompetition agreements and protection of valuable trade secrets. Mr. Ferguson has extensive experience representing businesses seeking to enforce their noncompetition agreements and/or protect trade secrets through suits for injunctive relief and damages and representing subsequent employers and individuals defending against such claims. He has obtained numerous injunctions for his clients and has also successfully defended against them numerous times, including getting injunctions dissolved that were entered against his clients without notice or prior to his representation. Mr. Ferguson has also obtained contempt sanctions and entitlement to punitive damages against individuals and entities who have stolen trade secrets from his clients.



# ROBERT C. GILBERT

Partner

**Bar Admissions**
The Florida Bar
District of Columbia Bar

**Court Admissions**
Supreme Court of the United States
U.S. Court of Appeals for the 11th Circuit
U.S. District Court, Southern District of Florida
U.S. District Court, Middle District of Florida

**Education**
University of Miami School of Law, J.D. - 1985
Florida International University, B.S. - 1982

**Email:** *gilbert@kolawyers.com*

Robert C. "Bobby" Gilbert has over three decades of experience handling class actions, multidistrict litigation and complex business litigation throughout the United States. He has been appointed lead counsel, co-lead counsel, coordinating counsel or liaison counsel in many federal and state court class actions. Bobby has served as trial counsel in class actions and complex business litigation tried before judges, juries and arbitrators. He has also briefed and argued numerous appeals, including two precedent-setting cases before the Florida Supreme Court.

Bobby was appointed as Plaintiffs' Coordinating Counsel in *In re Checking Account Overdraft Litig.*, MDL 2036, class action litigation brought against many of the nation's largest banks that challenged the banks' internal practice of reordering debit card transactions in a manner designed to maximize the frequency of customer overdrafts. In that role, Bobby managed the large team of lawyers who prosecuted the class actions and served as the plaintiffs' liaison with the Court regarding management and administration of the multidistrict litigation. He also led or participated in settlement negotiations with the banks that resulted in settlements exceeding $1.1 billion, including Bank of America ($410 million), Citizens Financial ($137.5 million), JPMorgan Chase Bank ($110 million), PNC Bank ($90 million), TD Bank ($62 million), U.S. Bank ($55 million), Union Bank ($35 million) and Capital One ($31.7 million).

Bobby has been appointed to leadership positions is numerous other class actions and multidistrict litigation proceedings. He is currently serving as co-lead counsel in *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 9:20-md-02924-RLR (S.D. Fla.), as well as liaison counsel in *In re Disposable Contact Lens Antitrust Litig.*, MDL 2626 (M.D. Fla.); liaison counsel in *In re 21st Century Oncology Customer Data Security Breach Litig.*, MDL 2737 (M.D. Fla.); and *In re Farm-Raised Salmon and Salmon Products Antitrust Litig.*, No. 19-21551 (S.D. Fla.). He previously served as liaison counsel for indirect purchasers in *In re Terazosin Hydrochloride Antitrust Litig.*, MDL 1317 (S.D. Fla.), an antitrust class action that settled for over $74 million.

For the past 18 years, Bobby has represented thousands of Florida homeowners in class actions to recover full compensation under the Florida Constitution based on the Florida Department of Agriculture's taking and destruction of the homeowners' private property. As lead counsel, Bobby argued before the Florida Supreme Court to establish the homeowners' right to pursue their claims; served as trial counsel in non-jury liability trials followed by jury trials that established the amount of full compensation owed to the homeowners for their private property; and handled all appellate proceedings. Bobby's tireless efforts on behalf of the homeowners resulted in judgments exceeding $93 million.

Bobby previously served as an Adjunct Professor at Vanderbilt University Law School, where he co-taught a course on complex litigation in federal courts that focused on multidistrict litigation and class actions. He continues to frequently lecture and make presentations on a variety of topics.

Bobby has served for many years as a trustee of the Greater Miami Jewish Federation and previously served as chairman of the board of the Alexander Muss High School in Israel, and as a trustee of The Miami Foundation.

