**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

TONY GOODRUM, MARTY WOOLEY, TODD CLAY, and TANYA WALKER, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

VERADIGM, INC.,

Defendant.

CASE NO.: 1:25-cv-07062

Hon. John Robert Blakey

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....... 1

II. FACTUAL BACKGROUND ....... 2

A. The Data Incident ....... 2

B. Procedural History, Mediation, and Settlement ....... 3

III. SUMMARY OF THE SETTLEMENT ....... 5

A. The Settlement Class ....... 5

B. Settlement Class Member Benefits ....... 5

1. Cash Payment A – Documented Losses ....... 6

2. Cash Payment B – Alternate Cash ....... 7

3. Medical Data Monitoring ....... 7

4. Injunctive Relief ....... 7

5. Residual Funds ....... 8

C. The Releases ....... 8

D. Attorneys' Fees, Costs, and Service Awards ....... 8

IV. NOTICE PROGRAM, CLAIM PROCESS, OPT-OUTS, AND OBJECTIONS ....... 9

A. The Notice Program Satisfied Rule 23 and Due Process ....... 9

B. Claims, Opt-Outs, and Objections ....... 12

V. SETTLEMENT CLASS CERTIFICATION ....... 12

VI. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ....... 13

A. The Class Representatives and Settlement Class Counsel Have Adequately Represented the Settlement Class ....... 15

B. The Settlement Was Negotiated at Arm's-Length With No Fraud or Collusion................16

C. The Settlement Provides Adequate Relief Balanced Against the Risks ...........................16

1. The Costs, Risks, and Delay of Trial and Appeal Favor Settlement Approval............18

2. The Method of Providing Relief is Effective..........................................................19

3. The Proposed Award of Attorneys' Fees is Fair and Reasonable................................20

4. There Are No Additional Agreements to Identify Under Rule 23 (e)(3) .....................20

D. The Settlement Treats Class Members Equitably Relative to Each Other........................20

E. The Opinions of Class Counsel and Plaintiffs and Reaction from the Settlement Class Favor Final Approval ........................................................................................21

VII. APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS................22

A. The Court Should Apply the Percentage-of-the-Fund Method........................................22

B. Risk of Nonpayment ..................................................................................................24

C. Quality of Class Counsel Performance .......................................................................24

D. Amount of Work Necessary to Resolve the Litigation ..................................................25

E. Complexity, Length, and Expense of the Litigation .....................................................26

F. Stakes of the Case ....................................................................................................26

G. Normal Rate of Compensation and Awards in Similar Cases..........................................27

H. The Litigation Costs Are Reasonable .........................................................................28

I. The Requested Service Awards Should be Approved......................................................29

VIII. CONCLUSION..........................................................................................................29

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alliance Ophthalmology, PLLC v. ECL Group, LLC,*
No. 1:22-CV-296, 2024 WL 3203226 (M.D.N.C. June 27, 2024) ....28

*Armstrong v. Bd of Sch. Directors of the City of Milwaukee*,
616 F.2d 305 (7th Cir. 1980) ....13, 15

*Browne v. Am. Honda Motor Co.*,
2010 WL 9499073 (C.D. Cal. Oct. 5, 2010) ....24

*Cook v. Niedert*,
142 F.3d 1004 (7th Cir. 1998) ....29

*G.M. Sign, Inc. v. Finish Thompson, Inc.,*
No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869 (N.D. Ill. Aug. 20, 2009) ....16

*Gaskill v. Gordon*,
160 F.3d 361 (7th Cir. 1998) ....27

*Gautreaux v. Pierce*,
690 F.2d 616 (7th Cir. 1982) ....13

*Gehrich v. Chase Bank USA, N.A.*,
316 F.R.D. 215 (N.D. Ill. 2016) ....17

*Grady v. de Ville Motor Hotel, Inc.*,
415 F.2d 449 (10th Cir. 1969) ....17

*Hall v. Cole*,
412 U.S. 1 (1973) ....25

*Hammond v. The Bank of N.Y. Mellon Corp.,*
No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307 (S.D.N.Y. June 25, 2010) ....18

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ....17

*In re AT&T Mobility Wireless Data Services Sales Litig.*,
270 F.R.D. 330 (N.D. Ill. 2010) ....13, 17, 19

*In re AT&T Mobility Wireless Servs. Sales Tax Litig.*,
789 F. Supp. 2d 935 (N.D. Ill. 2011) ....26

*In re Capital One Tel. Consumer Prot. Act Litig.*,
80 F. Supp. 3d 781 (N.D. Ill. 2015) ....................23

*In re Clearview AI, Inc.*,
No. 21-cv-00135, 2025 WL 1371330 (N.D. Ill. May 12, 2025) ....................10

*In re Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ....................24

*In re CorrectCare Data Breach Litig.,*
No. 5:22-319-DCR, 2024 WL 4211480 (E.D. Ky. Sept. 14, 2024) ....................28

*In re Domestic Air Transp. Antitrust Litig.*,
148 F.R.D. 297 ....................21

*In re Forefront Data Breach Litig.*,
2023 WL 6215366 (E.D. Wis. Mar. 22, 2023) ....................23

*In re Fortra File Transfer Software Data Sec. Breach Litig.*,
No. 24-MD-03090, 2025 WL 2675178 (S.D. Fla. Sept. 17, 2025) ....................28

*In re Fortra File Transfer Software Data Sec. Breach Litig.*,
No. 24-MD-03090, 2025 WL 457896 (S.D. Fla. Feb. 11, 2025) ....................28

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
78 F.4th 677 (4th Cir. 2023) ....................18

*In re Sears, Roebuck & Co. Front-loading Washer Prods. Liab. Litig.,*
No. 06 C 7023, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016) ....................15

*In re Southwest Airlines Voucher Litig.*,
2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) ....................25

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) ....................28, 29

*In re Target Corp. Customer Data Sec. Breach Litig.,*
MDL No. 14-2522 (PAM/JJK), 2015 WL 7253765 (D. Minn. Nov. 17, 2015) ....................18

*In re TikTok, Inc., Consumer Priv. Litig.*,
565 F. Supp. 3d 1076 (N.D. Ill. 2021) ....................13

*In re Tiktok, Inc., Consumer Priv. Litig.*,
617 F. Supp. 3d 904 (N.D. Ill. 2022) ....................11

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ....................13

*Karpilovsky v. All Web Leads, Inc.*,
No. 17 C 1307, 2018 WL 3108884 (N.D. Ill. June 25, 2018) ....16

*Krant v. UnitedLex Corp.*,
No. 23-2443-DDC-TJJ, 2024 WL 5187565 (D. Kan. Dec. 19, 2024) ....27

*Kujat v. Roundy's Supermarkets Inc.*,
2021 WL 4551198 (N.D. Ill. Aug. 11, 2021) ....24

*Logan v. Marker Group, Inc.*,
No. 4:22-CV-00174, 2024 WL 3489208 (S.D. Tex. July 18, 2024) ....18

*Maldini v. Marriott Int'l*,
140 F.4th 123 (4th Cir. 2005) ....18

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) ....11

*Spano v. Boeing Co.*,
2016 WL 3791123 (S.D. Ill. Mar. 31, 2016) ....25

*Sutton v. Bernard*,
504 F.3d 688 (7th Cir. 2007) ....23

*Synfuel Techs, Inc. v. DHL Express (USA), Inc.*,
463 F.3d 646 (7th Cir. 2006) ....16

*T.K. Through Leshore v. Bytedance Tech. Co.*,
No. 19-CV-7915, 2022 WL 888943 (N.D. Ill. Mar. 25, 2022) .... *passim*