# JONATHAN M. STREISFELD

Partner



**Bar Admissions**
The Florida Bar

**Court Admissions**
Supreme Court of the United States
U.S. Court of Appeals for the First, Second, Fourth, Fifth Ninth, and Eleventh Circuits
U.S. District Court, Southern District of Florida
U.S. District Court, Middle District of Florida
U.S. District Court, Northern District of Florida
U.S. District Court, Northern District of Illinois
U.S. District Court, Western District of Michigan
U.S. District Court, Western District of New York
U.S. District Court, Western District of Tennessee

**Education**
Nova Southeastern University, J.D. - 1997
Syracuse University, B.S. - 1994

**Email:** streisfeld@kolawers.com

Jonathan M. Streisfeld joined KO as a partner in 2008. Mr. Streisfeld concentrates his practice in the areas of consumer class actions, business litigation, and appeals nationwide. He is a Martindale Hubbell AV® Preeminent™ rated attorney in both legal ability and ethics.

Mr. Streisfeld has vast and successful experience in class action litigation, serving as class counsel in nationwide and statewide consumer class action lawsuits against the nation's largest financial institutions in connection with the unlawful assessment of fees. To date, his efforts have successfully resulted in the recovery of over $500,000,000 for tens of millions of bank and credit union customers, as well as profound changes in the way banks assess fees. Additionally, he has and continues to serve as lead and class counsel for consumers in many class actions involving false advertising and pricing, defective products, data breach and privacy, automobile defects, airlines, mortgages, and payday lending. Mr. Streisfeld has also litigated class actions against some of the largest health and automobile insurance carriers and oil conglomerates, and defended class and collective actions in other contexts.

Mr. Streisfeld has represented a variety of businesses and individuals in a broad range of business litigation matters, including contract, fraud, breach of fiduciary duty, intellectual property, real estate, shareholder disputes, wage and hour, and deceptive trade practices claims. He also assists business owners and individuals with documenting contractual relationships and resolving disputes. Mr. Streisfeld has also provided legal representation in bid protest proceedings.

Mr. Streisfeld oversees the firm's appellate and litigation support practice, representing clients in the appeal of final and non-final orders, as well as writs of certiorari, mandamus, and prohibition. His appellate practice includes civil and marital and family law matters.

Previously, Mr. Streisfeld served as outside assistant city attorney for the City of Plantation and Village of Wellington in a broad range of litigation matters. As a member of The Florida Bar, Mr. Streisfeld served for many years on the Executive Council of the Appellate Practice Section and is a past Chair of the Section's Communications Committee.

# KEN GRUNFELD

Partner



**Bar Admissions**
The Pennsylvania Bar
The New Jersey Bar

**Court Admissions**
U.S. Court of Appeals for the Third, Fourth, Fifth, Ninth, Tenth and Eleventh Circuits
U.S. District Ct, Eastern District of Pennsylvania
U.S. District Ct, Middle District of Pennsylvania
U.S. District Ct, Western District of Pennsylvania
U.S. District Ct, District of New Jersey
U.S. District Ct, Eastern District of Michigan
U.S. District Ct, Western District of Wisconsin

**Education**
Villanova University School of Law, J.D., 1999
University of Michigan, 1996

**Email: grunfeld@kolawyers.com**

---

Ken Grunfeld is one of the newest KO partners, having just started working at the firm in 2023. Having worked at one of Philadelphia's largest and most prestigious defense firms for nearly a decade defending pharmaceutical manufacturers, national railroads, asbestos companies and corporate clients in consumer protection, products liability, insurance coverage and other complex commercial disputes while working, Mr. Grunfeld "switched sides" about 15 years ago.

Since then, he has become one of the city's most prolific and well-known Philadelphia class action lawyers. His cases have resulted in the recovery of hundreds of millions of dollars for injured individuals.

Mr. Grunfeld brings with him a wealth of pre-trial, trial, and appellate work experience in both state and federal courts. He has successfully taken many cases to verdict. Currently, he serves as lead counsel in a number of nationwide class actions. Whether by settlement or judgment, Mr. Grunfeld makes sure the offending companies' wrongful practices have been addressed. He believes the most important part of bringing a wrongdoer to justice is to ensure that it never happens again; class actions can be a true instrument for change if done well.