*Theus v. Brinker, Int'l, Inc.*,
No. 3:18-cv-686-TJC-MCR, 2025 WL 1786346 (M.D. Fla. June 27, 2025) ....18

*Thomsen v. Morley Cos.*,
No. 1:22-cv-10271, 2023 WL 3437802 (E.D. Mich. May 12, 2023) ....28

*Wong v. Accretive Health, Inc.*,
773 F.3d 859 (7th Cir. 2014) ....14

*Wright v. Nationstar Mtg. LLC*,
No. 14 C 10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ....19, 29

**Statutes**

28 U.S.C. § 1715 ....9

**Rules**

Fed. R. Civ. P. 23 .... *passim*

**Other**

Manual for Complex Litigation § 21.632 .......................................................................13

Manual for Complex Litigation § 21.71 .........................................................................25

Newberg on Class Actions § 8:36 ..................................................................................10

Newberg on Class Actions § 11:50 ................................................................................17

Plaintiffs,[1] individually and on behalf of all others similarly situated, respectfully move pursuant to Fed. R. Civ. P. 23(a), (b)(3), and (e) to finally certify the Settlement Class, finally approve the proposed Settlement, and enter judgment dismissing the Action with prejudice. In support of their motion, Plaintiffs attach ***Exhibit B*** – Amendment to Settlement Agreement ("ASA"); ***Exhibit C*** – Joint Declaration of Class Counsel ("Joint Decl."); and ***Exhibit D*** – Declaration of Christie K. Reed of Kroll Settlement Administration ("Admin. Decl.").

## I. INTRODUCTION

This case arises from a Data Incident which impacted the Private Information belonging to approximately 3.42 million of Defendant's Clients' patients. Joint Decl. ¶ 2. Plaintiffs filed a consolidated class action against Defendant for not adequately protecting their Private Information. *Id.* Defendant denies any wrongdoing and liability and maintains its defenses to all claims. *Id.*

Knowing the litigation risks, the Parties successfully engaged in arm's length mediated settlement negotiations with retired U.S. District Court Judge, Honorable Wayne R. Andersen of JAMS. *Id.* ¶ 10. Through these negotiations and following later negotiations once the Parties learned the number of impacted people was larger, the Parties agreed to a $10,500,000.00 non-reversionary all cash Settlement Fund. The Settlement Fund will be used to pay for all Settlement Class Member Benefits, which include: (a) Cash Payment of up to $5,000.00 for documented losses related to the Data Incident or a flat cash payment in the estimated amount of $50.00 without documentation, and two years of Medical Data Monitoring; (b) payment of all Settlement

[1]Unless otherwise modified in this Motion, capitalized terms herein shall have the same definitions as those defined in section II of the Settlement Agreement, a copy of which is attached as ***Exhibit A***. The terms "Settlement" or "Agreement" shall now mean the Settlement Agreement and Amendment to Settlement, collectively.

Administration Costs; and (c) payment of any Court-awarded attorneys' fees and costs to Class Counsel, and Service Awards to the Class Representatives. *Id.* Defendant also agreed to non-monetary Settlement benefits by further enhancing its security measures to protect Private Information in its possession, which measures have been or will be paid separately by Defendant and not from the Settlement Fund.

Plaintiffs and Class Counsel now respectfully request this Court enter the Final Approval Order: (1) granting Final Approval of the Settlement; (2) affirming certification of the Settlement Class for settlement purposes, pursuant to Rule 23(a) and (b)(3); (3) confirming Plaintiffs' appointment as Class Representatives; (4) confirming the appointments of Jeff Ostrow of Kopelowitz Ostrow P.A and Gary M. Klinger of Milberg, PLLC as Class Counsel, pursuant to Rule 23(g)(1); (5) confirming the appointment of Kroll Settlement Administration LLC as Settlement Administrator; (6) awarding Class Counsel $3,500,000.00 attorneys' fees and $44,925.51 for costs; (7) awarding each Class Representative a $2,500.00 Service Award; (8) overruling timely objections, if any; and (9) entering final judgment dismissing the Action with prejudice and reserving jurisdiction over Settlement implementation.

## II. <u>FACTUAL BACKGROUND</u>

### A. The Data Incident

Defendant is an Illinois based healthcare technology company that, through its subsidiaries, offers a variety of software and services to healthcare providers, including electronic health record and medical practice management tools. Joint Decl. ¶ 4. Defendant's Clients use Defendant's software and services to, among other things, document their patient encounters and assist with obtaining payment for services. *Id.* Private Information is collected by Defendant's Clients and may be stored in Defendant's solutions. *Id.*

In December 2024, cybercriminals unlawfully accessed or acquired information belonging to Defendant's Clients' patients stored on Defendant's servers, including Settlement Class Members' Private Information. *Id.* ¶ 5. After an investigation, Defendant concluded the information taken involved that of approximately 3.42 million Settlement Class Members. *Id.*

**B. Procedural History, Mediation, and Settlement**

On June 25, 2025, following Class Counsel's investigation of the Data Incident, Plaintiffs Goodrum and Mixon filed a class action lawsuit related to the Data Incident. [ECF No. 1]. On July 31, 2025, Plaintiff Wooley filed a second action alleging similar claims and seeking to represent an overlapping putative class.

On August 1, 2025, following an agreement of Plaintiffs' counsel to work cooperatively and litigate in a single consolidated action, Plaintiffs moved to consolidate the actions and to appoint interim class counsel. [ECF No. 11]. The Court granted consolidation on August 19, 2025, but deferred on appointing interim class counsel until the cases were consolidated. [ECF No. 18].

After the two class actions were filed, the Parties began discussing the prospect of early resolution. Joint Decl. ¶ 7. They scheduled a mediation with experienced class action mediator Hon. Wayne Andersen (Ret.), for August 26, 2025. *Id.*

Before mediation, Plaintiffs consulted with their liability and damage experts. Joint Decl. ¶ 8. Plaintiffs also requested, and Defendant produced, certain information related to the extent and scope of the breach, including, but not limited to, the number of individuals impacted by the Data Incident, the categories of Private Information involved, and various measures implemented since the Data Incident (or those that will be implemented in the future) to further enhance Defendant's existing security defenses and help to protect against similar incidents in the future. *Id.* The information provided to Plaintiffs and relied upon by the Parties initially indicated the

putative class included approximately 2,900,000 million people. *Id*.

On August 21, 2025, Plaintiffs filed their Consolidated Complaint, alleging claims for negligence, negligence *per se*, breach of implied contract, unjust enrichment, and declaratory judgment and injunctive relief. [ECF No. 20].

The Parties mediated on August 26, 2025. Joint Decl. ¶ 10. After a full day of arm's-length and contested negotiations, the Parties agreed in principle to settle the case on a classwide basis for the estimated 2,900,000 impacted individuals. *Id.* The Parties in turn negotiated and executed the Agreement on August 29, 2025. *Id.* ¶ 11. That same day, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement. *Id.* The Plaintiffs also filed an Amended Consolidated Complaint adding Plaintiffs Clay and Walker on August 30, 2025. [ECF No. 27].