Mr. Grunfeld has been named a Super Lawyer numerous times throughout his career. He has been a member of the Philadelphia, Pennsylvania, and American Bar Associations, as well as a member of the American Association for Justice (AAJ). He was a Finalist for AAJ's prestigious Trial Lawyer of the Year Award in 2012 and currently serves as AAJ's Vice Chair of the Class Action Law Group. To his strong view that attorneys should act ethically, he volunteers his time as a Hearing Committee Member for the Disciplinary Board of the Supreme Court of Pennsylvania.

Mr. Grunfeld received his undergraduate degree from the University of Michigan. He is an active member of the Michigan Alumni Association, Philadelphia chapter and serves as a Michigan Alumni Student recruiter for local high schools. He received his Juris Doctor from the Villanova University School of Law.  He was a member of the Villanova Law Review and graduated Order of the Coif.

Ken is a life-long Philadelphian. He makes his home in Bala Cynwyd, Pennsylvania, where he resides with his wife, Jennifer, and his year-old twins.

# KRISTEN LAKE CARDOSO

Partner



### Bar Admissions
The Florida Bar
The State Bar of California

### Court Admissions
U.S. District Court, Southern District of Florida
U.S. District Court, Middle District of Florida
U.S. District Court, Central District of California
U.S. District Court, Eastern District of California
U.S. District Court, Northern District of Illinois
U.S. District Court, Eastern District of Michigan

### Education
Nova Southeastern University, J.D., 2007
University of Florida, B.A., 2004

### Email: cardoso@kolawyers.com

Kristen Lake Cardoso is a litigation attorney focusing on consumer class actions and complex commercial litigation. She has gained valuable experience representing individuals and businesses in state and federal courts at both the trial and appellate levels in a variety of litigation matters, including contractual claims, violations of consumer protection statutes, fraud, breach of fiduciary duty, negligence, professional liability, real estate claims, enforcement of non-compete agreements, trade secret infringement, shareholder disputes, deceptive trade practices, and other business torts.

Currently, Ms. Cardoso serves as counsel in nationwide and statewide class action lawsuits concerning violations of state consumer protection statutes, false advertising, defective products, data breaches, and breaches of contract. Ms. Cardoso is actively litigating cases against major U.S. airlines for their failure to refund fares following flight cancellations and schedule changes, as well cases against manufacturers for their sale and misleading marketing of products, including defective cosmetics and nutritional supplements. Ms. Cardoso as also represented students seeking reimbursements of tuition, room and board, and other fees paid to their colleges and universities for in-person education, housing, meals, and other services not provided when campuses closed during the COVID-19 pandemic. Additionally, Ms. Cardoso has represented consumers seeking recovery of gambling losses from tech companies that profit from illegal gambling games offered, sold, and distributed on their platforms.

Ms. Cardoso is admitted to practice law throughout the states of Florida and California, as well as in the United States District Courts for the Southern District of Florida, Middle District of Florida, Central District of California, Eastern District of California Northern District of Illinois, and Eastern District of Michigan.

Ms. Cardoso attended the University of Florida, where she received her Bachelor's degree in Political Science, cum laude, and was inducted as a member of Phi Beta Kappa honor society. She received her law degree from Nova Southeastern University, magna cum laude. While in law school, Ms. Cardoso served as an Articles Editor for the Nova Law Review, was on the Dean's List, and was the recipient of a scholarship granted by the Broward County Hispanic Bar Association for her academic achievements. When not practicing law, Ms. Cardoso serves as a volunteer at Saint David Catholic School, including as a member of the school Advisory Board and an executive member of the Faculty Student Association. She has also served on various committees with the Junior League of Greater Fort Lauderdale geared towards improving the local community through leadership and volunteering.