After Preliminary Approval was first granted and further analysis and data mining, the Parties determined that the Settlement Class was about 500,000 members larger than originally estimated when negotiating the Settlement's monetary terms. Joint Decl. ¶ 14. In response, Plaintiffs demanded Defendant increase the amount of the Settlement Fund to accommodate for the larger Settlement Class. *Id*. ¶ 15. Thereafter, following more arm's-length negotiations, the Parties agreed to a *pro rata* increase per Settlement Class member, adding $1,750,00.00 in cash for the Settlement Class' benefit. *Id*. To ensure the new Settlement Fund amount was fair, reasonable, and adequate, Class Counsel re-engaged Judge Andersen to discuss the new Settlement Class size and the corresponding increase in the Settlement Fund amount Defendant agreed to pay. *Id*. Judge Andersen agreed with the Parties that maintaining the per person amount is the appropriate measure for the new Settlement amount. *Id*. Importantly, Class Counsel insisted the Settlement Administration Costs stay the same, notwithstanding the 500,000 person increase in the

Settlement Class size, meaning the per person benefit actually increased under the new Settlement. *Id*. ¶ 16.

The Parties then negotiated and signed the ASA on October 13, 2025. *Id*. ¶ 18. They filed the ASA along with a Joint Motion to Approve Amendment to Settlement Agreement on the same day. [ECF No. 37]. In response, finding the ASA's substance was material, the Court vacated the Preliminary Approval Order and instructed the Plaintiffs to refile their Motion for Preliminary Approval. [ECF No. 38]. On October 15, 2025, Plaintiffs' Amended Unopposed Motion for Preliminary Approval of Class Action Settlement was filed. [ECF No. 41]. Following the November 5, 2025 hearing on that motion, the Court entered the operative Preliminary Approval Order. The Notice Program and Claim Process have been initiated and are ongoing. *See generally* Admin. Decl.

## III. SUMMARY OF THE SETTLEMENT

### A. The Settlement Class

The nationwide Settlement Class is defined as: "all living individual individuals residing in the United States whose Private Information may have been impacted in the Data Incident." Agreement ¶ 62. Excluded from the Settlement Class are (1) all persons who are directors, officers, and agents of Defendant, or their respective subsidiaries and affiliated companies; (2) governmental entities; (3) the Judge assigned to the Action, that Judge's immediate family, and Court staff; and (4) Settlement Class Members who timely and validly opt-out. *Id.* ¶¶ 62-63.

### B. Settlement Class Member Benefits

The $10,500,000 non-reversionary cash Settlement Fund will pay the following Settlement Class Member Benefits: (1) Cash Payments and Medical Data Monitoring to those Settlement Class Members who submit Valid Claims; (2) all Settlement Administration Costs; (3) CAFA

Notice costs; and (4) any Court-awarded attorneys' fees, costs, and Service Awards. *Id.* ¶ 72.

When submitting a Valid Claim, Settlement Class Members must choose either Cash Payment A – Documented Losses or Cash Payment B – Alternate Cash. *Id.* ¶ 72. Additionally, all Settlement Class Members may also elect to receive Medical Data Monitoring. *Id.* All Cash Payments will be subject to a *pro rata* increase from the Net Settlement Fund if the amount of Valid Claims is insufficient to exhaust the entire Net Settlement Fund or a decrease from the Net Settlement Fund if the amount of Valid Claims exhausts the Net Settlement Fund amount. *Id.* To calculate the *pro rata* increase or decrease, the Settlement Administrator must distribute the Net Settlement Fund first for payment of Medical Data Monitoring, then for Cash Payment A – Documented Losses, and then for Cash Payment B – Alternate Cash. *Id.* Any *pro rata* increases or decreases will be on an equal percentage basis. *Id.* If a Settlement Class Member does not submit a Valid Claim, the Settlement Class Member will release his or her claims without receiving a Cash Payment or Medical Data Monitoring. *Id.*.

***1. Cash Payment A – Documented Losses***

Settlement Class Members may make a Claim for reimbursement for documented losses up to $5,000.00 each that are the direct result of the Data Incident. *Id.* ¶ 72.a. To do so, a Settlement Class Member must elect Cash Payment A on the Claim Form attesting under penalty of perjury to incurring documenting losses and submitting reasonable documentation supporting the losses, which means documentation contemporaneously generated or prepared by a third party or the Settlement Class Member supporting a claim for expenses paid. *Id.* Non-exhaustive examples of reasonable documentation include telephone records, correspondence including emails, or receipts. *Id.* Except as expressly provided herein, personal certifications, declarations, or affidavits from the Settlement Class Member do not constitute reasonable documentation but may be

included to provide clarification, context, or support for other submitted reasonable documentation. *Id.* Settlement Class Members shall not be reimbursed for expenses if they have been reimbursed for the same expenses by another source, including compensation provided in connection with the credit monitoring and identity theft protection product offered as part of the notification letter provided by Defendant or otherwise. *Id.* If a Settlement Class Member does not submit reasonable documentation supporting a loss, or if their Claim is rejected by the Settlement Administrator for any reason, and the Settlement Class Member fails to cure his or her Claim, the Claim will be rejected and the Claim will be as if he or she elected Cash Payment B. *Id.*

#### *2. Cash Payment B – Alternate Cash*

As an alternative to Cash Payment A, a Settlement Class Member may elect to receive Cash Payment B – Alternate Cash, in the estimated amount of $50.00. *Id.* ¶ 72.b. There is no requirement to provide supporting documentation.

#### *3. Medical Data Monitoring*

In addition to Cash Payment A or Cash Payment B, Settlement Class Members may also make a Claim for Medical Data Monitoring that will include two years of CyEx's medical data monitoring product with: (i) real time monitoring of the credit file with one credit-reporting agency; (ii) dark web scanning with immediate notification of potential unauthorized use; (iii) security freeze assistance; (iv) victim assistance; (v) $1,000,000.00 in identity theft insurance with no deductible; and (vi) access to fraud resolution agents to help investigate and resolve instances of identity theft. *Id.* ¶ 72.c.

#### *4. Injunctive Relief*

Prior to Final Approval, Defendant will provide Class Counsel with a written and signed declaration regarding the security measures, including the cost associated therewith, it

implemented following the Data Incident (or will implement) to enhance its existing security defenses and help protect against similar  subsequent data incidents. *Id.* ¶ 73.d. Defendant's costs for any such security measures were paid or will be paid separately by Defendant and will not come out of the Settlement Fund. *Id.*

***5. Residual Funds***

Residual funds shall be distributed to the International Association of Privacy Professionals Student Scholarship Fund, a non-profit organization jointly recommended by the Parties to be approved by the Court or any other organization approved by the Court. *Id.* ¶ 108.

**C. The Releases**

Settlement Class Members who do not timely and validly opt-out of the Settlement will be deemed to have released Defendant and the other Released Parties from the Released Claims. Agreement ¶¶ 72, 109. The scope of the Releases is detailed in section XIII of the Agreement. The Released Claims are narrowly tailored to the claims made in the Action. Joint Decl. ¶ 23.