# STEVEN SUKERT

Partner



**Bar Admissions**
The Florida Bar
The New York Bar

**Court Admissions**
United States District Court, Southern District of Florida
United States District Court, Middle District of Florida
United States District Court, Southern District of New York
United States District Court, Eastern District of New York
United States District Court, Northern District of Illinois
United States District Court, Central District of Illinois

**Education**
Georgetown University Law Center, J.D., 20018
Northwestern University, B.S., 2010

**Email: sukert@kolawyers.com**

Steven Sukert has experience in all aspects of complex litigation in federal and state court, including drafting successful dispositive motions and appeals, handling discovery, and arguing court hearings. Steven focuses his practice at KO on complex class actions and multi-district litigations in courts around the country, including in data privacy, bank overdraft fee, and other consumer protection cases.

Before joining KO, Steven gained experience at Gunster, Yoakley & Stewart, P.A. in Miami in high-stakes commercial cases often involving trade secret and intellectual property claims, consumer contract claims, and legal malpractice claims, as well as in international arbitrations. Steven co-authored an amicus brief in the Florida Supreme Court case Airbnb, Inc. v. Doe (Case No. SC20-1167), and helped organize the American Bar Association's inaugural International Arbitration Masterclass, in 2021.

Steven was born and raised in Miami. He returned to his home city after law school to clerk for the Honorable James Lawrence King in the U.S. District Court for the Southern District of Florida.

In 2018, Steven earned his J.D. from Georgetown University Law Center. While living in the nation's capital, he worked at the U.S. Department of Labor, Office of the Solicitor, where he won the Gary S. Tell ERISA Litigation Award; the Civil Fraud Section of the U.S Department of Justice, where he worked on large Medicare fraud cases and pioneered the use of the False Claims Act in the context of pharmaceutical manufacturers who engaged in price fixing; and the Lawyers' Committee for Civil Rights Under Law, where his proposal for writing an amicus brief in the Janus v. AFSCME U.S. Supreme Court case was adopted by the organization's board of directors.

Steven has a degree in Molecular Biology from Northwestern University. Prior to his legal career, he worked as a biomedical laboratory researcher at the Diabetes Research Institute in Miami.

# CAROLINE HERTER
Associate



### Bar Admissions
The Florida Bar

### Court Admissions
U.S. District Court, Middle District of Florida
U.S. District Court, Southern District of Florida
U.S. Bankruptcy Court, Southern District of Florida

### Education
University of Miami School of Law, J.D. - 2020
University of Miami, B.S. – 2016

### Email: Herter@kolawyers.com

Caroline Herter is a litigation attorney at the firm's Fort Lauderdale office. Caroline focuses her practice on consumer class actions, mass torts, and white-collar commercial litigation in state and federal courts nationwide. She has gained valuable experience representing individuals and businesses to hold wrongdoers accountable through claims involving personal injury, wrongful death, consumer fraud, products liability, breach of fiduciary duty, civil theft/conversion, corporate veil-piercing, fraudulent transfer, tortious interference, False Claims Act violations, and the like.

Before joining KO, Caroline worked at a boutique law firm in Miami where she represented plaintiffs in matters involving creditor's rights, insolvency, and asset recovery. She now applies this experience throughout her practice at KO, often combining equitable remedies with legal claims to ensure the best chance of recovery for her clients.

Notable cases that Caroline has been involved in include *In Re: Champlain Towers South Collapse Litigation*, where she was a member of the team serving as lead counsel for the families of the 98 individuals who lost their lives in the tragic condominium collapse. The case resulted in over $1 billion recovered for class members, the second-largest settlement in Florida history. She also co-authored a successful petition for certiorari to the United States Supreme Court in *Olhausen v. Arriva Medical, LLC et al.*, a False Claims Act case involving the standard for determining a defendant's scienter, which led the high Court to reverse the Eleventh Circuit Court of Appeal's earlier ruling against her client.

Caroline earned her law degree from the University of Miami School of Law, summa cum laude, where she received awards for the highest grade in multiple courses. During law school Caroline was an editor of the University of Miami Law Review and a member of the Moot Court Board.

Outside of her law practice, Caroline serves on the Board of Directors of the non-profit organization Americans for Immigrant Justice.