**D. Attorneys' Fees, Costs, and Service Awards**

The Application for Attorneys' Fees, Costs, and Service Awards contained herein respectfully requests the Court (a) award of $3,500,000.00 attorneys' fees of one-third of the Settlement Fund, plus reimbursement of $44,925.51 for reasonable litigation costs; and (b) Service Awards of $2,500.00 for each of the Class Representatives, in recognition of their efforts in this Action and commitment to the Settlement Class. Agreement ¶¶ 105-106; Joint Decl. ¶¶ 41, 43. Attorneys' fees, costs, and Service Awards were not negotiated by the Parties until all other material terms of the Settlement had been determined. Agreement ¶ 107. This Settlement is not contingent on approval of the request for attorneys' fees, costs, and Service Awards, and if the Court denies the request or grants amounts less than what was requested, the remaining provisions

of the Agreement shall remain in force. *Id.*

## IV. NOTICE PROGRAM, CLAIM PROCESS, OPT-OUTS, AND OBJECTIONS

### A. The Notice Program Satisfied Rule 23 and Due Process.

The Settlement Administrator implemented the Notice Program in full compliance with the Settlement Agreement and the Preliminary Approval Order. Admin. Decl. ¶¶ 5-20. The Settlement Administrator served the required CAFA notices for Defendant. Admin. ¶¶ 6-7; 28 U.S.C. § 1715. Supplemental CAFA notices were served on November 14, 2025, and January 26, 2026, to reflect amendments to the Agreement made in the ASA. *Id.*

Commencing on November 25, 2025, the Settlement Administrator began sending Email Notices, Postcard Notices, and Publication Notice to the 3,422,391 Settlement Class Members identified on the Class List. *Id.* ¶ 8. Email Notices that were returned undeliverable resulted in Postcard Notices being sent to Settlement Class Members for whom a mailing address was available and which were updated by Settlement Administrator. *Id.* ¶ 13-15. Postcard Notices returned as undeliverable were re-mailed to new addresses found using a reasonable address trace service. *Id.* As of January 30, 2026, the Settlement Administrator expects the Notice Program will reach approximately 90% of Settlement Class Members, far exceeding the Federal Judicial Center's standard of 70–95%, and consistent with other court-approved, best-practicable notice programs. *Id.* ¶¶ 20, 27; *see* FEDERAL JUDICIAL CENTER, "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" (2010).

The Email Notice and Postcard Notice clearly and concisely summarizes the rights of Settlement Class Members and directs them to the Settlement Website for additional information, including the Long Form Notice, Settlement Agreement, and details on the Claim Process. Admin Decl., Exs. 7-8. The Long Form Notice, which details the procedures to opt-out or object to the

Settlement or to make a Claim, is also available on the Settlement Website and by mail upon a Settlement Class Member's request. *Id.*, Ex. 8. The Publication Notice directed the Settlement Class to the Settlement Website and Long Form Notice. *Id.*, Ex. 11.

The Settlement Website, www.veradigmdatasettlement.com, went live on November 25, 2025, and summarizes the Settlement, includes important documents and relevant dates and information, and serves as a portal for Settlement Class Members to file Claim Forms. *Id.* ¶ 10.

Additionally, on September 29, 2025, the Settlement Administrator established a dedicated, toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries. *Id*. ¶ 11. As of January 30, 2026, there have been 1,659 calls to the toll-free line, and 711 callers have been connected to live operators. *Id.* The Settlement Administrator also designated a post office box to receive opt-out requests, objections, Claim Forms, and correspondence from Settlement Class Members. *Id*. ¶ 12.

To satisfy the requirements of due process, "[t]he court must direct notice in a reasonable manner to all members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *In re Clearview AI, Inc.*, No. 21-cv-00135, 2025 WL 1371330, at *34 (N.D. Ill. May 12, 2025); *T.K. Through Leshore v. Bytedance Tech. Co*., No. 19-CV-7915, 2022 WL 888943, at *60 (N.D. Ill. Mar. 25, 2022) (Blakey, J.) (citation omitted). The Court approved the Notice Program and found it satisfied all requirements of due process and Rule 23(c)(2). ECF No. 46 at ¶¶ 12-13. "Neither Rule 23 nor due process requires that every class member actually receives notice. Instead, 'notice suffices if it is reasonably calculated to reach the absent parties.'" *In re Clearview AI, Inc.*, 2025 WL 1371330, at *34-35 (citing 3 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 8:36 (5th ed. 2011) (updated 2024)).

Here, as set forth above, the Settlement Administrator issued notice in the best practicable

manner by directly notifying a substantial portion of the Settlement Class via Email Notice or Postcard Notice for whom information was available to do so, complimented by Publication Notice to those for whom direct notice was not possible. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015) (explaining that Rule 23(c)(2)(B) "does not insist on actual notice to all class members in all cases" and in fact "recognizes it might be *impossible* to identify some class members for purposes of actual notice") (emphasis in the original).

The Settlement Administrator estimates the Notice Program's reach rate at 90%, a rate that far exceeds the 70% threshold deemed adequate to satisfy state and federal due process considerations. *See* Admin. Decl. ¶ 20; *see also, e.g.*, Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 1 (2010) (recognizing effectiveness of notice reaching between 70% and 95% of the class); *In re Tiktok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 928 (N.D. Ill. 2022) (granting final approval and finding notice that "clear[ed] the Federal Judicial Center's seventy-percent threshold" adequate). Thus, the Notice Program is consistent with notice programs approved in this District, courts in the Seventh Circuit, and across the United States, is considered a "high percentage," and is within the "norm." *See* Barbara J. Rothstein & Thomas E. Willging, Managing Class Action Litigation: A Pocket Guide for Judges, 27 (3d ed. 2010).

Here, the Notices adequately inform the Settlement Class of the nature of the Action, the Settlement Class definition, the claims at issue, the binding effect of Final Approval and judgment, and the Settlement Class Members' rights to object, opt-out, and/or enter an appearance through an attorney. Admin Decl., Exs. 7-9. The Notice contain clear and concise language that is easy to understand. Moreover, the Settlement Administrator—with the Parties' assistance—is taking all necessary measures to ensure Notice reaches as many Settlement Class Members as possible given

the available information. Thus, the Notice provided has been consistent with the Notice Program the Court approved in its Preliminary Approval Order, satisfies due process considerations of the United States Constitution, and weighs in favor of Final Approval. *Id*. ¶ 27; Joint Decl. ¶ 20.

**B. Claims, Opt-Outs, and Objections**

The Claim Process was structured to give all Settlement Class members adequate time to review the Settlement terms, submit Claims, and decide whether to opt-out of or object to the Settlement. Joint Decl. ¶ 21. The Opt-Out Deadline and Objection Deadline are February 17, 2026. Admin Decl. ¶ 24. As of January 30, 2026, there are only four opt-out requests and no objections. *Id.* ¶ 25. The Claim Form Deadline is March 3, 2026. *Id.* ¶ 21. Now that Notice has been distributed to the Settlement Class, the Settlement Administrator has begun receiving Claim Forms. Joint Decl. ¶ 22. The number of Claims is certain to increase over the next several weeks. *Id.* However, to ensure Settlement Class Members do not miss the opportunity to file a Claim, Class Counsel has directed the Settlement Administrator to send reminder notices by email to be sent in February, 2026 to all Settlement Class Members for whom the Email Notice was not previously undeliverable and who have not yet submitted a Claim Form or opted-out from the Settlement. *Id.* Class Counsel will update the Court with the final Notice Program and Claim Process results at the Final Approval Hearing, including responding to any objections, if filed.

## V. SETTLEMENT CLASS CERTIFICATION

For Settlement purposes only, the Court's Preliminary Approval Order preliminarily certified the Action for the Settlement Class, finding prerequisites of numerosity, commonality, typicality, adequacy, predominance, and superiority were satisfied pursuant to Rule 23(a) and (b)(3), and that the Settlement Class should be certified. ECF No. 46 at ¶ 3. The Court appointed Plaintiffs as Class Representatives pursuant to Rule 23(e)(2)(A), and Gary M. Klinger and Jeff

Ostrow as Class Counsel pursuant to Rule 23(g)(1). ECF No. 46 at ¶¶ 4-5. The Court also appointed Kroll as the Settlement Administrator and approved the Notice Program and Claim Process. *Id.* at ¶¶ 11-13. Because nothing has changed regarding class certification, the Court should finally certify the Settlement Class. Plaintiffs incorporate by reference their Settlement Class certification arguments from the Amended Motion for Preliminary Approval. ECF No. 41 at 13-18.

## VI. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

After finally certifying the Settlement Class, and with the Settlement Class having been given reasonable Notice of the Settlement, the Court should determine the Settlement is worthy of Final Approval. Courts "naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *see also Armstrong v. Bd of Sch. Directors of the City of Milwaukee*, 616 F.2d 305, 312 (7th Cir. 1980). Any class action settlement requires: (i) the Court to preliminarily approve it; (ii) that members of the settlement class receive notice; and (iii) that the Court hold a final hearing to decides whether it is fair, reasonable, and adequate. *See Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); Manual for Complex Litigation § 21.632 (4th ed. Supp. 2010); *see generally* Fed. R. Civ. P. 23(e).

When granting Preliminary Approval, the Court determined the Settlement within the range of what might be found fair, reasonable, and adequate. *In re AT&T Mobility Wireless Data Services Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010). It also determined that (1) it will likely be able to certify the Settlement Class for purposes of judgment; (2) it would likely approve the Settlement under Rule 23(e); and (3) could approve the Notice Program and directed that Notice be provided "in a reasonable manner to all class members who would be bound" by the proposed Agreement. *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1084 (N.D. Ill. 2021) (internal citations omitted); ECF No. 46 at ¶¶ 1, 6, 12-13.

At this Final Approval stage, the Court should find the Settlement is fair, reasonable, adequate, and well within the range of possible approval, because it provides excellent benefits to all Settlement Class Members, avoids the uncertainty of litigation, and avoids the need to resolve contentious factual and legal issues. Joint Decl. ¶ 24.

The Court must apply the Rule 23(e)(2) factors, deciding whether:

> (A) the class representative and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Before the 2018 Rule 23(e) amendment, the Seventh Circuit established the "*Wong* factors" to assess whether a proposed settlement is fair, reasonable, and adequate.

> [When conducting a fairness determination relevant factors include: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed."

*Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (citation omitted). Courts should "consider the facts in the light most favorable to the settlement." *Isby*, 75 F.3d at 1198-99. "The essence of settlement is compromise . . . Thus the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *EEOC v. Hiram Walker & Sons*, 768 F.2d 884, 889 (7th Cir. 1985).

Because the Rule 23(e)(2) and *Wong* factors overlap, courts often consider them together. This Motion does so.

### A. The Class Representatives and Settlement Class Counsel Have Adequately Represented the Settlement Class.

For many reasons, class actions are especially well-suited to compromise. Common reasons include the duration of such cases, uncertain outcomes, and difficulties of proof. This is supported by an "overriding public interest in favor of settlement," particularly in complex class actions. *In re Sears, Roebuck & Co. Front-loading Washer Prods. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *6 (N.D. Ill. Feb. 29, 2016); *Armstrong*, 616 F.2d at 313 ("In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.").

This Action is no exception. Even though the Settlement was reached at a relatively early stage, there is no reason to doubt the Parties did enough to be positioned to present the Settlement to the Court and to satisfy the last *Wong* factor. Joint Decl. ¶ 27. Class Counsel did an extensive pre-suit investigation upon discovering the Data Incident, and then the Parties settled only after both sides were fully apprised of the material facts, risks, and obstacles involved with protracted litigation. *Id.* ¶ 29. From the beginning, Class Counsel conducted extensive research regarding the Data Incident, Plaintiffs' claims, Defendant, and Defendant's Clients who use Defendant's software and services. *Id.* After working extensively with experts (pre-suit and thereafter), preparing comprehensive pleadings, and conducting necessary informal discovery, the Parties negotiated the Settlement's material terms, the Settlement Agreement, and then the ASA to maintain the *pro rata* amount available to each Settlement Class Member. *Id.* ¶ 30. As such, and considering the Parties' counsel's extensive data breach litigation experience, the Parties entered into mediated settlement negotiations completely understanding of the strengths and weaknesses of the Action, as well as the potential value of the claims. *Id.* ¶ 29.

The Rule 23(e)(2)(A) adequacy of representation requirement is satisfied as to the Class Representatives because Plaintiffs' interests are coextensive with and not antagonistic to the interests of the Settlement Class. *See G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869, at *15-16 (N.D. Ill. Aug. 20, 2009). As with the Fed. R. Civ. P. 23(a)(4) requirement, Plaintiffs' claims are aligned with the other Settlement Class Members, giving them every reason to vigorously pursue the claims of the Settlement Class, as they have done to date by remaining actively involved in this Action since its inception, participating in the pre-suit litigation process, and involving themselves in the settlement process. Joint Decl. ¶ 31. Further, Plaintiffs retained qualified and competent counsel with extensive experience in litigating consumer class actions, particularly data privacy actions. *Id.* ¶ 25. *See also, e.g.*, *Karpilovsky v. All Web Leads, Inc.,* No. 17 C 1307, 2018 WL 3108884, at *8 (N.D. Ill. June 25, 2018).

**B. The Settlement Was Negotiated at Arm's-Length With No Fraud or Collusion.**

The Settlement is the result of good faith, arm's-length negotiations aided by an experienced mediator, and the Parties' negotiations to fully document the Settlement. Joint Decl. ¶¶ 10-11, 14-15. The Parties consulted the mediator when they agreed to increase the Settlement Fund because of the increased Settlement Class size, negotiating and signing the ASA. *Id.* Thus, there was no fraud or collusion in entering into the Settlement, and Rule 23(e)(2)(B) is satisfied. *Id.* ¶ 12.

**C. The Settlement Provides Adequate Relief Balanced Against the Risks.**

Meeting the Rule 23(e)(2)(c) requirement and first two *Wong* factors, the Settlement provides for excellent relief in light of the costs, risks, and delay of trial, the effectiveness of distributing relief, and the proposed attorneys' fees. "The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. v. DHL Express*

*(USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (internal quotes and citations omitted). Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT & T Mobility Wireless*, 270 F.R.D. at 347. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Newberg on Class Actions* § 11:50. "[T]he law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial." *Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969). "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ("The essential point here is that the court should not "reject[ ]" a settlement "solely because it does not provide a complete victory to plaintiffs," for "the essence of settlement is compromise.").

Here, the Settlement provides for monetary relief from a non-reversionary common fund. All Settlement Class Members may submit a Claim for a Cash Payment and Medical Data Monitoring. All of them will also benefit from non-monetary injunctive relief via specific data security enhancements designed to better protect Settlement Class Members' Private Information.

Defendant's alleged failure to secure and safeguard their Private Information involves complex facts surrounding the Data Incident, including the manner and the time in which the information was compromised, the types of information involved, and whether any of the information was accessed or used as a result. Joint Decl. ¶ 3. Proving causation is not a foregone conclusion. *Id.* Quantifying damages in these cases is often a challenge. *Id.* Defendant would likely

attempt to present evidence and arguments to demonstrate: (i) its security was adequate, (ii) Plaintiffs' damages were not, in whole or in part, caused by the Data Incident; and (iii) third party assessments found Defendant complied with applicable data security standards. *Id.*

### *1. The Costs, Risks, and Delay of Trial and Appeal Favor Settlement Approval.*

The Settlement's value to the Settlement Class is guaranteed, but the chances of prevailing on the merits are very uncertain. While Plaintiffs strongly believe in the merits of their case, they also recognize Defendant would assert a number of potentially case-dispositive defenses. Joint Decl. ¶ 34. Should litigation continue, Plaintiffs would have to immediately survive a motion to dismiss. *Id.* Attributable in part to their cutting-edge nature and the rapidly evolving law, data breach cases including this one generally face substantial hurdles, even to survive the pleading stage. *See, e.g.*, *Logan v. Marker Group, Inc.*, No. 4:22-CV-00174, 2024 WL 3489208 (S.D. Tex. July 18, 2024) (dismissing all but one claim); *Dougherty, et al. v. Bojangles Restaurants, Inc.*, No. 25-CV-00065, ECF No. 34 (W.D.N.C. Sep. 30, 2025) (dismissing case in its entirety at the pleadings stage). *See also In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522 (PAM/JJK), 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015) (legal issues involved in data breach litigation "are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues"); *Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage).

Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g.*, *Maldini v. Marriott Int'l*, 140 F.4th 123 (4th Cir. 2005); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 78 F.4th 677 (4th Cir. 2023); *Theus v. Brinker, Int'l, Inc.*, No. 3:18-cv-686-TJC-MCR, 2025 WL 1786346 (M.D. Fla. June 27, 2025). Moreover, because of the quickly evolving nature of case law pertaining to data

protection, it is likely a win by any party will result in interlocutory and final appeals, further increasing costs and extending the time until Plaintiffs and putative class members can have a chance at relief. Joint Decl. ¶ 35. Expert testimony will be required to support liability and damages. *Id.* Tens of thousands of dollars in expert consulting fees have already been incurred. *Id.* Thus, the time and resources to further litigate supports approving the Settlement. *See In re AT&T Mobility Wireless*, 270 F.R.D. at 347 ("Even if Plaintiffs were to succeed on the merits at some future date, a future victory is not as valuable as a present victory. Continued litigation carries with it a decrease in the time value of money, for '[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now.'") (citations omitted).

Although Plaintiffs dispute Defendant's defenses, their likelihood of success at trial is undeniably far from certain. "In light of the potential difficulties at class certification and on the merits . . . , the time and extent of protracted litigation, and the potential of recovering nothing, the relief provided to class members in the Settlement Agreement represents a reasonable compromise." *Wright v. Nationstar Mtg. LLC*, No. 14 C 10457, 2016 WL 4505169, at *10 (N.D. Ill. Aug. 29, 2016). This is true in this Action.

***2. The Method of Providing Relief is Effective.***

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Committee Note to the 2018 amendments to Rule 23(e)(2) says this factor encourages courts to evaluate a proposed claims process "to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." The robust Claim Process the Court approved meets this standard, including to identify and reject

duplicate and fraudulent claims, and to give Settlement Class Members the opportunity to correct deficiencies identified in their Claim Forms. Agreement ¶¶ 77-96.

This Settlement provides significant benefits in the form of Cash Payments, Medical Data Monitoring, and enhancements to data security. Cash Payments will be distributed based upon information provided by Settlement Class Members on their respective valid Claim Forms. Settlement Class Members may receive some compensation with a simple attestation, and greater compensation by documenting their losses. Cash Payments will be by efficient electronic means or by paper check in a reasonable amount of time following the Effective Date. Thus, the means by which the relief will be distributed is fair, efficient, and effective.

#### *3. The Proposed Award of Attorneys' Fees is Fair and Reasonable.*

"[T]he terms of any proposed award of attorney's fees, including timing of payment," are also factors in considering whether the relief provided to the Class in a proposed settlement is adequate. Fed. R. Civ. P. 23(c)(2)(C)(iii). Plaintiffs' counsel seek a reasonable one-third of the Settlement Fund for attorneys' fees plus the reimbursement of litigation costs. Joint Decl. ¶ 43. Settlement approval is expressly not contingent on the attorneys' fees and costs award. Agreement ¶ 107. As discussed in more detail below, this percentage is consistent with other approved class settlements, including privacy class settlements. *See infra* 27-28. Class Counsel achieved a great result for the Settlement Class after undertaking substantial risk in bringing this Action on a pure contingency basis, and they should be fairly compensated.

#### *4. There Are No Additional Agreements to Identify Under Rule 23(e)(3).*

There are no additional agreements required to be identified under Fed. R. Civ. P. 23(e)(3). Joint Decl. ¶ 57. Because no such additional agreements exist, this factor is neutral.

### D. The Settlement Treats Class Members Equitably Relative to Each Other.

Finally, Rule 23(e) requires the settlement "treat[] class members equitably relative to each

other." Fed. R. Civ. P. 23(e)(2)(D). Here, the proposed Settlement does not improperly discriminate against any Settlement Class Members. Joint Decl. ¶ 38. All are eligible to make a Claim for Cash Payments and Medical Data Monitoring, and all will equally benefit from the security enhancements. *Id.* The Settlement provisions for *pro rata* distributions, including the possibility of *pro rata* increase or decrease based on the amounts claimed, is measured and equitable. *Id.*

Services Awards of $2,500.00 for each of the Class Representatives is fair and reasonable. Joint Decl. ¶ 39. The award is significantly less than the documented loss amount any given Settlement Class Member can claim for Cash Payment A and does not evidence any improper motivation to settle or give rise to undue inequities across the Settlement Class. *Id.* As discussed below, the Service Award amounts are well in line with awards in other similar data breach cases and class actions in general, trending on the lower side. *Id.*

### E. The Opinions of Class Counsel and Plaintiffs and Reaction from the Settlement Class Favor Final Approval.

The third and fourth *Wong* factors are also satisfied at this stage. The Court should greatly consider the recommendations of Parties' counsel, given their considerable experience in data breach litigation. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312-13 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted). After engaging in informal discovery and settlement negotiations, Class Counsel are confident the Settlement provides significant relief to the Settlement Class and is in their best interests. Joint Decl. ¶ 24. The Plaintiffs' agreement to the Settlement evidences their support.

As Class Counsel expected, the Settlement Class' reaction has been overwhelmingly positive. Currently, only four Settlement Class Members have opted-out and none have objected.

Admin. Decl. ¶ 25. Should any timely objection be asserted, it will be addressed by Class Counsel during the Final Approval Hearing.

## VII. APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

Pursuant to the Settlement and the Notices, and consistent with recognized class action practice and procedure, Plaintiffs each respectfully request a $2,500.00 Service Award for serving as the Class Representatives. Joint Decl. ¶ 41. Class Counsel respectfully request an award of attorneys' fees of $3,500.000.00, which is equal to one-third of the Settlement Fund, and $44,925.51 to reimburse them for reasonable litigation costs. *Id.* ¶ 43. That amount is within the range of attorneys' fees approved in other class actions and is fair and reasonable in light of the risks taken, work performed by Class Counsel, and the outstanding recovery secured for the Settlement Class.

### A. The Court Should Apply the Percentage-of-the-Fund Method

This Court succinctly set for the applicable attorneys' fee standard und Fed. R. Civ. P. 23(h) to this non-reversionary, common fund Settlement.

> Rule 23(h) permits courts to "award reasonable attorney's fees" that are authorized by law or by the parties' agreement, and when a lawyer 'recovers a common fund for the benefit of persons other than himself or his client' he "is entitled to a reasonable attorney's fee from the fund as a whole." . . . Courts in common fund cases "determine reasonableness" by awarding counsel the "'market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" . . . .
>
> Although this Court has discretion to use "either a percentage of the fund or lodestar methodology," the "percentage method is employed by the vast majority of courts in the Seventh Circuit." . . . . Regardless of the method used, the Seventh Circuit notes a "presumption" that "attorneys' fees awarded to class counsel should not exceed a third," or "at most a half of the total amount of money going to class members and their counsel,"' . . . , with the 'typical' fee "between 33 and 40 percent."
>
> "Several factors inform the appropriate market rate, namely: "the risk of nonpayment, the quality of the attorney's performance, the amount of work

> necessary to resolve the litigation, and the stakes of the case." . . . . Additionally, courts also consider the "normal rate of compensation in the market."

*T.K. Through Leshore. Co*., 2022 WL 888943, at *65-66 (citations omitted).

Applying a percentage-of-the-fund approach is also generally more appropriate in cases like this one because it best reflects the fair market price for the legal services provided by Class Counsel. *See Sutton v. Bernard*, 504 F.3d 688, 693 (7th Cir. 2007). The percentage-of-the-fund approach also accurately reflects the contingent nature of the fees negotiated between Class Counsel and Plaintiffs. *See In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (applying percentage-of-the-fund approach and noting class members would typically negotiate fee arrangement based on percentage method rather than lodestar). By contrast, a lodestar approach encourages significant inefficiencies and further litigation as the parties and the court have to review the extensive billing records produced and determine the reasonableness of the time spent on any particular task and whether it actually furthered the litigation.[2]

Thus, the Court should apply the percentage-of-the-fund approach, using the above quoted factors the Court reiterated in *T.K. Through Leshore. Co*., 2022 WL 888943, at *66. Those factors are addressed below.

[2] The lodestar method reintroduces the same problems the Seventh Circuit avoided by giving courts the ability to choose percentage-of-the-fund. The Settlement Class would not have put a lodestar crosscheck into their agreements if they had gone into the market to find an attorney for their many individual claims—they would have, as Class Counsel request here, agreed to a flat contingency fee. *See* David L. Schwartz, *The Rise of Contingent Fee Representation in Patent Litigation*, 64 ALA. L. REV. 335, 360 (2012) (in study of sophisticated entity's retention of counsel on contingent basis in patent dispute litigation, no evidence of lodestar crosscheck); *In re Forefront Data Breach Litig.*, 2023 WL 6215366, at *8 (E.D. Wis. Mar. 22, 2023) ("The market rate for plaintiff's counsel in a damages case is generally a contingent fee . . . and any lodestar calculation would be artificial. Identifying a reasonable hourly rate for attorneys who normally work on contingency would be particularly difficult.") (internal citation omitted).

**B. Risk of Nonpayment**

This factor recognizes the risk of nonpayment in cases prosecuted on a contingency basis where claims are not successful, which can justify higher fees. *See, e.g., T.K. Through Leshore. Co*., 2022 WL 888943, at *67 ("As the 'risk of walking away empty-handed' increases, so too must the fee award in order to 'attract competent and energetic counsel.'" (citation omitted)); *Kujat v. Roundy's Supermarkets Inc*., 2021 WL 4551198, at *4 (N.D. Ill. Aug. 11, 2021) ("A one third fee is also reasonable in light of the significant risks of nonpayment that Plaintiffs' counsel faced."). Put simply, "[a] lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases." *Browne v. Am. Honda Motor Co*., 2010 WL 9499073, at *11 (C.D. Cal. Oct. 5, 2010).

Here, Class Counsel took on this complex class action on a wholly contingent basis, with retention agreements contemplating compensation equal to a percentage of the recovery. Joint Decl. ¶ 46. And, while confident in Plaintiffs' claims, there would be a lot of data breach litigation risks ahead without the Settlement—motion to dismiss, discovery, class certification, summary judgment, and trial—with each stage having its own challenges. *See id.* ¶¶ 33, 35-36, 51. Further, even if Plaintiffs succeeded at class certification and trial, Defendant would no doubt appeal, and Class Counsel might have to appeal. *Id.* Thus, this case presented a substantial risk of nonpayment for Class Counsel. *See In re Cont'l Ill. Sec. Litig*., 962 F.2d 566, 570 (7th Cir. 1992) (remanding for reconsideration of "the fee due class counsel" where "they could have lost everything").

**C. Quality of Class Counsel's Performance**

Class action litigation presents challenges, especially in data breach cases, as outlined above. Nonetheless, Class Counsel achieved an excellent Settlement that provides significant

monetary and non-monetary relief,[3] and proved they have the ability and resources to litigate this case zealously. Class Counsel litigated this case efficiently, effectively, and civilly. Joint Decl. ¶ 50. Being well informed about the Data Incident, and after arm's-length negotiations, Class Counsel convinced Defendant, who is represented by experienced counsel, that it was in its best interests to quickly resolve the claims. *Id.* The Settlement is a function of the high quality of that work, which supports the requested fee award. *Id.*; *T.K. Through Leshore. Co*., 2022 WL 888943, at *68.

**D. Amount of Work Necessary to Resolve the Litigation**

From filing, Class Counsel were prepared to vigorously litigate this Action for years if necessary at their expense. Joint Decl. ¶ 51. Without the Settlement, they would be required to conduct discovery, handle extensive motion practice, hire and work with experts, attend hearings and trial, and pursue or defend appeals, which would delay relief for several years. To Class Counsel's knowledge no data breach lawsuit has been taken to trial. *Id.* Absent the Settlement, the Parties would litigate legal issues that are either still being resolved by the courts or are matters of first impression. *See*, *e.g.*, *In re Southwest Airlines Voucher Litig.*, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) ("legal uncertainties at the time of settlement favor final approval"). Beyond the necessary work to settle the Action, Class Counsel have spent considerable time on the

[3] This non-monetary relief further justifies the reasonableness of the attorneys' fees being sought. *See Spano v. Boeing Co.*, 2016 WL 3791123, at *1 (S.D. Ill. Mar. 31, 2016) ("A court must also consider the overall benefit to the Class, including non-monetary benefits, when evaluating the fee request. . . . This is important so as to encourage attorneys to obtain meaningful affirmative relief.") (citing *Beesley v. Int'l Paper Co.*, 2014 WL 375432, at *1 (S.D. Ill. Jan 31, 2014)); Manual for Complex Litigation, Fourth, § 21.71, at 337 (2004)); *see also Hall v. Cole*, 412 U.S. 1, 5 n.7 (1973) (awarding attorneys' fees when relief is obtained for the class "must logically extend, not only to litigation that confers a monetary benefit on others, but also litigation which corrects or prevents an abuse which would be prejudicial to the rights and interests of those others.") (internal quotations omitted).

Settlement approval process and their work will continue through and after Final Approval. Joint Decl. ¶ 53.

**E. Complexity, Length, and Expense of the Litigation**

The complexity of this Action further favors the requested fee award. Data breach class action lawsuits are complex, risky, and expensive to litigate, especially when considering the numerous unresolved issues they present. As detailed above in support of Final Approval, Plaintiffs and Class Counsel would have to get over many hurdles to ultimately prevail, beginning with a motion to dismiss, followed by class certification, summary judgment, trial, and appeals of those rulings, whether favorable or unfavorable to the putative class. *See supra* at 18-19. That protracted litigation would consumer years of time and resources, including the discovery and expert costs necessary to address complex cybersecurity and data security issues and damages. It is possible that "this drawn-out, complex, and costly litigation process . . . would provide [Settlement] Class Members with either no in-court recovery or some recovery many years from now[.]" *In re AT&T Mobility Wireless Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 964 (N.D. Ill. 2011). Because the proposed Settlement offers immediate—and substantial—monetary relief to the Settlement Class and Defendant's monetary commitment to enhance its data security, while avoiding the need for extensive and drawn-out litigation, the requested attorneys' fee is reasonable.

**F. Stakes of the Case**

"Here, the stakes in the case are large, given the complexity of the legal issues, the costs of bringing this case to trial, and the potential loss to Class Counsel should they have litigated the case to judgment and not prevailed." *T.K. Through Leshore. Co*., 2022 WL 888943, at *68. So, the stakes were high for Class Counsel whose work results in Settlement Class Members receiving real and immediate monetary and non-monetary benefits. Joint Decl. ¶ 10.

**G. Normal Rate of Compensation and Awards in Similar Cases**

The Seventh Circuit has held that "[w]hen a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund . . . in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent fee basis." *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) (emphasis added; internal citations omitted); *see, e.g.*, *Starts v. Little Caesar Enters., Inc.*, No. 1:19-cv-01575 (N.D. Ill.), ECF No. 120 (approving attorneys' fee award of one-third of non-reversionary settlement fund); *Karpilovsky v. All Web Leads, Inc.,* No. 17 C 1307, ECF No. 173 (approving attorneys' fee award of 35% of non-reversionary settlement fund). As this Court stated in *T.K. Through Leshore. Co*.:

> In the Seventh Circuit, and elsewhere, courts "regularly award percentages of 33.33% or higher to counsel in class action litigation." . . . . And Class Counsel asserts that their "representation agreements for cases in this District, including . . . this case" "include rates that "generally fall within the *one-third to 40% range*."

2022 WL 888943, at *68 (citations omitted and emphasis added).

In addition, awarding "a one-third fee also aligns with those awarded by other courts in data breach class action cases" around the country. *Krant v. UnitedLex Corp.*, No. 23-2443-DDC-TJJ, 2024 WL 5187565 , *6 (D. Kan. Dec. 19, 2024) (awarding one-third fee, and collecting data breach cases from around the country); *In re Arthur J. Gallagher Data Breach Litig.*, No. 22-CV-00137, ECF No. 128 (N.D. Ill.) (Feb. 27, 2025) (awarding one-third of $21 million settlement fund); *In re Planet Home Lending, LLC Data Breach*, No. 3:24-cv-127 (KAD) (D. Conn.), ECF No. 48 (one-third of settlement fund). *See also, e.g.*, *In re Tenet Healthcare*, Cause No. DC-22-07513 (Dist. Ct. Dallas County, Tex. May 22, 2024) (35% of settlement fund); *Garza v. HealthAlliance, Inc*., No. 72450/2023 (NY Sup. Ct., Westchester Cty.) (same); *In re: Trionfo Sols. Data Breach Litig.*, No. 1:24-CV-04547, ECF No. 36 (N.D. Ill.) (one-third of settlement fund) *McNally, et. al. v. Infosys McCamish Systems, LLC*, No. 1:24-CV-00995-JPB (N.D. Ga.), ECF No.

81 (same); *In re Fortra File Transfer Software Data Sec. Breach Litig*., No. 24-MD-03090, 2025 WL 2675178, at *13-14 (S.D. Fla. Sept. 17, 2025) (same); *In re Fortra File Transfer Software Data Sec. Breach Litig*., No. 24-MD-03090, 2025 WL 457896, at *11-12 (S.D. Fla. Feb. 11, 2025) (same); *In re CorrectCare Data Breach Litig*., No. 5:22-319-DCR, 2024 WL 4211480, at *4 (E.D. Ky. Sept. 14, 2024) (same); *Phillips et al. v. Bay Bridge Associates*, Case 1:23-cv-00022-DAE (W.D. Tex. July 30, 2024), ECF No. 53 (same); *Alliance Ophthalmology, PLLC v. ECL Group, LLC*, No. 1:22-CV-296, 2024 WL 3203226, *16 (M.D.N.C. June 27, 2024) (awarding one-third of common fund because this amount was "comparable to awards in other data privacy class actions"); *Kondo, et al. v. Creative Services, Inc*., No. 1:22-cv-10438-DJC, ECF No. 39 (D. Mass. Sept. 7, 2023) (same); *Thomsen v. Morley Cos*., No. 1:22-cv-10271, 2023 WL 3437802, *2 (E.D. Mich. May 12, 2023) (one-third of common fund "apt because it reflects counsel's specialization in data breaches and simplifies the billing"); *In re Sovos Compliance Data Security Incident Litigation*, No. 1:23-cv-12100 (D. Mass.), ECF No. 12 (same).

Therefore, all Seventh Circuit factors support Class Counsel's requested attorney's fees.

**H. The Litigation Costs Are Reasonable.**

This Court may also award reasonable expenses as provided for by the Agreement. Fed. R. Civ. P. 23(h). Class Counsel request reimbursement of $44,925.51 for litigation costs that Class Counsel reasonably and necessarily incurred and paid for this Action. The costs include filing and service of process fees, mediation fees, expert fees, and travel and accommodations. Joint Decl. ¶ 54. Ordinary law firm overhead costs, including postage and legal research, are not included. *Id*. Class Counsel are entitled to reimbursement of reasonable and necessary out-of-pocket expenses incurred in the course of activities that benefitted the class. *See In re Synthroid Mktg. Litig*., 264 F.3d 712, 722 (7th Cir. 2001). Accordingly, such costs should be reimbursed to Class Counsel.

### I. The Requested Service Awards Should Be Approved.

Service awards fulfill the important purpose of compensating plaintiffs for "the amount of time and effort the plaintiff[s] expended in pursuing the litigation." *Wright*, 2016 WL 4505169, at *17. *See also, e.g., See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *In re Synthroid Mkt. Litig. ("Synthroid I")*, 264 F.3d 722, (7th Cir. 2001) ("Incentive awards are justified when necessary to induce individuals to become named representatives.").

The requested $2,500 proposed Service Awards for each the Class Representatives are reasonable. Joint Decl. ¶ 41. Plaintiffs have ably represented the Settlement Class and have been instrumental in assisting Class Counsel throughout this proceeding. *Id.* ¶ 42. They initiated and remained in contact with Class Counsel, assisted in the investigation by provided background information, considered and reviewed the pleadings in this Action and the Agreement, supervised and monitored Class Counsel, remaining available for consultation throughout the negotiation process, and followed the litigation's progress to ensure the Settlement Class received the best recovery possible, given the particular circumstances and risks of the Action. *Id*. Class Representatives are committed to continuing to assist Class Counsel through and following Final Approval. *Id.* They were also prepared to complete their responsibilities, including being deposed and testifying at trial, if needed. *Id.*

## IV. CONCLUSION

Plaintiffs and Class Counsel respectfully request the Court enter a Final Approval Order (i) granting Final Approval of the Settlement; (ii) affirming certification of the Settlement Class for settlement purposes, pursuant to Rule 23(a) and (b)(3); (iii) confirming Plaintiffs' appointment as

Class Representatives; (iv) confirming the appointments of Gary M. Klinger and Jeff Ostrow as Class Counsel pursuant to Rule 23(g)(1); (v) confirming the appointment of Kroll. as Settlement Administrator; (6) awarding Class Counsel $3,500,000.00 for attorneys' fees and $44,925.51 for reimbursement of costs; (7) awarding each Class Representative a $2,500.00 Service Award; (8) overruling timely objections, if any; and (9) entering final judgment dismissing the Action with prejudice and reserving jurisdiction over Settlement implementation. The proposed Final Approval Order is Exhibit 5 to the Agreement and will be submitted in an updated format before the Final Approval Hearing.

Date: February 2, 2026.

Respectfully Submitted,

*/s/ Jeff Ostrow*
**KOPELOWITZ OSTROW P.A.**
1 West Las Olas Blvd., Ste. 500
Fort Lauderdale, FL 33301
Tel: 954.332.4200
ostrow@kolawyers.com

*/s/ Gary M. Klinger*
Gary M. Klinger
**MILBERG PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: 866.252.0878
gklinger@milberg.com

*Class Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Jeff Ostrow*
Jeff Ostrow
**KOPELOWITZ OSTROW P.A.**
1 West Las Olas Blvd., Ste. 500
Fort Lauderdale, FL 33301
Tel: 954.332.4200
ostrow@kolawyers.com